1  Edward J. Efkeman (Admitted *Pro Hac Vice*)
   FEDERAL EXPRESS CORPORATION
2  3620 Hacks Cross Road, Building B, Third Floor
   Memphis, Tennessee 38125
3  Telephone:  901-434-8555
   Fax:  901-434-9271
4  eefkeman@fedex.com

5  David S. Wilson, III (Bar No. 174185)
   FEDERAL EXPRESS CORPORATION
6  2601 Main Street, Suite 340
   Irvine, California  92614
7  Telephone:  949-862-4656
   Fax: 949-862-4605
8  dswilson@fedex.com

9  Attorneys for Defendant
   Federal Express Corporation

10

11                    UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13                        San Francisco Division

14  HULAC, et al.,                            No. C 3:08-1557-JSW

15              Plaintiffs,

16     v.                                     **NOTICE OF MOTION AND MOTION
                                              TO TRANSFER VENUE**
17  FEDERAL EXPRESS CORPORATION,

18              Defendant.
                                    /
19

20          **NOTICE OF MOTION AND MOTION TO TRANSFER VENUE**

21          PLEASE TAKE NOTICE that Federal Express Corporation's ("FedEx") Motion to Transfer

22  Venue is to come on for hearing before this Honorable Court on July 11, 2008 at 9:00 a.m. in

23  Courtroom 2, 17th Floor of the United States District Courthouse, located at 450 Golden Gate

24  Avenue, San Francisco, CA 94102.

25               **CONCISE STATEMENT OF RELIEF SOUGHT**

26          FedEx requests that the Court enter an order transferring this matter to the United States

27  District Court for the Central District of California (Santa Ana) pursuant to Title 28 U.S.C. 1404(a)

28  and Local Rule 3-14.

1

## POINTS AND AUTHORITIES

2

### I.    STATEMENT OF THE ISSUES TO BE DECIDED

3        Whether this matter should be transferred to the United States District Court for the Central

4   District of California (Santa Ana) pursuant to Title 28 U.S.C. 1404(a) and Local Rule 3-14, in the

5   interest of justice?

6

### II.    INTRODUCTION

7        FedEx seeks to transfer this putative class action to the Central District of California, Santa

8   Ana Division.  Prosecution of the action in the Central District will be more convenient for the

9   parties and witnesses, will serve the interests of justice, allow the federal courts to more efficiently

10  handle this matter and a related matter pending in the Central District and will defeat Plaintiffs'

11  attempt to forum shop after receiving adverse rulings in a virtually identical lawsuit in the Central

12  District.

13       Plaintiffs seek to represent all current and former couriers, ramp transport drivers and service

14  agents age 40 and over with 10 or more years of employment with FedEx, including a subclass of

15  individuals employed in California.  Plaintiffs allege violations of the Age Discrimination in

16  Employment Act (ADEA) and the Fair Employment and Housing Act (FEHA) based on general

17  performance policies applicable to employees at FedEx.  The allegations, claims, and potential class

18  members are the same as those in a purported class action filed by the same counsel in the Central

19  District of California, entitled *Clausnitzer, et. al. v. Federal Express Corporation*, No. SACV 05-

20  1269 DOC (ANx).  (A copy of the Amended Complaint from that action is attached hereto as

21  Exhibit A)  Discovery in that matter was conducted approximately June 2006 through August 2007

22  and included tens of depositions, gigabytes of electronic data, and hundreds of thousands of pages of

23  documents.  After two hearings, class certification was denied in October 2007.  (A copy of the

24  Order Denying Class Certification is attached hereto as Exhibit B).  In March 2008, all individual

25  claims of the named plaintiffs were dismissed by summary judgment.  (A copy of the Order

26  Granting Summary Judgment is attached hereto as Exhibit C).  Plaintiffs filed a motion for

27  reconsideration, which is pending.

28

The interests of justice and efficient administration of justice would be better served if this matter was transferred into the same district as *Clausnitzer*. Such a transfer would prevent the potential for inconsistent adjudications of similar claims and issues arising out of the same nucleus of transactions and occurrence. It would also be more efficient for purposes of addressing the same discovery disputes that arose before and new disputes on related issues. FedEx is a Delaware corporation with its principal place of business in Tennessee. Defendant's witnesses are primarily located in Memphis, Tennessee, as well as various relevant computerized corporate records. Plaintiffs reside at various places across the country, and of the California employees listed on the appendices to the complaint, at least as many are employed in the Central District as the Northern District. Plaintiffs' counsel is in Washington, DC, and Defendant's counsel has offices in Memphis and Irvine, California, a few miles away from the Santa Ana courthouse in the Central District. Given that FedEx is not incorporated in, nor a resident of California, it is more convenient and would further the interests of justice to have the case venued in the Central District, where discovery and litigation has been developed in *Clausnitzer*.

For all of these reasons, as discussed more fully below, Defendant's motion should be granted and this action should be transferred to the Central District of California (Santa Ana).

## III.    STATEMENT OF RELEVANT FACTS

Plaintiffs assert causes of action for age discrimination, based on the application of a variety of FedEx policies and procedures. Plaintiffs allege that FedEx terminates couriers older than age 40 with more than 10 years of experience or forces them to quit more than couriers under age 40. Plaintiffs contend that older couriers receive more discipline than younger couriers for the same policy infractions, resulting in terminations or quits by older couriers. Based on these allegations, Plaintiffs brought a collective action under the ADEA and, for those employees in California, FEHA.

Five individuals are listed in the caption of the Complaint, although Paragraph 1 refers to "eighty-seven current and former employees" who have brought suit. Plaintiffs attached three lists of employees on Appendices A, B, and C to the Complaint and refer to those employees as "Plaintiffs" in the Complaint. Appendix A are employees who allegedly have been terminated;

1  Appendix B are employees who are allegedly "currently employed experiencing ongoing

2  discrimination," and Appendix C are employees who allegedly were "forced to retire." Two of the

3  persons listed as "forced to retire" are also listed as "currently employed," however. Moreover,

4  "Estate of Dwight Todd" is also puzzlingly listed as "currently employed experiencing ongoing

5  discrimination." Only 82 different, living individuals are listed on the appendices, and a further five

6  individuals are referenced in the factual allegations.

7      The actual number of named Plaintiffs is therefore unclear. Of the 87 total names listed

8  somewhere in the Complaint, 64 had filed papers to be "opt-in" plaintiffs to the collective action in

9  *Clausnitzer*. Those 64 individuals' claims were dismissed without prejudice from that action on

10 October 19, 2007, when the collective action they sought to join was denied certification. Just a day

11 after the order dismissing the remaining claims of the named *Clausnitzer* plaintiffs, these 64

12 individuals and others filed the instant action making nearly identical allegations.[1]

13 **IV.    ARGUMENT**

14      Title 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the

15 interest of justice, a district court may transfer any civil action to any other district or division where

16 it might have been brought." Under Section 1404(a), courts must balance the plaintiff's choice of

17 forum against the burden of litigating in an inconvenient forum. *Decker Coal v. Commonwealth*

18 *Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Although the burden of showing that the

19 "convenience of the parties and witnesses" and "interests of justice" are served by transfer rests with

20 the moving party, such determination is addressed to the inherent discretion of the trial court.

21 *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979), *citing Van*

22 *Dusen v. Barack*, 376 U.S. 612, 622 (1964). The ultimate goal of a court in analyzing a motion to

23 transfer venue is to serve both convenience of the parties and witnesses, as well as the interests of

24 justice. *Mercury Serv., Inc. v. Allied Bank of Texas*, 117 F.R.D. 147, 154-55 (C.D.Cal. 1987), *aff'd*,

25

26 [1]  Although this *Hulac* action purports to expand *Clausnitzer's* putative class to include service
    agents, ramp transport drivers, and handlers in addition to couriers, virtually all of the plaintiffs are
    couriers. The 87 individuals in the Complaint include just two service agents, one ramp transport

27 driver, and one handler. The factual allegations relate to stops-per-hour, routes, and Best Practices,
    which only apply to couriers. The addition of a few employees in other job positions is a thinly-

28 guised attempt to make the *Hulac* action differ from the *Clausnitzer* action.

No. C 3:08-1557-JSW - Defendant Federal Express Corporation's Motion to Transfer Venue
Page 4

1    907 F.2d 154 (9th Cir. 1990).

2    In making this determination, courts look at the following factors: (1) whether the transferee

3    district is one where the action might have been brought; (2) the convenience of the parties and

4    witnesses; and (3) whether transferring will promote the interest of justice. *Goodyear Tire & Rubber*

5    *v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D.Cal. 1992), *citing Mercury Serv., Inc. v.*

6    *Allied Bank of Texas*, 117 F.R.D. 147, 154-55 (C.D.Cal. 1987), *aff'd* 907 F.2d 154 (9th Cir. 1990).

7    Here, as discussed below, the foregoing factors weigh in favor of transfer.

8    **A.    Venue is proper in the Central District of California (Santa Ana).**

9    The first analytical step in a transfer motion is to determine whether the action could

10   originally have been brought in the District Court to which transfer is sought.  (28 U.S.C. § 1404(a).)

11   The proper District Court is one in which the action could originally have been brought if: 1) it has

12   subject matter jurisdiction; 2) defendant would have been subject to personal jurisdiction; and 3)

13   venue would have been proper.  *Hoffman v. Blaski*, 363 U.S. 335, 343-344; 80 S.Ct. 1084, 1089-

14   1090; *Commercial Lighting Prods., Inc. v. U.S. Dist. Court*, 537 F.2d 1078 (9th Cir. 1976).

15   Not only could this action have been brought in the Central District, it actually was filed

16   there as *Clausnitzer*.  Subject matter jurisdiction exists in the Central District because Plaintiffs'

17   claims arise under the Age Discrimination in Employment Act, and the district court would have

18   jurisdiction in the Central District under 28 U.S.C. §§ 1331.  Venue is proper in the Central District

19   because FedEx is a corporation with sufficient contacts to establish personal jurisdiction in that

20   district and because at least five of the Plaintiffs were employed at stations within the Central

21   District.  28 U.S.C. §1391(a)(1-2) and (c).  There are ten California plaintiffs.  Plaintiffs list the five

22   employed in the Bay Area in the caption, but do not list any of the five employed in Los Angeles

23   (Fullerton and Pomona)—another transparent attempt to distance this action from the identical action

24   already filed in *Clausnitzer*.

25   **B.    Transferring the action will promote the interests of justice.**

26   To determine whether a transfer will serve the interests of justice, the Ninth Circuit applies

27   the following criteria: (1) plaintiff's initial choice of forum; (2) the convenience of the witnesses,

28   including the ability to mandate attendance of unwilling witnesses and the cost of obtaining willing

No. C 3:08-1557-JSW - Defendant Federal Express Corporation's Motion to Transfer Venue
Page 5

1    witnesses; (3) where the events took place and the relative ease of access to sources of proof; (4)

2    convenience of the parties; and (5) all other practical considerations that make the trial of a case

3    easy, expeditious and inexpensive.  *See Decker Coal,* 805 F.2d at 842-43.

4        "The interest of justice factor is the most important factor of all."  *Amazon.com v. Cendant*

5    *Corp.*, 404 F.Supp.2d 1256, 1259 (W.D. Wash. 2005) (citing *Nelson v. Mater Lease Corp.*, 759

6    F.Supp. 1397, 1402 (D. Minn. 1991)).  "Consideration of the interest of justice, which includes

7    judicial economy, 'may be determinative to a particular transfer motion, even if the convenience of

8    the parties and witnesses might call for a different result.'"  *Id.* (quoting *Regents of the University of*

9    *California v. Eli Lilly and Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997).  The pendency of related

10    actions in the transferee forum is a significant factor in weighing whether the interests of justice

11    would be served by a transfer of venue.  *Id.*  Litigation of related claims in the same tribunal is

12    strongly favored because "it facilitates efficient, economical and expeditious pre-trial proceedings

13    and discovery and avoid[s] duplicitous litigation and inconsistent results."  *Durham Productions,*

14    *Inc. v. Sterling Film Portfolio, Ltd., Series A*, 537 F.Supp. 1241, 1243 (S.D.N.Y. 1982).  "It is highly

15    inefficient for this district to expend resources adjudicating a dispute virtually identical to one

16    already pending in our sister district."  *Wells v. Cingular Wireless LLC*, 2006 U.S. Dist. LEXIS

17    73664, *8 (N.D. Cal. 2006).  Inconsistent legal results involving identical claims are particularly

18    worrisome in the context of a class action where failure to consolidate could also muddle the issue of

19    which plaintiffs are part of the class.  *Id.* at *9.

20        In this case, the *Hulac* Plaintiffs are identical in situation to the plaintiffs in the *Clausnitzer*

21    action currently pending in the Central District of California: almost three-quarters of them filed

22    pleadings in *Clausnitzer* to join as opt-in plaintiffs.  The two cases involve the same proposed class

23    of employees and assert the same allegations.  Various motions to compel were filed in *Clausnitzer*,

24    and the parties conducted discovery under the rules set forth by Judge Carter in the Central District.

25    Transfer of this action to the Central District would prevent the potential for inconsistent

26    adjudications and discovery rulings, as well as serve to prevent forum shopping by the instant

27    Plaintiffs.

28

1    Accordingly, the interests of justice and efficient administration of justice will be better

2    served if this matter is transferred to the Central District of California.

3

4    **C. Plaintiffs' choice of forum is given less weight because of their status as purported**

5       **class representatives.**

6    Ordinarily, a plaintiff's choice of forum is provided some deference when challenged via a

7    motion to transfer. *Lewis v. ABC Business Services, Inc.*, 135 F.3d 389, 413 (6th Cir. 1998). This

8    rule is substantially attenuated where plaintiff has commenced the action in a forum that is not his or

9    her residence. In such cases, plaintiff's choice of forum is given much less weight in ruling on a

10   discretionary transfer motion. *New Image, Inc. v. Travelers Indem. Co.*, 536 F.Supp. 58, 59 (E.D.

11   Pa. 1981); *Bryant v. ITT Corp.*, 48 F.Supp.2d 829, 832 (N.D. Ill. 1999).

12   Here, any weight given Plaintiffs' choice of forum is diminished due to their attempt to

13   represent a class. *Koster v. Lumbermen's Mutual Casualty Co.*, 330 U.S. 518, (1947); *Diemer v.*

14   *United States Postal Serv.*, 1987 WL 9037, *4 (D.D.C. 1987) (transferring class action claim under

15   Fair Labor Standards Act after determining plaintiff's forum choice entitled to little weight).[2] The

16   proposed class covers FedEx employees nationwide, so no one forum would be preferable to another

17   for the class. Given that three-quarters of the plaintiffs have previously stated consent to be part of

18   an identical action in the Central District, the weight of Plaintiffs' choice of forum is diminished

19   even further. Having received unfavorable rulings on both class certification and then on the merits,

20   Plaintiffs and their Washington attorneys immediately refiled the same action in the Northern

21   District in a blatant effort to shop for a more favorable forum.

22   Notably, this is the fourth forum where Plaintiffs' attorney has filed a Complaint with nearly

23   identical facts and the same proposed class. In April 2002, Plaintiffs' counsel filed a Complaint in

24   the Southern District of New York alleging that FedEx was using various policies to discriminate

25   ──────────
     [2] Other courts similarly have held that a plaintiff's choice of forum is given less weight in the class
26   context. (*Lou v. Belzberg,* 834 F.2d 730, 739 (citing *Helfant v. Louisiana & Southern Life Ins. Co.*,
     82 F.R.D. 53, 58 (E.D.N.Y.1979) (ordering transfer where potential existence of numerous class
27   "considerably weakens" plaintiff's stake in chosen forum) and *Stolz v. Barker*, 466 F.Supp. 24, 27
     (M.D.N.C.1978) (ordering transfer because, in a derivative class suit, plaintiff is "almost an
28   insignificant figure"); *O'Hopp v. Contifinancial Corp.*, 88 F.Supp.2d 31, 35 (E.D.N.Y. 2000).

against its couriers age 40 and older in violation of the ADEA and proposing a nationwide class. *Holowecki, et al. v. Federal Express Corp.*, No. 02-civ-3355-LMM (S.D.N.Y.).  In May 2002, Plaintiffs' counsel filed a Complaint in the Middle District of Florida that made virtually identical allegations and proposed the same class.  *Bost, et al. v. Federal Express Corp.*, No. 8:02-cv-00837-EAK (M.D. Fla.).  FedEx moved to dismiss both Complaints as untimely filed because they were filed less than 60 days after plaintiffs made an EEOC charge claiming ADEA violations.  Both motions were granted.  The Eleventh Circuit affirmed the dismissal by the Florida court on June 8, 2004.  *Bost, et al. v. Federal Express Corp.*, 372 F.3d 1233 (11th Cir.), *cert. denied* 543 U.S. 1020 (2004).  The Second Circuit, however, reversed the dismissal of the New York court on March 8, 2006, *Holowecki, et al. v. Federal Express Corp.*, 440 F.3d 558 (2d Cir. 2006).

While *Holowecki* was awaiting decision in the Second Circuit, Plaintiffs' counsel and several of the *Holowecki* named plaintiffs filed yet a third action in the Central District of California in December 2005.  *Clausnitzer, et al. v. Federal Express Corp.*, No. SACV 05-1269 DOC (ANx).  Discovery began in 2006 and continued until August 2007.  Meanwhile, FedEx filed a Petition for Certiorari in *Holowecki*.  Discovery in the district court was not stayed, however, but was coordinated and consolidated with that in *Clausnitzer*, and it concluded before the case was stayed once Certiorari was granted in June 2007.  No motion for class certification was made in that action. The Supreme Court affirmed the Second Circuit on February 27, 2008, *Federal Express Corp. v. Holowecki*, 128 S. Ct. 1147, 170 L. Ed. 2d 10 (2008), and once it is remanded and the stay lifted, the case should proceed on the individual claims of the 12 remaining named plaintiffs (at least two of which are listed as Plaintiffs here in *Hulac*).

*Clausnitzer* proceeded without procedural and appellate diversions, and discovery was complete and thorough.  On that, the third Complaint with the same proposed class, Plaintiffs and their counsel fully litigated the issue of class certification on the merits.  Now Plaintiffs seek yet another forum to try their failed theory of class certification.  This blatant forum shopping entitles Plaintiffs' choice of forum to "little deference."  *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1006 (N.D. Cal. 2001).  Earlier this year, Judge Henderson granted a motion to transfer from the Northern District to the Central District in a case with very similar procedural facts, expressly finding

1  "substantial evidence of forum shopping." *Forrand, et al. v. Federal Express Corp.*, No. 3:07-cv-

2  4674-THE, 2008 U.S. Dist. LEXIS 10858, at *7 (N.D. Cal. Jan. 31, 2008) (A copy of the

3  Memorandum Opinion is attached hereto as Exhibit D).  Judge Henderson found:

> 4  Most significantly, the timing between Judge Fischer's unfavorable ruling regarding
> class certification in *Karamian* and the filing of this case strongly indicates a causal
> 5  relationship between the two.  This Court cannot reach the incredible conclusion that
> counsel representing a plaintiff who resides in the Central District, where counsel had
> 6  previously filed a lawsuit asserting claims on behalf of a putative class that included
> the plaintiff, were not engaged in forum shopping when they chose to file a nearly
> 7  identical class action in the Northern District days after the judge in the earlier-filed
> Central District case issued an unfavorable ruling.

9  *Id.* at *8-9.  Similarly here, the *Hulac* Complaint was filed two days after Judge Carter granted

10  summary judgment on all remaining claims of the named plaintiffs in *Clausnitzer*.  The forum

11  shopping for a favorable ruling must finally stop, and this action should be transferred to the Central

12  District of California.

14      **D.  The convenience of parties, witnesses, location of events, and relative ease of access**

15          **to sources of proof is not affected by a transfer.**

16      The convenience of the parties and witnesses will not be affected by a transfer from the

17  Northern District to the Central District.  Of the California *Hulac* Plaintiffs, an equal number are in

18  the Bay Area and the Los Angeles area.  Plaintiffs' counsel is located in Washington, DC, and

19  Defendant's lead counsel is in Memphis, Tennessee.[3]  Moreover, as evidenced by the discovery

20  taken in *Clausnitzer/Holowecki*, counsel for the parties have been able to come to agreements on

21  locations for depositions, resulting in depositions having been taken in at least nine different states.

22  As such, there is limited inconvenience to Plaintiffs as witnesses.

23      The significance of the location of the events and relative ease of access to sources of proof

24  to the transfer determination is also limited because Plaintiffs have alleged that FedEx engaged in

25  uniform practices pursuant to corporate policy and procedures that affected all putative class

26  members equally.  FedEx Headquarters is in Memphis, Tennessee, and many of the witnesses are

---

27  [3]  FedEx also maintains a legal office with resident attorneys in Irvine, California.  Plaintiffs have
28  listed no local California counsel, so it is impossible to weigh convenience to the parties on this
issue.

No. C 3:08-1557-JSW - Defendant Federal Express Corporation's Motion to Transfer Venue
Page 9

1   located there.  The Human Resource representatives for California are located in Central California.

2   As such, whether the case is in San Francisco or Santa Ana, neither location has an advantage for

3   convenience.

4

5   **IV.    CONCLUSION**

6        For each and all of the foregoing reasons, Defendant respectfully urges the Court to grant the

7   motion and order the transfer of this case to the Central District of California (Santa Ana).

8

9   Dated: May 13, 2008                          _/s/ Edward J. Efkeman_____
                                                 Edward J. Efkeman (Admitted *Pro Hac Vice*)
10                                               David S. Wilson, III (Bar No. 174185)
                                                 FEDERAL EXPRESS CORPORATION
11
                                                 Attorneys for Defendant
12                                               FEDERAL EXPRESS CORPORATION

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2

3

**STATE OF TENNESSEE, COUNTY OF SHELBY**

4

     I hereby certify that on May 13, 2008, I electronically filed Defendant Federal Express Corporation's Motion to Transfer Venue with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

5

6
    David L. Rose
    daver@roselawyers.com

7
    Earlene W. Rosenberg
    erosenberg@roselawyers.com

8
    ROSE & ROSE, P.C.
    1320 19th Street, N.W.

9
    Suite 601
    Washington, DC 20036

10
    202-331-8555

11

12

13
                       */s/ Edward J. Efkeman*
                       Edward J. Efkeman

14
                       Attorney for Defendant
                       Federal Express Corporation

15
                       3620 Hacks Cross Road
                       Building B, Third Floor

16
                       Memphis, TN  38125
                       Tel. No. (901)434-8555
                       Email:  eefkeman@fedex.com

17

18

19

20

21

22

23

24

25

26

27

28

David L. Rose (DCB 376379)
Terri N. Marcus (SBN 191869)
**ROSE & ROSE, P.C.**
1320 19th Street, N.W., Suite 601
Washington, D.C. 20036
Telephone: (202) 331-8555
Facsimile: (202) 331-0996

Attorneys for Plaintiffs

David D. Deason (SBN 207733)
Matthew F. Archbold (SBN 210369)
**DEASON & ARCHBOLD**
3300 Irvine Avenue, Suite 245
Newport Beach, California 92660
Telephone: (949) 794-9560
Facsimile: (949) 794-9517

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD CLAUSNITZER, GABRIEL CONTRERAS, ANDY KUBICKI, FRANK MARTINEZ, JODY LYNN MITCHELL, and all those similarly situated<br><br>Plaintiffs,<br><br>vs.<br><br>FEDERAL EXPRESS CORPORATION and Does 1 through 10, inclusive<br><br>Defendants. | Case No. SACV 05-1269 DOC (ANx)<br><br>**AMENDED COMPLAINT**<br><br>[ADEA COLLECTIVE ACTION]<br><br>DEMAND FOR JURY TRIAL |

## AMENDED COMPLAINT

1. This suit is brought to enforce and secure rights of Plaintiffs and other similarly situated older employees under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and to eliminate and correct the nationwide pattern and

Ex. A

1    practice of the Defendant Federal Express Corporation ("FedEx")

2    of discriminating against its couriers who are over the age of

3    forty.

### JURISDICTION AND VENUE

5    2.  This Court has jurisdiction over this case under 29

6    U.S.C. § 626(c) and 28 U.S.C. § 1332, § 1337.  Plaintiffs

7    Contreras, Kubicki, and Martinez are employed by Federal Express

8    Corporation at its station in Fullerton, California.  Venue in

9    this District is appropriate under the ADEA, 29 U.S.C. § 626(c).

### PARTIES

11   3.  Plaintiff Ronald Clausnitzer ("Clausnitzer") is an adult

12   resident of Dunedin, Florida.  He has been employed by Defendant

13   as a courier since December 3, 1983.  His primary job site has

14   been FedEx's Clearwater station in Dunedin, Florida.  He was born

15   on September 28, 1955.

16   4.  Plaintiff Gabriel Contreras ("Contreras") is an adult

17   resident of Brea, California.  He has been employed by Defendant

18   as a courier since June 5, 1986.  His primary job site has been

19   FedEx's station in Fullerton, California.  He was born on October

20   29, 1961.

21   5.  Plaintiff Andy Kubicki ("Kubicki")is an adult resident

22   of Yorba Linda, California.  He has been employed by Defendant as

23   a courier since September 10, 1984.  His primary job site has

24   been FedEx's station in Fullerton, California.  He was born on

25   July 18, 1952.

26   6.  Plaintiff Frank Martinez ("Martinez") is an adult

27   resident of Brea, California.  He has been employed by Defendant

28   as a courier for more than 10 years.  His primary job site has

2

1  been FedEx's station in Fullerton, California.  He was born on

2  January 7, 1951.

3       7.  Plaintiff Jody Lynn Mitchell is an adult resident of

4  Salt Lake City, Utah.  She has been employed by Defendant as a

5  courier for more than 10 years.  Her primary job site has been

6  FedEx's station in Midvale, Utah.  After working successfully for

7  Defendant for 16 years, she was transferred to West Valley City

8  in 2003 where she was subject to discriminatory treatment,

9  including false accusations and unfair write-ups by her

10 supervisor.  After working for Defendant for 16 years, she was

11 transferred to West Valley City in 2003.  Defendant terminated

12 her employment in September 2005.  She was born on July 3, 1960.

13      8.  Plaintiffs who have either joined this action via

14 opting-in pursuant to 29 U.S.C. § 216(b) or who have expressed

15 the desire to join this action after experiencing Defendant's

16 discriminatory policies and practices live and work throughout

17 the United States, including the states of Colorado, Florida,

18 Iowa, Illinois, Indiana, New Jersey, New York, Ohio, Tennessee,

19 Utah, and Washington.

20      9.  Defendant Federal Express Corporation ("FedEx" or

21 "Defendant") is a corporation engaged in the transportation of

22 packages by air and by ground throughout the United States.  The

23 corporation's headquarters are in Memphis, Tennessee.  FedEx is

24 an employer within the definition and coverage of 29 U.S.C. §

25 630(b) of the ADEA, the California Government Code, and other

26 state laws prohibiting age discrimination.

27 / / / /

28 / / / /

**EEOC HISTORY**

10.   Plaintiff Kubicki filed a charge of age discrimination against FedEx with the Equal Employment Opportunity Commission ("EEOC") on November 10, 2005, EEOC Case Number: 345-2006-00241. The charge was cross-filed with California's Department of Fair Employment and Housing ("FEHA").  He described the charge as a "Nationwide Class Action Charge" and alleged that FedEx "has engaged in Age discrimination against me and other older couriers."  Kubicki was sent a right-to-sue letter from FEHA on December 27, 2005.

11.   In his charge, Plaintiff Kubicki asserted that, at age 53, he is among the oldest couriers at his station.  He also alleged that Defendant's method of measuring productivity in terms of delivery stops per hour is discriminatory because Defendant uses the productivity numbers to get rid of older couriers.  The productivity requirements are fabricated and changed in ways to get rid of older couriers.

12.   Plaintiff Kubicki alleged that he has been singled out by a manager who has stated that "we have a problem with those older couriers."  He has also been removed from a sort function with the result that some of his work hours have now been given to a younger employee.  The change in his job duties also means that he has less time to set up his truck, which will make him appear to management to be less productive.  Kubicki fears that he will be terminated at any time.

13.   Plaintiff Clausnitzer filed a charge with the Tampa office of the EEOC on October 22, 2003 in which he alleged that "Federal Express, consistent with their previously established

1 | pattern of retaliation and discrimination against older couriers,
2 | devised and executed a plan to deter [others] and myself (Ron
3 | Clausnitzer) from exercising our rights under the Age
4 | Discrimination in Employment Act."
5 |     14.   On or about January 27, 2005, Clausnitzer filed an
6 | additional charge alleging that he was a target for termination
7 | because Defendant was engaging in a patter of retaliation against
8 | him and other older couriers.  On March 31, 2005, he filed an
9 | Amended Class Action charge alleging that in later 1994 and early
10 | 1995, FedEx adopted and implemented nationwide age discriminatory
11 | policies and practices designed to cause older couriers to leave
12 | their employment either by directly terminating them or by
13 | issuing them repeated notices of less than acceptable
14 | performance.  By letter dated October 3, 2005, the EEOC advised
15 | Clausnitzer of his right to file suit within ninety (90) days of
16 | the date he received the letter.  Plaintiff Clausnitzer received
17 | the letter a few days after it was sent in mid-October, 2005.
18 | This suit was filed on December 28, 2005, well within the 90 day
19 | period Plaintiff had to fie suit.

20 | **STATEMENT OF FACTS**

21 |     15.   Defendant employs thousands of couriers throughout the
22 | United States.  On information and belief, hundreds or more of
23 | these couriers are age 40 or older.
24 |     16.   Each of the Plaintiffs is a full-time courier or former
25 | full-time courier for FedEx.  Each has received excellent or good
26 | performance evaluations from the time he or she was hired until
27 | at least 1994.
28 | / / / /

17.   Since November 1994, FedEx has utilized a compensation system called "Best Practices Pays" ("BPP").   FedEx also uses a standard for assessing the performance of couriers called "Minimum Acceptable Performance Standards" ("MAPS").

18.   Upon information and belief, BPP and MAPS have been used by Defendant to force or encourage older, experienced couriers to quit or otherwise leave their employment with FedEx, and to do so before they became 55 years of age.

19.   FedEx has given managers and other supervisors lists of older couriers who are targets for increased supervision, discipline, harassment and termination from employment.   This targeting is based strictly upon age.   FedEx has not engaged in similar targeting of younger couriers.

20.   Under the policies first adopted in 1994 and implemented and intensifying thereafter, FedEx gives older couriers who are injured on the job or who otherwise require medical absence intense scrutiny and harassment, and finds reasons to discharge them or induce them to leave.   FedEx has not treated younger couriers who have been injured or who have otherwise required medical absences with such scrutiny and harassment; nor have younger couriers been discharged or induced to leave their employment with FedEx.

21.   FedEx has interpreted and administered BPP and MAPS in a manner that harms couriers who are over the age of 40.

22.   Although BPP and MAPS do not mention age, the two programs have become vehicles by which FedEx causes its older couriers to quit or be discharged from its employment.   Those procedures and others are administered by FedEx in a manner that

6

1   rarely if ever causes the termination of younger couriers.

2       23.   Defendant has also terminated older couriers for taking

3   the same actions as younger couriers while the younger couriers

4   were not disciplined or terminated.   Older couriers have been

5   terminated for trivial reasons when they have no record of

6   discipline or performance problems.   Older couriers fear

7   termination because their actions are highly scrutinized by

8   management while the actions of younger couriers are not.

9       24.   Older couriers have also been falsely accused of

10  wrongdoing and have had their performance appraisals affected

11  negatively as a result.

12      25.   Defendant has also forced older couriers to retire by

13  assigning them to routes that are likely to cause injuries.   When

14  the couriers take short or long term disability leave to have

15  surgery or allow their injuries to heal, their jobs are no longer

16  available to them when they are ready to return to work.   When

17  faced with the alternative of taking a position with FedEx for

18  significantly less pay and/or having to take a position in a

19  different state, the older couriers simply quit.

20      26.   Under the policies and practices described above, FedEx

21  has shown preference to younger, less experienced couriers in

22  starting times, assignments of production goals, overtime

23  assignments, route assignments, discipline, performance

24  evaluations and other terms and conditions of employment as

25  compared to older couriers, including Plaintiffs.

26      27.   Employment practices that discriminate against older

27  couriers and favor younger couriers are the prevailing pattern

28  and practice of FedEx in the United States.   Upon information and

7

1  belief, FedEx has continued to follow employment practices in the

2  United States that favor younger couriers and harm older

3  couriers.

4      28.  As part of its compensation to couriers, FedEx provides

5  a health plain that assures assistance to the employee in the

6  payment of medical expenses, drug prescriptions, and dental

7  expenses.  FedEx provides a Medical Absence Pay and Short Term

8  and Long Term disability benefits if a courier is sick or injured

9  and unable to work.  FedEx provides a pension plan, a profit

10 sharing plan, a retirement saving plan, and an optional savings

11 plan.  FedEx's contribution to these plans costs the corporation

12 thousands of dollars per courier in addition to the courier's

13 regular wages.  In a booklet distributed to couriers in or about

14 1994, FedEx estimated that a courier earning $33,893 in gross pay

15 cost the corporation another $15,161 in employee benefits.  On

16 information and belief, the benefits FedEx pays to couriers cost

17 the company about 45% of the courier's gross pay

18     29.  Upon information and belief, FedEx has adopted and

19 applied BPP and MAPS in a discriminatory manner to encourage or

20 require its older couriers to leave their employment before they

21 become eligible for retirement.  FedEx took such actions, based

22 on the belief that elimination of older couriers from its work

23 force would reduce its labor costs and the costs of its health

24 and medical benefits, retirement program, and other employee

25 benefit plans.

26     30.  Defendant's discriminatory practices have harmed

27 Plaintiffs and other similar situated employees over the age of

28 forty.  Those practices resulted in the termination of the

8

1  employment of some members of the class.  Other class members

2  have suffered from a loss of income and other benefits, or other

3  disadvantageous terms and conditions of employment.

4      31.  Unless restrained by order of this Court, Defendant

5  will continue to pursue policies and practices that cause

6  Plaintiffs and other similarly situated older couriers to suffer

7  irreparable harm.

**CLAIM ONE**

**For Discrimination in Violation of the ADEA**

**(On Behalf of All Plaintiffs and the Class)**

11      32.  Plaintiffs reassert and reallege paragraphs 1 through

12 31, inclusive, as if fully set forth and incorporate said

13 paragraphs herein by reference.

14      33.  Plaintiffs and the class of similarly situated older

15 couriers are all age 40 or older.

16      34.  Plaintiffs and the class of similarly situated older

17 couriers were all well-qualified to perform the job

18 responsibilities of a FedEx courier.  Each performed his or her

19 job in a satisfactory manner.

20      35.  The employment practices of FedEx described above in

21 paragraphs 12 through 28 harmed Plaintiffs and the class of

22 similar situated older couriers while favoring younger couriers.

23 The practices so described and are not based upon a reasonable

24 factor other than age.

25      36.  Defendant has knowingly and purposefully engaged in age

26 discriminatory practices with the full knowledge that in so doing

27 it was discriminating against its older couriers, without regard

28 for the rights of those couriers under the ADEA.

37.  Defendant has followed the age discriminatory employment practices described above and has shown reckless disregard for the rights of its couriers under the ADEA and under relevant provisions of state laws prohibiting age discrimination in employment.

38.  Defendant has not asserted a reasonable factor other than age as a justification for its age discriminatory practices. Defendant has no bona fide occupational qualification or business necessity to justify its discriminatory practices against its older couriers.

### CLAIM TWO

### For Violation of Cal. Gov. Code § 12940

### (On Behalf of the Class of California Residents)

39.  Plaintiffs reassert and reallege paragraphs 1 through 38, inclusive, as if fully set forth and incorporate said paragraphs herein by reference.

40.  Section 12940 of California's Government Code makes it unlawful:

> For an employer, because of the . . . age . . . of any person . . . to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

41.  There are thousands of couriers employed by Defendant in the state of California.  On information and belief, at least several hundred of these couriers are 40 or older.

42.  The practices alleged in paragraphs 12 through 28 are unlawful under California's Fair Employment and Housing laws, Cal. Gov. Code § 12940.  Plaintiffs Contreras, Kubicki, and

1  Martinez are all over age 40 and seek to represent the class of

2  couriers over 40 years of age who work in California.

3      43.   Plaintiff Kubicki has exhausted the administrative

4  requirements of California's Fair Employment and Housing laws.

5      44.   The claims of Plaintiffs Contreras, Kubicki, and

6  Martinez and of other older couriers share common questions of

7  fact and law, including whether Defendant intentionally engaged

8  in a pattern or practice of age discrimination against its older

9  couriers by implementing company-wide employment practices that

10 were intended to, and did result in driving older couriers out of

11 their employment as couriers; and whether Defendant engaged in

12 policies and practices that discriminated against couriers over

13 age 40 that were not required by or consistent with business

14 necessity.

15     45.   The claims of Plaintiffs Contreras, Kubicki, and

16 Martinez are typical of the age discrimination claims of the

17 class they seek to represent.  Plaintiffs are current couriers

18 who have been harassed and discriminated against in the terms and

19 conditions of their employment.  Plaintiffs all claim that

20 Defendant intentionally engaged in a pattern or practice of age

21 discrimination against older couriers by implementing company-

22 wide plans that were intended to and did drive older couriers out

23 of the company disproportionately.  The factual issues concerning

24 liability under the state law claim are identical or similar to

25 the issues concerning liability under the ADEA.

26     46.   Plaintiffs are adequate representatives of the class

27 they seek to represent because they are not and have never been

28 supervisors or members of management.  There are no conflicts of

1  interests between themselves and the class they seek to

2  represent.  In addition, Plaintiffs have retained experienced

3  counsel with a multi-state practice in age discrimination

4  matters, collective actions, and other employment discrimination

5  matters.

6      47.  The actions taken against Plaintiffs and other older

7  couriers constitute discrimination under Cal. Gov. Code § 12940.

8      48.  As a direct and proximate result of Defendant's

9  deliberate, intentional, and unlawful violation of Plaintiffs'

10 statutory rights, Defendants wrongfully caused Plaintiffs and

11 other older couriers to lose income and benefits and to suffer

12 humiliation and personal embarrassment.

13     49.  The acts committed by Defendant were committed with

14 oppression, fraud, and malice and resulted in emotional distress

15 to Plaintiffs and other older couriers.

16     50.  Defendant has not asserted a reasonable factor other

17 than age as a justification for its age discriminatory practices.

18 Defendant has no bona fide occupational qualification or business

19 necessity to justify the discrimination against its older

20 couriers.

21                    **CLAIM THREE**

22        **For Retaliation in Violation of the ADEA**

23          **(On Behalf of Plaintiff Clausnitzer)**

24     51.  Plaintiff Clausnitzer reasserts and realleges

25 paragraphs 1 through 50, inclusive, as if fully set forth and

26 incorporate said paragraphs herein by reference.

27     52.  On or about December 1, 2003, Defendant began taking

28 adverse actions against Plaintiff Clausnitzer as part of a plan

12

1  of retaliation for Clausnitzer's participation in two previous

2  lawsuits against FedEx (*Freeman, et al. v. Federal Express Corp.*

3  and *Bost, et al. v. Federal Express Corp.*).

4      53.   Plaintiff Clausnitzer's senior manager, Robert Saiz,

5  demanded that Plaintiff meet certain unrealistic performance

6  standards or be terminated.   On information and belief, Mr. Saiz

7  was instructed to eradicate the Clearwater, Florida station of

8  "dead wood".   In January 2004, Plaintiff Clausnitzer was told

9  that he was one of the "targets".

10     54.   In January and/or February 2004, Plaintiff

11  Clausnitzer's route goals were changed by Defendant without

12  notice or reason.   While younger couriers' routes were

13  reorganized and condensed, Plaintiff Clausnitzer's routes were

14  significantly increased by the addition of bulk stops, early

15  pickups, and more diverse delivery situations.

16     55.   In April 2005, plaintiff Clausnitzer was targeted and

17  disciplined for productivity issues under MAPS.   Unlike his other

18  younger co-workers, Defendant changed the basis upon which his

19  performance is measured so that his performance appears to be

20  below the MAPS "goals".   Based on this alleged sub-standard

21  performance, Plaintiff Clausnitzer is closer to termination than

22  his younger co-workers.

23     56.   Defendant took such adverse actions against Plaintiff

24  Clausnitzer knowing that Plaintiff had complained of age

25  discrimination before both the EEOC and in federal court.

26     57.   As a result of Defendant's retaliation, Plaintiff

27  Clausnitzer has suffered harm, including emotional and mental

28  distress.

**PRAYER FOR RELIEF**

1  Plaintiffs pray for orders requiring the Defendant to
2  notify, in a form to be approved by the Court, all current
3  couriers over the age of 40, and former couriers who had reached
4  the age of 40, before their employment with Federal Express was
5  terminated, of the allegations in this law suit and the right to
6  participate in this suit; and
7
8  Plaintiffs pray for an order granting class certification on
9  behalf of all California residents;
10  Plaintiffs pray for an order preliminarily and permanently
11  enjoining Defendant and its officers, agents, employees,
12  successors and all persons from engaging in employment practices
13  that discriminate against older couriers on grounds of age, and
14  from following neutral employment practices that have a
15  discriminatory impact against older couriers, unless the employer
16  can show that such practices are based upon a "reasonable factor
17  other than age" within the meaning of the ADEA.  Such an order
18  should enjoin the Defendant from:
19  1) treating older couriers less favorably than younger
20  couriers in the allocation of routes, start times, overtime
21  opportunities, discipline and other terms and conditions of
22  employment;
23  2) terminating or disciplining older couriers who are absent
24  from work because of injuries or other medical problems while
25  they are recovering from same, in the absence of solid medical
26  evidence that they are disabled from performing the duties of a
27  courier;
28  / / / /

3) treating older couriers less favorably than younger couriers in discipline and other terms and conditions of employment;

4) following employment practices such as BPP and MAPS and other practices that have a discriminatory impact against older couriers, unless this Court determines that any such practice is based upon a reasonable factor other than age;

5) failing or refusing to reinstate older couriers whose employment was terminated by Defendant because of their age or because of unlawful practices by Defendant which resulted in their separation from employment by Defendant not based upon a factor other than age;

6) retaliating against any couriers who have opposed any discriminatory policies or practices, or who have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation.

Plaintiffs further pray for an award of damages to them and plaintiffs who opt into this suit for:

1) loss of income and the value of fringe benefits as determined by the jury; including the loss of future earnings for those couriers who have lost their positions with Defendant until such time as they are reinstated or offered reinstatement;

2) an award of liquidated damages as determined by the jury;

3) an award of punitive damages for violations of FEHA as determined by the jury;

4) an award of compensatory damages for violations of FEHA as determined by the jury;

/ / / /

5) pre-judgment interest in an amount to be determined;

6) costs of litigation, including expenses and attorneys' fees and expert witness fees; and

7) such other relief as may be just.

Dated: March 8, 2006                    Respectfully submitted,

David L. Rose
Terri N. Marcus
Attorneys for PLAINTIFFS

1

**<u>DEMAND FOR JURY TRIAL</u>**

2        Plaintiffs hereby demand a jury trial as provided by Rule

3  38(a) of the Federal Rules of Civil Procedure.

4

5  DATED: March *13*, 2006                    ROSE & ROSE, P.C.

6

7                                     By: _____

8                                          David L. Rose
                                           Terri N. Marcus
9                                          Attorneys for PLAINTIFFS

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | **Clausnitzer, et al. v. Federal Express Corp.**
**USDC, Central, Case No. SACV 05-1269 DOC (ANx)**

2

3 | **PROOF OF SERVICE**

4 | STATE OF CALIFORNIA    )
                                            ) ss.
5 | COUNTY OF ORANGE    )

6 |     I am an attorney licensed to practice in the State of California. I am over the age
of eighteen and not a party to the within action; my business address is 1320 19th Street,
7 | N.W., Suite 601, Washington, D.C. 20036

8 |     On March 13, 2006, I served the within **AMENDED COMPLAINT** by placing __ the
original / _X_ a true copy thereof enclosed in a sealed envelope addressed as follows:

9

10 | R. Jeffery Kelsey, Esq.
David S. Wilson, III
Federal Express Corporation
11 | 3620 Hacks Cross Road
Building B, 2nd Floor
12 | Memphis, TN 38125

13 | (X)   **BY MAIL:** I am "readily familiar" with this firm's practice of collection, processing,
and depositing mail, with postage fully prepaid, with the U.S. Postal Service on the
14 | same day in the ordinary course of business. I am aware that, on motion of party
served, service is presumed invalid if the postal cancellation date or postage meter
15 | date is more than one day after date of deposit for mailing as stated in the affidavit.

16 | ( )   **BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office(s)
of the addressee(s) marked with a ***.
17 |

18 | ( )   **BY OVERNIGHT MAIL:** I caused said envelope(s) to be delivered by Federal
Express to the addressee(s) marked with a +++.

19 | ( )   **BY FACSIMILE:** In addition to the above service by mail, hand delivery, or Federal
Express, I caused said document(s) to be transmitted by facsimile to the
20 | addressee(s) marked with a ^^^.

21 | ( )   **STATE:** I declare under penalty of perjury under the laws of the State of California
that the foregoing is true and correct.
22 |

23 | (X)   **FEDERAL:** I declare that I am a member of the bar of this Court who directed that
this service was be made.

24 | Executed on March 13, 2006 in Washington, D.C.

25

26 | Terri N. Marcus

27

28

1

2

3

4

5

6

7

8

9

10

FILED-SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

OCT 19 2007

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

_____ Priority
_____ Send
_____ Clsd
_____ Enter
_____ JS-5/JS-6
_____ JS-2/JS-3

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

11  RONALD CLAUSNITZER, GABRIEL)
    CONTRERAS, ANDY KUBICKI,        )
12  FRANK MARTINEZ, JODY LYNN       )
    MITCHELL, and all those similarly )
13  situated,                        )
                                     )
14            Plaintiffs,            )
                                     )
15        v.                         )
                                     )
16  FEDERAL EXPRESS                  )
    CORPORATION,                     )
17                                   )
             Defendant.              )
18                                   )
                                     )
19                                   )
                                     )
20                                   )
                                     )
21                                   )
                                     )
22  _____

CASE NO. SA CV 05-1269 DOC
(ANx)


**O R D E R** DENYING PLAINTIFFS'
MOTION FOR CLASS
CERTIFICATION

DOCKETED ON CM

OCT 2 2 2007

BY _____

23      Before the Court is Plaintiffs' Motion for Class Certification.  After considering the

24  moving, opposing, and replying papers, as well as oral arguments, the Court hereby DENIES the

25  Motion.

26  **I.    BACKGROUND**

27      Plaintiffs Ronald Clausnitzer, Gabriel Contreras, and Frank Martinez have each been

28  employed as couriers for Defendant Federal Express Corporation ("FedEx") for more than ten



Ex. B

1    years.  Each was born before December 31, 1961; Martinez on January 7, 1951, Clausnitzer on
2    September 28, 1955, and Contreras on October 22, 1961.  On December 28, 2005, Plaintiffs
3    filed this action for discrimination in violation of the Age Discrimination in Employment Act
4    ("ADEA") on behalf of themselves and those similarly situated and for retaliation in violation of
5    the ADEA on behalf of Clausnitzer.  Specifically, Plaintiffs alleged that in 1994, FedEx adopted
6    policies referred to as "Best Practices Pays" ("BPP") and Minimum Acceptable Performance
7    Standards ("MAPS"), which were purportedly designed to encourage older couriers to quit
8    employment with Defendant before they reached fifty-five years of age.  Under these policies,
9    FedEx allegedly instructed its management to target older employees for increased supervision,
10   discipline, harassment, and termination.  Plaintiffs allege that this targeting was based upon age.
11   Moreover, Plaintiffs contend that FedEx bestows preferential treatment on younger couriers by
12   giving them better starting times, production goals, and overtime.  Plaintiffs' Complaint seeks an
13   order requiring FedEx to notify all current and former couriers over the age of forty of this
14   litigation, and their right to intervene in it, as well as enjoining FedEx from engaging in further
15   discriminatory conduct.  Additionally, Plaintiffs seek damages for loss of income and benefits,
16   interest, attorney's fees, and costs.

17        Since this action was filed, other FedEx couriers have opted in to this action or the related
18   *Holowecki* lawsuit in New York, joining the three original plaintiffs, Clausnitzer, Contreras, and
19   Martinez and bringing the total number of plaintiffs to 85.  Plaintiffs, however, estimate that
20   there are 23,000 present and former couriers in the putative class.  The ages of these sixty
21   Plaintiffs varies from under 43 to over 60.  Their employment status also varies – 21 were fired
22   for a variety of reasons, 6 resigned or retired, and 26 are currently employed and according to
23   FedEx have suffered no tangible adverse employment action.  The current Plaintiffs come from
24   at least 43 different stations out of almost 700.

25        Plaintiffs request that the Court certify a nationwide case for collective action and notice
26   to class members under the opt-in provision of the ADEA, 29 U.S.C. §§ 216(b), 628.
27   Specifically, Plaintiffs seek certification for the following class: Federal Express couriers and
28   former couriers who had at least ten years of full-time service and were over 40 when they

1    suffered adverse job actions as a result of age discrimination that occurred after September 4,

2    1995.[1]  Plaintiffs also ask the Court to certify an opt-out Rule 23(b)(2) class for injunctive and

3    declaratory relief under state laws that provide a parallel remedy for age discrimination, i.e.

4    Arizona, California, Colorado, Florida, Hawaii, Massachusetts, Michigan, Missouri, New Jersey,

5    New York, Ohio, Oregon, Pennsylvania, Tennessee, and Texas.  It is unclear from Plaintiff's

6    papers whether they seek to certify numerous classes by state or one class across all fifteen

7    states.[2]

8         FedEx argues in response that Plaintiffs's basic pattern and practice theory is

9    conceptually flawed.  FedEx emphasizes that the following facts are undisputed: (1) FedEx has

10   continued to employ a greater percentage of couriers over age 40;[3] (2) FedEx has consistently

11   terminated couriers under 40 at a rate higher than their counterparts over 40;[4] (3) couriers under

12   40 have consistently left their positions voluntarily at a rate greater than their counterparts over

13   40.[5]  Accordingly, Plaintiffs' expert turns to comparisons between FedEx couriers over 40 and

14   national workers over 40.  FedEx argues that such a comparison is flawed because these national

15   workers do not necessarily work in an industry even remotely related to what FedEx does.

16        While Plaintiffs assert that FedEx headquarters controls every aspect of local operations,

17   FedEx vehemently disputes this characterization and points out that Plaintiffs have not cited any

18   _____

19        [1] Although Plaintiffs' moving papers limit the class to couriers over age 42,
     Plaintiffs' Reply amends the class definition to include all couriers over age 40 who
20   satisfy the other criteria enumerated above.

21        [2] Plaintiffs' class certification motion raises this issue as to fourteen of these states
22   for the first time as the Complaint in this case only mentions a California state class.

23        [3] In 1997, 31.5% of FedEx couriers were over 40.  In 2004, 54% of FedEx couriers
24   were over 40.  Table 1 to Report of Dr. Daniel Hamermesh, Pls.' Ex. 11.

25        [4] Between 1997 and 2004, 2.58% of couriers under 40 were terminated by
     management action, whereas only 1.69% of couriers over 40 were terminated by
26   management action.  Table 1 to Report of Dr. Daniel Hamermesh, Pls.' Ex. 11.

27        [5] Between 1997 and 2004, 4.72% of couriers under 40 quit, whereas only 2.18% of
28   couriers over 40 quit.  Table 1 to Report of Dr. Daniel Hamermesh, Pls.' Ex. 11.

1   evidence to support this assertion. According to FedEx, all disciplinary decisions are made at

2   the local level by local managers. Decl. of Randell Hyneman ("Hyneman Decl.") ¶ 3; *see also*

3   Decl. of Roberta Garner ("Garner Decl.") ¶¶ 3-5. Several Plaintiffs have acknowledged this

4   reality in their depositions. *See, e.g.* Dep. of Maggie Dean ("Dean Dep.") 144:8-9 (manager

5   would be the one to terminate Dean), Def.'s Ex. C; Dep. of Esther Harrison 70:20-71:1 (issues

6   limited to one particular station and particular managers there, not other stations where Harrison

7   worked), Def.'s Ex. D; Dep. of David Henning ("Henning Dep.") 98:3-5 ("the penalty for this,

8   in this station, is going to be much different than the penalty for this in another station"), Def.'s

9   Ex. E. FedEx states that all notations in an employee's personnel file, Performance Reminders,

10  Warning Letters, and decisions to terminate are made by local managers. Departments within

11  FedEx World Headquarters in Memphis, Tennessee – Human Resources, Human Resources

12  Compliance, the Human Capital Management Program and the Labor & Employment Legal

13  Group – are only contacted if local managers have questions about FedEx policies and

14  procedures or when discipline is contemplated against an employee with an outstanding Internal

15  Equal Employment Opportunity ("IEEO") complaint. Even then these departments do not have

16  any authority to make discipline decisions, including termination. *See* Garner Decl. ¶ 4.

17      FedEx also contends that Plaintiffs have mischaracterized certain procedures as

18  discipline. Specifically, FedEx states that Online Compliments and Counselings ("OLCC") can

19  be positive or negative and are merely advisory so they cannot be used against employees or

20  negatively impact their performance scores. Accordingly, FedEx argues that many of the

21  purported "disciplinary" actions Plaintiffs reference were not disciplinary actions. FedEx also

22  challenges Plaintiffs' comparison of the frequency of OLCCs before and after some Plaintiffs

23  turned 40, around the year 2000. Managers could not enter OLCCs online until June 5, 2000.

24  Prior to that date an employee's counselings and compliments were kept on the employee's

25  paper calendar, which was not included in Plaintiffs' exhibits.

26      Finally, Plaintiffs' anecdotal evidence of discrimination in many instances compares

27  Plaintiffs with "younger" workers who were actually over 40 years old at the time of the alleged

28  disparate treatment. *See, e.g.,* Pls.' Ex. 42 Plaintiff Rocco Notarfrancesco's record re: Elaine

1  Mason (Record is dated August 10, 2006. Mason, who was born on August 16, 1961, was 44
2  years old at that time, thus, although she was younger than Notarfrancesco, she is within the
3  class for which Plaintiffs seek certification).

4  **II.    DISCUSSION**
5      **A.    ADEA Opt-In Class**
6          **1.    Legal Standard**
7        The ADEA prohibits age discrimination, making it unlawful for an employer "to
8  discharge any individual or otherwise discriminate against any individual with respect to his
9  compensation, terms, conditions, or privileges of employment, because of such individual's
10  age." 29 U.S.C. § 623(a)(1). The ADEA explicitly incorporates section 16(b) of the Fair Labor
11  Standards Act, which authorizes employees to bring a "collective action" on behalf of
12  themselves and other "similarly situated" employees. To show the requisite disparate impact or
13  nationwide pattern and practice of discrimination, plaintiffs often present statistical evidence
14  showing a bias against older workers. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S.
15  324, 339, 97 S. Ct. 1843 (1977). Although at the class certification stage courts should not
16  directly address the merits of plaintiff's allegations, the court need not blindly accept plaintiff's
17  statistics. *See Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir. 1984) ("this principle should
18  not be talismanically invoked to artificially limit a trial court's examination of the factors
19  necessary to a reasoned determination of whether a plaintiff has met her burden of establishing
20  each of the . . . class action requirements").

21        Plaintiffs request that the Court determine whether the proposed class is "similarly
22  situated" for purposes of the ADEA, using the ad hoc case-by-case two stage approach. Under
23  this two stage procedure, a court usually makes an initial "notice stage" determination of
24  whether plaintiff are "similarly situated," at which point the court conditionally certifies the
25  action for notice of opt-in rights upon a showing of substantial allegations that the putative class
26  members were victims of a single decision, policy, or plan. *Thiessen v. General Elec. Capital
27  Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001). At the conclusion of discovery, the court
28  reexamines certification often upon a motion by defendant to decertify the class, applying a more

1  stringent standard for "similarly situated." *See Thiessen v. General Elec. Capital Corp.*, 267
2  F.3d 1095, 1102-03 (10th Cir. 2001). The Court agrees with the Tenth Circuit's reasoning that
3  this ad hoc approach is superior to the alternative approaches tied to Rule 23's standards because
4  Congress explicitly chose to create a special "similarly situated" standard for class actions under
5  the ADEA rather than apply Rule 23.

6         Nevertheless, in this case, Plaintiffs did not move for conditional class certification
7  shortly after filing the action; rather Plaintiffs waited until they had the benefit of a year of
8  discovery, filing the instant class certification motion on August 1, 2007, less than three months
9  before discovery closed. Consequently, given that Plaintiffs filed this class certification motion
10 on the eve of the discovery cut-off date, it would be inappropriate at this late stage of the
11 proceedings to apply the more lenient "notice stage" standard of "similarly situated" as Plaintiffs
12 request.[6] Because Plaintiffs have already had the benefit of full discovery, numerous class
13 members have already opted in without formal notice, and Plaintiffs have presented numerous
14 exhibits in support of their motion, the Court finds it appropriate to look beyond Plaintiffs'
15 allegations to determine whether they are in fact "similarly situated" under the more stringent
16 final certification standard.

17        In light of this decision to evaluate Plaintiffs' Motion under the more stringent standard
18 and Plaintiffs' representations at the June 11, 2007 hearing that they had not yet deposed senior
19 FedEx executives in Memphis, the Court continued the hearing until after the close of discovery
20 to ensure that Plaintiffs had the benefit of full discovery to present all of their evidence in
21 support of their contention that they are in fact "similarly situated." The hearing was
22 subsequently continued twice, first based on Plaintiffs' representations that they had not yet fully
23 reviewed documents produced on the eve of the discovery cut-off, which were allegedly
24 inconsistent with previous discovery and later in response to the parties' joint application. Now
25 after several additional months of discovery and supplemental briefing, discovery has closed and

26 _____

27        [6] Moreover, Plaintiffs and their counsel have pursued these same age
   discrimination allegations against FedEx over a six year time period in three district
28 courts. Pl.'s Mot. 34:14-17.

1   the Court turns to evaluate Plaintiffs' contention that they are "similarly situated" for purposes of

2   the ADEA under the more stringent final certification standard.  Accordingly, the court shall

3   examine Plaintiffs' statistical evidence in determining whether certification is warranted and

4   treat Plaintiffs' Motion as the final motion for class certification.

5                  **2.      Plaintiffs' Statistics and Anecdotal Evidence**

6          The Court agrees with FedEx that the ultimate issue is how FedEx treated its couriers

7   over 40 in relation to its couriers under 40.  As FedEx correctly points out, even Plaintiffs'

8   expert admits that the nature of a business affects the quit and fire rates, as does the stringency of

9   a company's rules, and fire and quit rates are lower in unionized companies.  Dep. of Daniel

10  Hamermesh 21:7-11, 22:1-4, 61:6-11, Def. Ex. H.  Thus, the comparisons between the quit and

11  fire rates of FedEx couriers and a national sample of workers from various industries is

12  irrelevant to whether FedEx discriminated against its couriers over 40.  Furthermore, even if the

13  quit and fire rates at these other companies were relevant, it would be difficult to ensure that

14  other factors weren't interfering with the comparison.  Comparisons between FedEx and other

15  purportedly analogous companies is similarly unhelpful.  Although employees at UPS, DHL, and

16  the United States Postal Service, like FedEx couriers, deliver packages, important differences

17  between these company preclude a probative comparison.[7]  Moreover, as to either type of

18  comparison asserted, Plaintiffs have not presented any authority for the proposition that a

19  company can violate the ADEA by treating its employees differently than other companies treat

20  their employees.[8]  Such a rule would be preposterous as it would create liability for companies

21  who treated their workers equally regardless of age or even treated workers over 40 better than

22  _____

23      [7] For example, UPS is a unionized company and as Plaintiffs' own expert

24  admitted, there is "strong evidence" that fire and quit patterns are different among
    unionized and non-unionized companies.

25

26      [8] Accepting such a framework would also have the potentially absurd result of
    allowing an employer who treated two groups of employees differently, to argue that it

27  was not discriminating because it was treating the disadvantaged group better than other
    companies were treating the group, e.g. paying female workers 80% of what it paid

28  equivalent male workers, when the industry only paid 75%.

1  workers under 40, if the company did not give workers over 40 the same benefits as another

2  company gave its workers over 40.  This is not the law.  The law does not require FedEx or any

3  other company to conform its practices to a national average or that of any other company.  The

4  ADEA also "does not require an employer to accord special treatment to employees over forty

5  years of age[, but to treat] an employee's age . . . in a neutral fashion." *Slenzka v. Landstar*

6  *Ranger, Inc.*, 122 Fed. Appx. 809, 813 (6th Cir. 2004) (citing *Parcinski v. Outlet Co.*, 673 F.2d

7  34, 37 (2d Cir. 1982) and *Williams v. General Motors Corp.*, 656 F.2d 120, 129 (5th Cir. 1981)).

8  As long as FedEx treats its workers under and over 40 uniformly, i.e. applies its employment

9  practices without regard for age, the Company is not discriminating under the ADEA.[9]

10      As to the comparisons within FedEx, oddly, Plaintiff's expert did not calculate any

11  statistics for the quit and fire rates of couriers who were both over 40 and had over 10 years of

12  service with FedEx, i.e. the members of the putative class.  Instead, Dr. Hamermesh calculated

13  the rates for couriers over 40 and couriers of all ages with more than 10 years of service

14  separately.  By contrast, FedEx's expert analysis examined couriers over 40 who also had 10

15  years of service at FedEx.  Def. Ex. A.  In sum, Dr. Baker found that the involuntary

16  terminations for couriers in this category were significantly less than expected (based on their

17  percentage of total couriers) in every year she reviewed, except that the difference was not

18  statistically significant in one of the ten years.  Dr. Baker also found that the quit rate among

19  couriers over 40 who also had 10 years of service at FedEx was likewise less than expected

20  (based on their percentage of total couriers) for all ten years.  Even Plaintiff's expert's figures

21  show that the quit and termination rates among FedEx couriers over 40 are lower than those for

22  younger FedEx couriers.  Accordingly, an examination of these raw numbers leads the Court to

23  conclude that the statistics do not evidence a pattern or practice of age discrimination against

24

25

26  _____

27  [9] Accordingly, although Plaintiffs have been unable to complete discovery as to
   third parties UPS and DHL, such discovery is unnecessary because it is irrelevant to
28  Plaintiffs' ADEA claims and their Motion to certify a class of FedEx couriers.

1 | FedEx couriers over 40.[10]

2 |     Plaintiffs' anecdotal evidence does not alter this conclusion. "Circumstantial and

3 | anecdotal evidence of discrimination is commonly used in Title VII 'pattern and practice' cases

4 | to bolster statistical proof by bringing 'the cold numbers convincingly to life.'" *Dukes v.*

5 | *Wal-Mart, Inc.*, 474 F.3d 1214, 1230 (9th Cir. 2007) (citing *Int'l Bhd. of Teamsters v. United*

6 | *States*, 431 U.S. 324, 339, 97 S. Ct. 1843 (1977)). However, Plaintiffs here have not presented

7 | statistical proof of discrimination. Thus, because the statistics defeat rather than support

8 | Plaintiffs' claims of discrimination, there is nothing for the anecdotal evidence to bring to life.

9 |     An examination of the anecdotal evidence, despite this deficiency, shows that like the

10 | statistical evidence, the anecdotal evidence does not support Plaintiffs' allegations of a common

11 | plan, policy or practice of discrimination against older FedEx couriers. Some of the submitted

12 | declarations from opt-in Plaintiffs do not even discuss age discrimination, while others complain

13 | of actions taken against the individual for performance, but do not allege that a younger courier

14 | acted in the same way with different results. When younger couriers are discussed at all, the

15 | declarants often fail to identify a specific young courier who was allegedly treated more

16 | favorably; instead general statements are made about unspecified younger couriers. Thus, even

17 | if Plaintiff could prove its case on anecdotal evidence alone, the evidence presented is clearly

18 | insufficient.

19 |     **3.**    **Plaintiffs are not "Similarly Situated" under the ADEA**

20 |     Even though Plaintiffs have failed to present any statistical evidence in support of their

21 |

22 |     [10] At oral argument, counsel for Plaintiffs focused on what he views as the

23 | inexplicably lower number of FedEx couriers who retire from FedEx after twenty years of

24 | service. There are many problems with inferring discrimination from this figure alone – most importantly that Plaintiffs' have created an artificial category, which does not

25 | comport with reality because their argument presupposes that someone who begins as a courier retires as a courier, when in reality FedEx promotes from within, such that many

26 | people who begin as couriers will not retire as couriers. Moreover, the low retirement

27 | numbers for couriers has multiple other possible explanations, including lateral switches to customer service representatives jobs within FedEx and pursuing employment

28 | opportunities at other companies.

1  claims, given that the class certification decision should not be based on the merits, the Court

2  now turns to this issue of whether Plaintiffs are in fact "similarly situated." At this final

3  certification stage, the Court makes a factual determination regarding the propriety and scope of

4  the class by considering three factors: "(1) the disparate factual and employment settings of the

5  individual plaintiffs, (2) the various defenses available to the defendant which appeared to be

6  individual to each plaintiff, and (3) fairness and procedural considerations." *Pfohl v. Farmers*

7  *Ins. Grp.*, 2004 WL 554834, *2 (C.D. Cal. 2004) (citing *Thiessen*, 267 F.3d at 1103); *Moony v.*

8  *Aramco Srvcs., Inc.*, 54 F.3d 1207 1212 (5th Cir. 1995) (citing *Lusardi v. Xerox Corp.*, 118

9  F.R.D. 351, 359 (D.N.J. 1987)). If based on the complete factual record, the court finds that the

10  plaintiffs are not "similarly situated," the court may deny class certification and dismiss the opt-

11  in plaintiffs without prejudice. *Pfohl*, 2004 WL 554834 at *2.

### i.    Disparate Factual and Employment Settings

13       Plaintiffs argue that the class is similarly situated because it is well defined and limited to

14  one job category – couriers. By contrast, FedEx argues that an analysis of the relevant factors

15  leads to the conclusion that Plaintiffs are not similarly situated. First, FedEx argues that

16  although all Plaintiffs are or were FedEx couriers that is where the similarity ends.

17       Of the sixty named Plaintiffs and opt-in Plaintiffs,[11] 21.7% fail to satisfy the requirements

18  of the class definition. Of the remaining Plaintiffs, who are over 40 and have more than 10 years

19  of service with FedEx, 40% remain employed at FedEx, 33.4% were involuntarily terminated,

20  and 4.9% left voluntarily. *See* Chart, Def. Opp's 28:4-18. These individuals who remain

21  employed at FedEx have not experienced the harm Plaintiffs allege is occurring on a widespread

22  basis, i.e. they have not been involuntarily terminated or forced to quit. FedEx further argues

23  that as to the Plaintiffs who were terminated, there is a great variation in the reasons for their

24

25       [11] While there are now 85 opt-in Plaintiffs, at the time the parties originally briefed

26  this issue, there were only 60. Because the addition of the 15 recent opt-in Plaintiffs does

27  not alter this analysis, the Court analyzes this issue in relation to the disparate
circumstances of the 60 Plaintiffs for which the partied presented a full statistical

28  breakdown.

1  termination – falsification, insufficient driving qualifications, misconduct, three written

2  disciplinary letters within twelve months, leaves of absence expired.  Even as to falsification, the

3  most common reason for termination, Plaintiffs concede that what constitutes falsification varies

4  from station to station and courier to courier.  Pls.' Mot. 8:3-5.  Thus, it is hard to see the link

5  between these terminations for falsification, when each decision was made locally based upon

6  individualized factors.  Under these circumstances, where the case involves "a multitude of

7  different managers at different geographic locations across the country," the claims are best tried

8  as individual cases.  *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 512 (M.D. La.

9  2005) (finding plaintiffs' claims were "based on local policies of various managers located at

10 different sites").  Plaintiffs have not presented any evidence that terminations for reasons other

11 than falsification are not likewise based on individualized factors rather than a single corporate

12 policy.

13      In addition, the only evidence before the Court, presented by FedEx establishes that local

14 managers make disciplinary decisions, including terminations, locally.  *See* Garner Decl. ¶¶ 3-5;

15 Hyneman Decl. ¶ 3.  Plaintiffs have not presented any evidence of central decision-making to

16 link the terminations of various Plaintiffs at various FedEx stations across the nation.  *Accord*

17 *Armstrong v. Powell*, 230 F.R.D. 661, 676-77 (D. Okla. 2005) ("Without evidence of centralized

18 decision-making, Plaintiffs have not identified a unified, single promotion practice common to

19 all plaintiffs.").  Thus, the Court concludes that the fact that the proposed class would

20 incorporate thousands of couriers at hundreds of facilities throughout the country, where

21 different local managers make disciplinary decisions and termination decisions, is fatal to

22 Plaintiffs' claim that they are similarly the victims of a national FedEx policy to push out older

23 couriers.

### ii.     Various Individual-Specific Defenses

25      The second factor considered to determine whether certification is appropriate is the

26 effect certification would have upon FedEx's ability to effectively assert defenses to Plaintiffs'

27 claims.  In particular, this factor "raises the issue of whether the potential defenses pertain to the

28 opt-in class as a whole or whether many different defenses will be raised with respect to each

1  individual opt-in plaintiff." *Moss v. Crawford & Co.*, 201 F.R.D. 398, 410 (W.D. Pa. 2000).

2  Given the variety of circumstances for the 85 current Plaintiffs, the Court concurs with FedEx

3  that its defenses to the claims will vary substantially based upon (a) whether the employee was

4  subject to any adverse employment action, and (b) for those couriers disciplined or terminated,

5  the reason for that action. Consequently, FedEx's defenses to discrimination claims by Plaintiffs

6  in such disparate circumstances do not pertain to the opt-in class as a whole; instead its defense

7  will entail individualized evidence for each employee and thus, vary significantly for each

8  individual. Accordingly, considering the size of the proposed class, this factor weighs against

9  certification.

10              **iii.   Fairness and Procedural Considerations**

11              The third factor considers the primary objectives of a § 216(b) collective action: "(1) to

12 lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to

13 one proceeding which efficiently resolves common issues of law and fact that arose from the

14 same alleged activity." *Moss*, 201 F.R.D. at 410 (citing *Hoffman La Roche Inc. v. Sperling*, 493

15 U.S. 165, 170, 110 S. Ct. 482 (1989)). The court must also examine whether "it can coherently

16 manage the class in a manner that will not prejudice any party." *Id.*

17              Here, Plaintiffs have failed to present any evidence that FedEx applied a single, decision,

18 plan, or policy. By contrast, there is ample evidence that members of the proposed class come

19 from different FedEx offices with different management in different geographical locations, and

20 thereby "were subject to different managerial requirements which occurred at various times as a

21 result of various decisions by different supervisors made on a decentralized

22 employee-by-employee basis." *Basco v. Wal-Mart Stores, Inc.*, 2004 U.S. Dist. LEXIS 12441,

23 *24 (E.D. La. 2004). Under these circumstances, any benefit from allowing Plaintiffs to reduce

24 litigation costs by pooling their resources is outweighed by the fact that the Court could not

25 coherently manage the individualized determinations required to adjudicate the 85 claims

26 presented by the named and present opt-in Plaintiffs, let alone the potentially hundreds or

27 thousands of claims if this action were to be certified for notice to all class members, without

28 prejudicing a party. Moreover, the fact that Plaintiffs have failed to present any evidence linking

12

1   the application of BPP or MAPS with the number of older or retired couriers at FedEx makes a

2   collective action, alleging that these policies were discriminatory, unproductive and confusing to

3   a jury. In sum, the magnitude of the individualized issues in this case render a collective action

4   an inefficient method for proceeding.

5        Based on the complete factual record, the Court concludes that Plaintiffs are not

6   "similarly situated." Accordingly, Plaintiff's Motion to certify an ADEA class is DENIED.

7       **B.**    **State Law Age Discrimination Rule 23 Class**

8          **1.**    **Legal Standard**

9        Federal Rule of Civil Procedure 23 governs class actions. Fed. R. Civ. P. 23. A party

10   seeking class certification must demonstrate the following prerequisites: "(1) the class is so

11   numerous that joinder of all members is impracticable, (2) there are questions of law or fact

12   common to the class, (3) the claims or defenses of the representative parties are typical of the

13   claims or defenses of the class, and (4) the representative parties will fairly and adequately

14   protect the interests of the class." Fed. R. Civ. P. 23(a). A district court must engage in a

15   "rigorous analysis" to determine whether the party seeking certification has met the prerequisites

16   of Rule 23(a). *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996) (quoting *In

17   re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996)).

18        After satisfying the four prerequisites of numerosity, commonality, typicality, and

19   adequacy, a party must also demonstrate either: (1) a risk that separate actions would create

20   incompatible standards of conduct for the defendant or prejudice individual class members not

21   parties to the action; or (2) the defendant has treated the members of the class as a class, making

22   appropriate injunctive or declaratory relief with respect to the class as a whole; or (3) common

23   questions of law or fact predominate over questions affecting individual members and that a

24   class action is a superior method for fairly and efficiently adjudicating the action. Fed. R. Civ.

25   P. 23(b).

26        The decision to grant or deny a motion for class certification is committed to the trial

27   court's broad discretion. *E.g., Yamamoto v. Omiya*, 564 F.2d 1319, 1325 (9th Cir. 1977). In

28   determining whether a plaintiff has satisfied the requirements of Rule 23, a court may not inquire

1  into whether the plaintiff will prevail on the merits of the case. *Eisen v. Carlisle & Jacquelin*,

2  417 U.S. 156, 177-78, 94 S. Ct. 2410 (1974). However, while a court must accept the

3  substantive allegations in the complaint as true, *In re Coordinated Pretrial Proceedings in*

4  *Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982), in some cases it may be

5  necessary for the court to look beyond the pleadings to determine whether the plaintiff has

6  satisfied the certification requirements. *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160, 102

7  S. Ct. 2364 (1982).

8  ## 2.    Plaintiff's Putative State Class

9  On its face, it was unclear whether Plaintiffs' Motion sought certification for fifteen

10  different classes, i.e. one class per state for the fifteen (15) states, where named and opt-in

11  Plaintiffs reside, that provide a remedy analogous to that of the ADEA, or a single national class

12  consisting of all FedEx couriers residing in these 15 states. When the Court sought clarification

13  on this point at the June 11, 2007 hearing, Plaintiffs' counsel first responded that they sought

14  class certification per state for the 15 states enumerated in their Motion, but later explained that

15  they were not seeking separate classes as to liability, only as to damages, which vary by state.

16  Counsel for FedEx vehemently opposed the proposed classes because Plaintiffs' Complaint fails

17  to allege a putative state law class for any state other than California. In response, Plaintiffs'

18  counsel asked the Court to limit its class certification analysis to California, agreeing to forgo

19  seeking certification for any of the fourteen (14) other states for which FedEx had no notice that

20  Plaintiffs might seek certification until Plaintiffs filed the instant motion.

21  As to the proposed class of FedEx couriers over 40 with at least 10 years of experience,

22  who reside in California, Plaintiffs have failed to present any specific information to support the

23  certification of such a class.[12] First, Plaintiffs have failed to give the Court the number of

24  potential members of the California class to determine whether the numerosity requirement is

25  satisfied. Moreover, as with the proposed national ADEA class, Plaintiffs have simply alleged

26  

27  [12] Plaintiffs' Motion presents arguments relating to the entire nationwide class instead of a California class. Despite the opportunity to cure this defect in its

28  supplemental briefing, Plaintiff has not even addressed the proposed California class.

1    that they are the victims of an unnamed, amorphous national policy of age discrimination against

2    FedEx couriers. Such a conclusory allegation is insufficient to establish typicality, especially

3    when the actual allegations establish the diversity of Plaintiffs' claims. *See Gen. Tel. Co. of the*

4    *Southwest v. Falcon*, 457 U.S. 147, 159, 102 S. Ct. 2364 (1982) ("If one allegation of specific

5    discriminatory treatment were sufficient to support an across-the-board attack, every Title VII

6    case would be a potential companywide class action."). Something more than an allegation of

7    discrimination is required. Accordingly, Plaintiffs have not satisfied Rule 23(a)'s typicality

8    requirement. In fact, the current named and opt-in Plaintiffs' demonstrate the opposite: some

9    Plaintiffs were terminated (for a multitude of reasons), other quit, while others still work as

10    FedEx couriers. Moreover, even as to the alleged discrimination, Plaintiffs' testimony shows

11    that their claims are not typical; e.g. some complain about an increased workload, while others

12    complain that their workload was decreased.

13         Because Plaintiffs have failed, at a minimum, to satisfy these two Rule 23(a)

14    requirements, the Court declines to certify a California class.

15 **III. DISPOSITION**

16         For the reasons set forth above, Plaintiffs' Motion for Class Certification is hereby

17    DENIED and all of the Opt-In Plaintiffs are DISMISSED WITHOUT PREJUDICE.

18

19

20    IT IS SO ORDERED.

21    DATED: October 19, 2007

22

23                      *David O. Carter*

24                     DAVID O. CARTER
                     United States District Judge

25

26

27

28



1

2                              JS - 6

3

4

5

6

7

8           UNITED  STATES  DISTRICT  COURT

9       FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

10

11   RONALD CLAUSNITZER, GABRIEL)        CASE NO. SACV 05-1269 DOC
     CONTRERAS, ANDY KUBICKI,    )        (ANx)
12   FRANK MARTINEZ & JODY LYNN  )
     MITCHELL,                    )
13                                )        O R D E R GRANTING SUMMARY
                    Plaintiff(s),  )       JUDGMENT
14                                )
            v.                    )
15                                )
     FEDERAL EXPRESS              )
16   CORPORATION,                 )
                                  )
17             Defendant(s).       )
                                  )
18                                )
                                  )
19                                )
     _____  )
20

21       Before the Court are Defendant Federal Express Corporation's ("FedEx") Motion for

22   Summary Judgment as to Plaintiff Ronald Clausnitzer ("Clausnitzer"), Motion for Summary

23   Judgment as to Plaintiffs Andy Kubicki ("Kubicki"), Frank Martinez ("Martinez"), and Gabriel

24   Contreras ("Contreras") (collectively "Kubicki, et al."), Motion for Summary Judgment as to

25   Jody Lynn Mitchell ("Mitchell"), Motion to Sever / Separate Trial as to Clausnitzer, and Motion

26   to Sever / Separate Trial as to Mitchell.  After considering these Motions, the Plaintiffs'

27   Consolidated Opposition (the "Opposition") and Defendant's Replies, as well as the parties' oral

28   argument, and for the reasons set forth herein, the Court hereby GRANTS Summary Judgment

Ex. C

1  as to Plaintiffs Clausnitzer, Kubicki, Martinez, Conteras and Mitchell and DEEMS Plaintiffs

2  Motions to Sever / Separate Trial Moot.

3  **I.       BACKGROUND**

4         Plaintiffs Clausnitzer, Kubicki, Martinez, Contreras and Mitchell were each employed as

5  couriers by FedEx.  Each of them are, and were during some or all of the relevant period, over

6  40 years old.  Plaintiffs filed this suit as a putative class action on December 28, 2005, alleging

7  that FedEx discriminated against them based on their age in violation of Federal and California

8  law.  Plaintiffs Claustnizter, Kubicki, Martinez, Contreras, and Mitchell claim that FedEx had a

9  policy of encouraging employees to leave before reaching age 55.

10        Pursuant to this alleged policy, Plaintiffs Clausnitzer and Kubicki, et al., claim that FedEx

11  subjected them to increased scrutiny, discipline and/or harassment including adverse effects on

12  their performance reviews and changed their roles within the company, resulting in different job

13  duties, later start times, lower hours and lower pay, based on a general policy of "getting rid of

14  older couriers."  Specifically, Plaintiffs Clausnitzer and Kubicki, et al., contend that they were

15  given "Online Compliments and Counselings" ("OLCCs") at a far greater rate than their

16  coworkers who were less than 40 years of age.   OLCCs are part of a system that FedEx uses

17  purportedly to monitor employee performance and other relevant employee information.  The

18  OLCC system contains entries praising employees – i.e. "Compliments" – negative information

19  about employees – i.e. "Counselings" – and neutral administrative information.   Plaintiffs

20  purport that, even excluding "Compliments," employees over 40, with 10 years or more

21  experience, receive approximately three times as many OLCCs as employees under 40.

22        In addition, Clausnitzer and Kubicki, et al., contend that they were removed from their

23  positions in "sort" and that their start times were changed such that they lost both regular and

24  overtime hours, and consequently lost income.  FedEx denies that these employees lost hours or

25  pay as a result or age discrimination.  Plaintiffs also link this purported reduction in hours to the

26  increased scrutiny, harassment, and discipline they allegedly suffered.  They contend that their

27  managers considered the increased disciplinary actions against Plaintiffs when distributing

28  hours, resulting in less hours going to Plaintiffs.

Plaintiff Clausnitzer also claims that he was subject to "increased scrutiny and discipline" and had his position and hours changed in retaliation for filing a complaint with the EEOC in 1997.

Plaintiff Mitchell claims that she was terminated pursuant to this policy of age discrimination. According to FedEx, Mitchell was fired for twice falsifying delivery records in FedEx's computer system, a violation of written company policy. Plaintiff Mitchell purportedly falsified a delivery record in 2004. FedEx then strengthened its falsification policy so that falsification required termination on the first offense. In 2005, Mitchell allegedly falsified another record and was terminated. Mitchell claims that she merely "lost packages," but that she eventually found those packages. She claims that other couriers that lost packages were not terminated.

After plaintiffs filed this suit, 82 other employees opted in to this action and a related action in New York, joining original Plaintiffs Clausnitzer, Contreras and Martinez. Additionally, Plaintiffs sought to certify a class with as many as 23,000 couriers. On October 19, 2007, this Court denied class certification and dismissed the opt-in plaintiffs without prejudice. This left only the claims of the named plaintiffs. FedEx has now moved for summary judgment as to each of the named plaintiffs.

## II.   LEGAL STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993 (1962); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S. Ct. 2548 (1986).

1   When the non-moving party bears the burden of proving the claim or defense, the moving party

2   can meet its burden by pointing out that the non-moving party has failed to present any genuine

3   issue of material fact. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

4          Once the moving party meets its burden, the "adverse party may not rest upon the mere

5   allegations or denials of the adverse party's pleading, but the adverse party's response, by

6   affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is

7   a genuine issue for trial. If the adverse party does not so respond, summary judgment, if

8   appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e); *see also*

9   *Anderson,* 477 U.S. at 248-49. Furthermore, a party cannot create a genuine issue of material

10  fact simply by making assertions in its legal papers. There must be specific, admissible evidence

11  identifying the basis for the dispute. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter*

12  *Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1980). The Supreme Court has held that "[t]he

13  mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on

14  which the jury could reasonably find for [the opposing party]." *Anderson*, 477 U.S. at 252.

15  **III.   DISCUSSION**

16         Plaintiff's claims arise under the federal Age Discrimination in Employment Act

17  ("ADEA"), 29 U.S.C. § 621 *et seq*., and the California Fair Employment and Housing Act

18  ("FEHA"), Cal. Gov. Code § 12940 *et seq.*.[1] An age discrimination plaintiff may proceed on

19  two theories, first, that defendant *intentionally* discriminated against plaintiff, and second, that

20  the defendant had an apparently neutral policy or practice that placed a *disproportionate burden*

21  on members of plaintiff's protected group. *Compare Int'l Bhd of Teamsters v. U.S.*, 431 U.S.

22  324, 335, 97 S. Ct. 1843 (1977) ("ultimate factual issues are . . . whether there was a pattern or

23  practice of such disparate treatment and, if so, whether the differences were 'racially

24  premised.'") *and Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S. Ct. 849 (Title VII

25

26         [1] California courts look to federal law in interpreting the FEHA. Accordingly, they
27  have adopted the three-part burden-shifting test identified in *McDonnell Douglas Corp. v.*
    *Green*, 411 U.S. 792 (1973), as well as the four-elements for a *prima facie* case of age
28  discrimination adopted therein. *See Guz v. Bechtel*, 24 Cal. 4th 317, 354-55 (2000).

4

prohibits "not only overt discrimination but also practices that are fair in form, but discriminatory in operation.")  The first theory is referred to as a "disparate treatment" theory, the second as a "disparate impact" theory.  *See Rose v. Wells Fargo & Co.*, 902 F.3d 1417, 1421 (9th Cir. 1990) (distinguishing disparate impact and disparate treatment).  It appears that Plaintiffs' Clausnitzer and Kubicki, et al., are pursuing both disparate treatment and disparate impact claims.

In the context of disparate treatment, it is often difficult to prove that a defendant intended to discriminate against plaintiff on the basis of a protected characteristic.  As a result, the Supreme Court has developed the following *prima facie* case, which gives rise to an inference of discrimination: 1) plaintiff was a member of a protected class, here persons over age 40; 2) he or she was qualified for the position; 3) he or she was subject to an adverse employment action; and 4) similarly situated individuals outside of the protected class were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973)**;** *Coleman v. Quaker Oats , Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir. 1996).[2]  However, the Court must bear in mind that these elements are only a means of proving discriminatory intent.  Accordingly, the specific factors used to show intent may vary from case to case, and direct evidence of intent is sufficient to satisfy a plaintiff's initial burden.  *See Wallis v. J.R. Simplot Co.*, 2 F.3d 885, 889 (9th Cir. 1994) ("The *prima facie* case may be based either on a presumption arising from the factors such as those set forth in *McDonnell Dogulas*, or by more direct evidence of discriminatory intent.")

Once plaintiff makes a *prima facie* case, "the burden [of production] then shifts to the defendant to articulate a legitimate nondiscriminatory reason for the employment decision." *Lowe v. City of Monrovia*, 775 F.2d 998, 1005 (9th Cir. 1985) (citing *McDonnell Douglas*, 411 U.S. at 802-05; *Diaz v. American Telephone & Telegraph*, 752 F.2d 1356, 1358-59 (9th Cir.

---

[2] In termination cases, the *prima facie* case requires: 1) a member of a protected class [age 40-70]; 2)  performing his job in a satisfactory manner; 3) discharged; and 4) replaced by a substantially younger employee with equal or inferior qualifications.  *See Nidds*, *supra* (citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885 (9th Cir. 1994)).

1   1985)).  If the defendant does articulate a non-discriminatory purpose, the presumption of

2   discrimination created by plaintiff's *prima facie* showing, "simply drops out of the picture."  *See*

3   *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510-11, 113, S. Ct 2742 (1993); *see also*

4   *Wallis, supra*.  The Plaintiff then maintains the ultimate burden of proving age-based

5   discrimination.  *See Rose*, 902 F.2d at 1420-21 (citing  *Watson v. Fort Worth Bank & Trust*, 487

6   U.S. 977, 108 S. Ct. 2777 (1988)).

7           A disparate impact theory, "involve employment practices that are facially neutral in their

8   treatment of different groups but that in fact fall more harshly on one group than another and

9   cannot be justified by business necessity."  *Int'l Bhd. of Teamsters*, 431 U.S. at 335 n.15; *see*

10  *also Griggs v. Duke Power Co.*, 401 U.S. 424, 432, 91 S. Ct. 849 (1971).   A *prima facie* case is

11  established where plaintiff: 1) identifies the specific employment practices; 2) shows a disparate

12  impact (typically through statistical evidence); and 3) proves causation.  *Rose*, 902 F. 2d at 1424

13  (citing *Watson*, *supra*).   Discriminatory intent is not relevant to disparate impact analysis.  *See*,

14  *Antonio v. Wards Cove Packing Co.*, 810 F.2d 1477, 1480 (9th Cir. 1987) (en banc) (quoting

15  *Griggs*, *supra*).

16          Once the plaintiff has made a prima facie showing of disparate impact, the burden then

17  shifts to the defendant to either challenge plaintiff's statistical evidence by discrediting it or

18  presenting contradictory evidence, *see Watson*, 487 U.S. at 996*,* or justify its practice by

19  showing a "manifest relationship to the employment in question."  *Griggs*, *supra*; *see also*

20  *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425, 95 S. Ct. 2362 (1975) (quoting *Griggs*).  If

21  defendant shows such a justification, plaintiff must then demonstrate, "that other tests or

22  selection devices, without a similarly undesirable [discriminatory] effect, would also serve the

23  employer's legitimate interest in efficient and trustworthy workmanship."  *Albermarle Paper*,

24  *supra* (citing *McDonnell Douglas*, 411 U.S. at 802).

25          In the instant suit, Plaintiff Clausnitzer raises two claims under disparate treatment and,

26  potentially, one under disparate impact.  With regard to disparate treatment, he alleges that he

27  was "subject to increased scrutiny and discipline" in the form of more frequent OLCCs than

28  younger employees, increased formal written warnings, and less favorable performance

evaluations.  He also claims that he was removed from the sort function and given a later start time, resulting in decreased hours and, therefore, decreased pay.  His claim concerning more frequent OLCCs than younger employees might also be characterized as a disparate impact claim.

Plaintiffs Kubicki, et al., raise essentially three disparate treatment claims: 1) that FedEx "gets rid of older couriers;" 2) that they were removed from the sort function and lost hours and pay; and 3) that they were subject to "increased scrutiny and harassment" and had adverse performance ratings.  They also raise a potential disparate impact claim for the alleged disparity in OLCCs vis-a-vis younger workers.

Plaintiff Mitchell raises a disparate treatment claim because she was terminated.

### A.    Plaintiffs Clausnitzer & Kubicki, et al.'s *Disparate Treatment* Claim re Increased Scrutiny, Discipline, and Harassment

The undisputed evidence shows that FedEx employs a progressive discipline system.  The first step is to give an employee written or oral counselings for "lapses in performance."  These counselings constitute a warning that further disciplinary actions, such as formal deficiency notices, will be taken if performance does not improve.  FedEx Personnel Policy requires that all written or verbal counselings be recorded on the OLCC system.  The OLCC system is also used to record administrative information about an employee and positive performance information.  The next step on the disciplinary ladder is a formal written deficiency notice called a "Performance Reminder" or a "Warning Letter."  An employee with three such notices in a one-year period is generally subject to termination.  Additionally, these formal written warnings or notices may be reflected on an employee's performance evaluation.

Plaintiffs Clausnitzer and Kubicki, et al., contend that they received more OLCCs than their counterparts under age 40, were subject to more formal written deficiency notices, and received negative performance reviews.  With respect to this claim, FedEx concedes that Plaintiffs Clausnitzer  and Kubicki, et al., are members of a protected class and qualified for their positions.  It contends, however, that they have failed to establish the other two elements of a *prima facie* case of disparate treatment, i.e., an "adverse employment action" and dissimilar

1  treatment from younger employees.

2           **1.   Adverse Employment Action**

3           An alleged adverse action must amount to more than mere annoyance or inconvenience.

4  *See Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1488 (9th Cir. 1993).  However, the Ninth Circuit

5  has adopted a broad definition of adverse employment actions, encompassing "a wide array of

6  disadvantageous changes in the workplace . . . ." *Ray v. Henderson*, 217 F.3d 1234, 1340-41 (9th

7  Cir. 2000).   In *Chuang v. Univ. of California Davis*, 225 F.3d 1115 (9th Cir. 2000), the Ninth

8  Circuit indicated that "a material change in terms and conditions" of employment constitutes an

9  adverse employment action.  *Id.* at 1123; *see also Burlington Northern & Santa Fe Ry. Co. V.*

10 *White*, 548 U.S. 53, 126 S. Ct. 2405, 2410-11 (2006) (rejecting Ninth Circuit test which did not

11 require materiality).  These decisions include, but are not limited to, "termination, dissemination

12 of a negative employment reference, issuance of an undeserved negative performance review

13 and refusal to consider a promotion."  *See Brooks v. City of San Mateo*, 229 F.3d 917, 928-29

14 (9th Cir. 2000) (collecting cases).  However, "declining to hold a job open for an employee and

15 badmouthing an employee outside the job reference context do not constitute adverse

16 employment actions." *Id.* (collecting cases).

17          FedEx contends that the OLCCs do not constitute an adverse employment action because

18 they have "no direct impact on an employee except to warn him that a more formal written

19 notice is the next step. . .," "had [no] impact on . . . salary, rights, benefits, or status as a FedEx

20 employee. . .," and "had only a negligible impact on performance rating. . .."

21          In *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987), the Ninth Circuit held that, "a

22 transfer of job duties and undeserved performance ratings," constituted adverse employment

23 actions.  Similarly, in *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir.

24 2004), the Circuit recognized that a warning letter or negative review can be considered an

25 adverse employment action.  However, it is unclear that such negative reviews would be

26 sufficient absent some tangible impact on employment.  *See Kortan v. California Youth Auth.*,

27 217 F.3d 1104, 1112-13 (9th Cir. 2000) (rejecting constructive discharge claim based on

28 negative performance review where it has no tangible impact); *see also Pascoe v. Mentor*

8

1   *Graphics Corp.*, 199 F. Supp. 2d 1034, 1053-54 (D. Or. 2001) ("A negative performance

2   evaluation . . . that does not remain in the employee's file or result in some other tangible

3   employment harm is not an adverse employment action.") (citing *Kortan*).  Indeed, in some

4   circumstances, the Ninth Circuit has concluded that warning letters are not adverse employment

5   actions.  *See Despanie v. Henderson*, 32 Fed. Appx. 390 (9th Cir. 2002) (warning letter).

6          The undisputed evidence shows that the OLCC system, which includes positive, negative

7   and neutral information is akin a record-keeping mechanism to monitor employee performance.

8   The contain such entries as:

9          Ron on Friday 02/23/07 I sent you out over your P1 capacity due to
10         heavier than anticipated volumes.  You incurred 3 lates because of
           this.  The lates were not due to any error on your part and will not be
11         reflected negatively against you.  Thanks for your support.

12         Ron on 12/14/07 you returned a truck to the station at the end of your
           day with less than a half tank of gas.  The station policy is that the
13         trucks must be returned with at least a half tank of gas.  Pls [sic]
           follow station guidlines [sic] on fueling.  Further failures in this area
14         will result in further performance improvement.

15         I'd like to thank Ron for his efforts and improvement on road over
           the past few weeks.  He has been able to achieve and maintain the
16         minimum acceptable goals set for his route on road on a consistent
           basis.  For the time frame of 5/08/04 to 5/21/04 his on road average
17         SPH was 10.50 on a goal of 10.77.  Ron has improved from the avg
           of 9.33 on a 10.7 goal for time frame 4/1/04-4/15/04.

18
19  Despite Plaintiffs' contention to the contrary, the sections of the FedEx Personnel Manual

20  presented to the Court do not suggest anything more.   They have presented no evidence to

21  demonstrate that the OLCCs have had any pertinent impact on Plaintiffs' employment.  None of

    the employees have been terminated, demoted, transferred, or the like, as a result of OLCCs.[3]
22
    Plaintiffs have been in the maximum range for hourly salary for couriers since at least 1998, and
23
    this salary has not been reduced.  In fact, FedEx contends, and Plaintiffs do not dispute, that the
24
    OLCCs have had only a "negligible" impact on performance reviews.  Their performance ratings
25

26
          _____

27         [3] Plaintiffs have now raised the theory that their OLCCs and/or performance letters
    are taken into account in distributing hours and have led to reduced hours for Plaintiffs.
28  As discussed below, Plaintiffs cannot show that their hours have been reduced.

have been favorable (generally receiving 6 of 7 or better) throughout the relevant period.

Finally, while Plaintiffs contend that their job titles have been changed and their hours reduced, there is no suggestion that these purported ill effects are related to the OLCCs. Accordingly, the Court finds that, as a matter of law, the OLCCs did not constitute adverse employment actions.

Plaintiffs have likewise failed to raise a genuine issue that their "Performance Reminders" or "Warning Letters" constituted adverse employment actions.

As FedEx points out, there is no evidence in the record that these warning letters resulted in a tangible employment-related burden. Clausnitzer received one such warning in 2002 and one in 2004. These warnings resulted in performance evaluations of 5.2 and 5.5 (versus 6 and above) respectively. However, he suffered no decrease in salary or hours apparently connected to these reviews, as discussed below. The Kubicki, et al., Plaintiffs have likewise received few such warnings. Kubicki has not received such a notice since 1992, well outside the period of alleged discrimination. Martinez has not received one since 1985. Contreras has received two: one when he was 36 years old and one when he was 41, negating an inference of discriminatory application.

None of the Plaintiffs have received "three strikes," causing termination. Moreover, the notices are ineffective after 12 months. At present, none of the warnings would even be considered under the "three strikes" policy. Additionally, Plaintiffs have failed to present any evidence that their hours, salaries or status within the company have been affected by these notices. Aside from Clausnitzer, none of the Plaintiffs have shown, even, that their performance evaluations were affected by the warnings.

As with the OLCCs, the Court cannot reasonably conclude that the formal written warnings, which had no tangible employment impact, and were only temporarily relevant to employment decisions, were adverse employment actions for purposes of the ADEA.

Finally, Plaintiffs have failed to raise a genuine issue that the purported adverse impact on their performance reviews constituted an adverse employment action for purposes of the ADEA. Each of the employees' reviews have been stellar throughout the relevant period. There has

1   been no negative review during that period.  Clausnitzer received greater than a 6 of 7 on every

2   review except two.  The Kubicki, et al., Plaintiffs averaged above a 6 of 7 throughout the period.

3   As evidence of the positive nature of these reviews, Martinez testified that he would be happy

4   with reviews of 6 or above.  Further, there has been no pattern of decline in the Plaintiffs'

5   performance ratings throughout the relevant period.  Additionally, Plaintiffs have presented no

6   evidence to suggest that these reviews were unwarranted.  Finally, like the other disciplinary

7   measures alleged to be adverse employment actions, Plaintiffs have failed to show any tangible

8   consequence from the allegedly unsatisfactory performance reviews.  They all continue to

9   receive the highest pay rate possible for couriers and have done so since at least 1998.  They

10  have presented no evidence that they were demoted, transferred, terminated, or otherwise

11  adversely impacted by such reviews.  Accordingly the reviews do not constitute an adverse

12  employment action as a matter of law.

13      At oral argument, Plaintiffs counsel identified *Weber v. Battista*, 494 F.3d 179, 184-85

14  (D.C. Cir. 2007) as a case that adopts an interpretation of "adverse employment" different from

15  that adopted here.  In fact, *Battista* is on all fours with the Court's analysis in this case, as well as

16  that adopted by several Circuits.

17      In *Battista*, the plaintiff based a retaliation claim on a weakened performance rating

18  following an EEOC complaint.  *Id.*  At 184.  The D.C. Circuit reversed the district court's

19  holding that lowered performance reviews were not materially adverse employment actions.  *Id.*

20  at 184-86.  In so holding, the Circuit relied on the fact that the record disclosed evidence that

21  plaintiff's employer gave performance awards on the basis of performance ratings.  *Id.* at 185.

22  Indeed, the Circuit found a causal relationship between performance ratings and awards, and

23  noted that the performance ratings were adverse employment actions because, "they resulted in

24  [plaintiff] losing a financial award or an award of leave."  *Id.* at 185-186.

25      This holding is in accord with prior D.C. circuit precedent which held that a performance

26  rating was an adverse employment action where it led to the loss of a "tangible quantifiable

27  award."  *See Burke v. Gould*, 286 F.3d 513, 522 (D.C. Cir. 2002) (quoting *Russell v. Principi*,

28  257 F.3d 815, 819 (D.C. Cir. 2001)).  Additionally, a number of other Circuits have adopted a

similar interpretation. *See e.g. Tuttle v. Metropolitan Gov't of Nashville*, 474 F.3d 307, 322-23
(6th Cir. 2007) (citations omitted) ("negative performance evaluation does not constitute an
adverse employment action, unless the evaluation has an adverse impact on an employee's
wages or salary."); *Boumehdi v. Plastag Holdings, LLC.*, 489 F.3d 781, 790 (7th Cir. 2007)
("low performance ratings, in and of themselves, do not constitute adverse employment
actions.") (citing *Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir. 1996)); Burchett v. Target
Corp., 340 F.3d 510, 518 (8th Cir. 2003).("A negative performance review is not in itself an
adverse employment action . . . it is actionable only if the employer subsequently uses that
review to alter the terms or conditions of employment to the detriment of the employee"); *cf
also*, *Haynes v. Level 3 Commns., LLC*, 456 F.3d 1215, 1224-25 (10th Cir. 2006) ("A written
warning *may* be an adverse employment action only if it effects a significant change in the
plaintiff's employment status.") (emphasis in original).   The Ninth Circuit has similarly held.
*See e.g. Kortan, supra* (not adverse employment action where review is not disseminated beyond
supervisor, was merely "mediocre" rather than negative, and did not result in a negative impact
on employment); *Lyons v. England*, 307 F.3d 1092 , 1118 (9th Cir. 2002) (mediocre evaluations
with no tangible employment impact) (citing *Kortan*).

Given this precedent, it would be difficult for the Court to find that the performance
reviews Plaintiffs received were adverse employment actions where none fell below the range of
objectively positive ratings and none resulted in any tangible impact on Plaintiffs' employment,
such as denial of a benefit or reduction in hours.  The same is true of OLCCs and written
warnings, which impacted Plaintiffs' employment, if at all, through decreased performance
ratings.  Because these events had no tangible impact on the terms and conditions of Plaintiffs'
employment they are not adverse employment actions under the ADEA.[4]

---

[4] Plaintiffs counsel claimed at oral argument, that FedEx keeps warning letters
separate from OLCCs and that these formal written notices are considered in scheduling
employees and lead to reduced hours.  Counsel then compared the hours of Plaintiffs to
those of specified younger couriers and found that, in some instances, younger couriers
had more hours.  These two contentions are not connected in the way suggested by
Plaintiffs counsel.

## 2. Similarly Situated Non-Class Members Treated More Favorably

In addition to being unable to raise a genuine issue that OLCCs, formal written warnings, and performance reviews constituted adverse employment actions, FedEx points out that Plaintiffs have failed to submit evidence sufficient to raise a genuine issue concerning similarly situated employees under age 40 being treated more favorably. Indeed, none of the Plaintiffs have identified any younger, similarly situated couriers that were treated differently.

Similarly situated non-class members must be "similarly situated in all material respects." *See Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006) (similarly situated means "similarly situated in all material respects.") (citing *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 660 (9th Cir. 2002). However, the showing required is "minimal," particularly on summary judgment. *See McGuinness v. Lincoln Hall*, 263 F.3d 49, 53-54 (2d Cir. 2001) (noting minimal burden and fact that employees need not be "identically situated") (cited with approval in *Aragon, supra*). The plaintiff is required to show that other employees "have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *Id.* at 54; *compare Moran, supra* (former Major League Baseball players are not similarly situated to former Negro League baseball players because they were never prevented from playing on a Major League team); *and Aragon, supra.* (allegation in declarations that "only white or white-looking casuals were laid off, while

---

Even if the Court accepts counsels representations, that: a) older employees received more warning letters; b) older employees' hours were reduced as a result; and c) some younger employees have more hours, this does not necessarily demonstrate that younger employees were treated differently than older employees. The fact that younger employees had higher overall hours in some instances does not logically show that they suffered a less significant impact from formal warning notices. For instance, if younger employees started with higher hours overall, and the hours of both older and younger employees were reduced equally as a result of written notices, they would still have greater overall hours even though they were treated precisely the same as older couriers.

In addition, and more fundamentally, Plaintiffs have failed to present any evidence to suggest either that older employees do receive more written notices or that Plaintiffs' hours were ever reduced to a significant degree during the period of alleged discrimination (either because of the notices or otherwise).

non-white [individuals] remained employed," are sufficient to withstand summary judgment on
the issue of more favorable treatment.")

      In their Opposition, Plaintiffs did not identify any younger couriers that received fewer
formal written discrepency notices than Plaintiffs. Nor did they present evidence that younger
couriers received higher performance ratings. There is simply no evidence in the record that
younger couriers had overall better disciplinary records or better performance reviews.
Additionally, the fact that Contreras received one formal written warning before entering the
protected class and one after suggests the contrary: that FedEx did not treat older couriers
differently with respect to such warnings. The same is true of the fact that Kubicki and Martinez
have not received any formal notices since 1992 and 1985 respectively, dates well outside of the
period of the alleged discrimination. Consequenlty Plaintiffs have failed to present sufficient
evidence on this element of their *prima facie* case as to the performance reviews or written
notices.

      With respect to OLCCs, Plaintiffs Kubicki, et al., did not identify any younger couriers
treated differently. Instead, Plaintiffs only identified two younger couriers at Clausnitzer's
Clearwater station who purportedly received fewer counselings than Clausnitzer: Joseph
Rusolello ("Rusolello") (38 years old) received 12 counselings as of November 14, 2006; Larry
Barry ("Barry") (32 years old) received 9 counselings in the period between January 31, 2001
and August 12, 2003. During the period of June 26, 2002 and January 31, 2007, Clausnitzer
received 28 counselings. While this does suggest a numerical disparity between Clausnitzer's
OLCCs and those of these two younger couriers, it is not clear that the employees identified as
"comparators" were similarly situated.

      The Court is doubtful that Plaintiffs can satisfy their burden, even on summary judgment,
by merely pointing to two younger couriers in Clausnitzer's station who received less
counselings over different periods of time. Although these couriers do report to the same
managers and work out of the same station, it is not clear that they have the same routes, work
the same shifts or hours, have the same responsibilities, or perform similarly to Clausnitzer.
This scepticism is more pronounced because Plaintiffs failed to support these contentions by

1    citations to the record.  Indeed it was FedEx who presented a comparison of their OLCC records.

2    The Court is inclined to agree with FedEx that, without a comparison to more couriers at

3    Clausnitzer's station, it would be difficult (if not impossible) for a reasonable jury to conclude

4    that he was treated differently than those similarly situated.  However, it need not reach that

5    question.

6         On careful consideration of the alleged comparators' OLCC records, it appears that

7    Russollelo and Barry were treated similarly to Clausnitzer.  The numerical disparity all but

8    disappears when the results are limited to counselings where employees were given negative

9    feedback.  In 2006, Clausnitzer received four such counselings, Rusolello received four, and

10   Barry received none.  In 2005 Clausnitzer and Rusolello received one counseling apiece, and

11   Barry received none.  In 2004 Clausnitzer received three counselings, Rusolello received one,

12   and Barry received none.  In 2003 Clausnitzer received one counseling, Rusolello received three

13   and Barry received one.  In 2002, Calusnitzer received one, Rusolello received none, and Barry

14   received none.  All told, Clausnitzer received two more negative OLCCs over Rusolello over a

15   five year period.  This hardly shows that the two were treated differently in any material respect,

16   and falls far short of giving rise to an inference of discrimination.

17        It is also clear that employees were given similar OLCCs for similar misconduct, and that

18   the reasons for OLCCs varied by employee.  For instance, both Clausnitzer and Rusolello

19   received OLCCs for misplaced packages, while both Berry and Rusolello received OLCCs for

20   attendance issues.  The lack of a clear disparity or even a clear pattern is consistent with FedEx's

21   contention that it simply gives deserved counselings for actual employment-related problems.

22   From these facts alone it would be unreasonable to conclude that similarly situated younger

23   employees were treated differently with regard to OLCCs.

24        In addition, Plaintiffs suggest, again without citation to any evidence, that they "can show

25   an increase in disciplinary actions since turning 40 years of age."  With respect to OLCCs this

26   claim is contradicted by the undisputed fact that Clausnitzer was well over 40 years old when

27   FedEx instituted the OLCC program in May 2000.  If this claim is meant to suggest that

28   Plaintiffs have received more OLCCs since the OLCC program was instituted, it is obviously

true, but fails to prove discrimination.

Finally, the type of OLCCs received by Clausnitzer mirror those received by younger employees.  In July 2006, Clausnitzer received the following OLCC:

> Ron on 07/27/06 you had two overlooked p 1 that were delivered late.  It is imperative that you sort and load your truck in order to insure p 1 service is made daily.  This is your second counseling on overlooked p 1 s.  Further failures in this area will result in further *performance improvement*.

As discussed more fully below, Plaintiffs also point to Thomas Pace and Wayland Pili who received similar counselings for overlooking or misplacing packages.  This contradicts Plaintiffs' claims that they were treated differently from younger couriers.  Additionally, in its Reply, FedEx points out that Rusolello received nearly identical counselings to Clausnitzer for similar conduct.  On July 29, 2006 Clausnitzer received the following counselling:

> Ron on 07/27/06 you had two overlooked P1 that were delivered late.  It is imperative that you sort and load your truck in order to ensure P1 service is made daily.  This is your second counseling on overlooked P1s.  Further failures in this area will result in further performance improvement.

Rusolello was issued a counseling on the same day for overlooking two deliveries and delivering them late.  On November 7, 2006, Rusolello received the following counseling for again overlooking packages:

> Joey on yesterday you overlooked a P1 pkg and caused a service failure. It is imperative that you set your truck up so as not to have any overlooked P1s. Further failures in this area will result in further performance improvement.

Finally, in late 2006 both Rusolello and Clausnitzer received similar counselings for falling below their goals for stops per hour.

When considered in totality these facts do not suggest that similarly situated younger employees were treated differently from Clausnitzer, and Kubicki, et al..  Indeed, they show the opposite: that FedEx has instituted a policy of recording verbal and written notice given to employees of performance failures or misconduct and abides by this policy regardless of age.  Even considering the facts presented by Plaintiffs in their Opposition, and their subsequently filed Supplemental, no reasonable jury could conclude that FedEx treated similarly situated younger employees similarly concerning scrutiny, discipline, or harassment.

16

1          **3.      Conclusion**

2          Plaintiffs have failed to present evidence sufficient to raise a triable issue of fact on two

3    elements of the *prima facie* case for age-discrimination under the ADEA.  Namely, they have

4    failed to present even a scintilla of evidence that would show that the alleged increased scrutiny,

5    discipline, or harassment was an adverse employment action for purposes of the ADEA.  They

6    have also failed to identify younger, similarly situated employees that were treated differently.

7    Moreover, Plaintiffs have failed to submit any credible direct evidence of discrimination such as

8    derogatory comments concerning Plaintiffs' age.[5]

9          The difficulty with Plaintiffs' claim is that they have suffered no objectively discernable

10   harm, and their subjective fear that their jobs are at risk – the underlying reason for this suit – is

11   not a valid basis for an ADEA action.  None have been fired or demoted as a result of the alleged

12   adverse employment actions.  Indeed, they, like many older couriers receive the highest possible

13   pay rate and submit no evidence that this has been put in jeopardy by their OLCCs, warning

14   letters or performance ratings.  The harm, if any, arising from those actions is too remote from

15   the terms or conditions of Plaintiffs' employment to justify treating them as adverse employment

16   actions.  The Court is not in the business of micromanaging business decisions, particularly

17   those that have no cognizable adverse impact on the employee.  *See Smith v. Chrysler Corp*, 155

18   F. 3d 799, 807 (6th Cir. 1998) ("courts should resist attempting to micro-manage the process

19   used by employers in making their employment decisions").

20         Because Plaintiffs have failed to create an issue of material fact as to their *prima facia*

21   case, their claim concerning increased scrutiny, discipline, or harassment must fail as a matter of

22   law.  Accordingly, summary judgment on this claim is hereby GRANTED.

23   **B.      Plaintiffs Clausnitzer and Kubicki, et al.'s *Disparate Impact* Claim for
             Increased Scrutiny, Discipline and Harassment**

24

25         In its October 19, 2007 Order Denying Class Certification, this Court found that, on

26   _____

27         [5]The only potential comment of this type that *FedEx* identified was a manager
     indicating, when Contreras told him that he was 43 years old, "wow, you look older than
28   that."  This is not evidence of discrimination by any stretch of the imagination.

                                                  17

1   average couriers over age 40 are terminated and quit at a lower rate than those under 40.

2   October 19, 2007 Order at 3.  Additionally, Plaintiffs' own evidence demonstrates that couriers

3   over age 40 are paid more per hour than couriers under age 40.  Despite these promising

4   statistics, Plaintiffs contend that they have suffered a disparate impact in the number of OLCCs

5   they received.  Plaintiffs claim that their expert, Dr. Charles Mann ("Dr. Mann") has undertaken

6   a statistical analysis of the relative rates that employees receive online counselings (as opposed

7   to compliments).  According to Plaintiffs, this analysis discloses that couriers age 40 and older

8   with ten or more years experience receive three times as many counselings as those under 40,

9   and that couriers over 45 receive four times as many.  Plaintiffs have failed to provide

10  documentation of Dr. Mann's findings.

11          However, even if the Court assumes, *arguendo*, that these findings are accurately relayed

12  in Plaintiffs' Opposition, Plaintiffs' disparate impact claim suffers two fatal flaws.  First, as

13  indicated above, receiving (even negative) OLCCs is not an adverse employment action.  Thus,

14  even if older employees receive a disparate number of counselings, it is unclear what impact this

15  has had on their employment with FedEx.  *See Affordable Housing and Dev. Corp. v. City of*

16  *Fresno*, 433 U.S. 1182, 1194 ("[d]isparate impact doctrine evolved . . . as a way to address

17  unintentional harm having profound effects upon protected groups."); *see also Watson*, 487 U.S.

18  at 987 ("some employment practices, adopted without a deliberate discriminatory motive, may in

19  operation be functionally equivalent to intentional discrimination.") It is not evident that

20  Plaintiffs can maintain a disparate impact claim absent such a showing of some material negative

21  effect.

22          More fundamentally, however, FedEx is correct in asserting that Plaintiffs have failed to

23  identify a specific business practice that has caused the alleged disparate impact.  *See Griggs*,

24  *supra*.  Plaintiffs are "responsible for isolating an identifying the specific employment practices

25  that are allegedly responsible for any alleged statistical disparities."  *Id.* at 994.  It is insufficient

26  to "simply allege that there is a disparate impact on workers or point to a generalized policy that

27  leads to such an impact."  *See Smith v. City of Jackson*, 544 U.S. 228, 241, 125 S. Ct. 1536

28  (2005) (citing *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S. Ct. 2114 (1989)) (noting

1   that "petitioners have done little more than point out that the pay plan at issue is relatively less

2   generous to older workers"). Indeed, Plaintiffs are required to "identify [the] specific test,

3   requirement or practice" that has resulted in a statistical disparity. *Id.*

4            In support of class certification, Plaintiffs contended that FedEx central management used

5   "Best Practices Pays" and "Minimum Acceptable Performance Standards" programs to

6   encourage local management to scrutinize, discipline, harass and terminate older employees.   In

7   its Order rejecting class certification, this Court noted that the only evidence submitted showed

8   that "disciplinary decisions were made at the local level by local managers." October 19, 2007

9   Order at 3-4. In Opposition to the present Motions for Summary Judgment, Plaintiffs again

10  contend that FedEx "Headquarters" controls employment decisions of local management. They

11  now argue that individual FedEx stations are required to meet "Full Time Employee" ("FTE")

12  goals set by FedEx Headquarters, which require stations to cut costs. Because, as Plaintiffs'

13  evidence demonstrates, older employees make more money, the FedEx cost cutting policy

14  allegedly adversely impacts older employees.

15           Plaintiffs have failed to identify the specific policy which caused the alleged disparate

16  impact. The general policy of cutting costs at the local level, even when coupled with the fact

17  that older, more experienced employees are paid more, fails to distinguish FedEx from any other

18  employer in the nation or the world. Plaintiffs have merely identified FedEx's general business

19  plan; a plan that constitutes the quintessential "generalized policy" of improving a company's

20  bottom line by increasing productivity relative to cost. Moreover, Plaintiff has failed to suggest

21  what, specifically, about the FTE goals causes a disparate impact on older employees. While the

22  Court could speculate as to the causal connection between requiring decreased cost and more

23  frequent OLCCs for older employees, this speculation cannot sustain Plaintiffs' claims against

24  FedEx's Motions. Indeed, Plaintiffs have apparently resurrected their general discrimination

25  claim from the class certifications stage. The additional evidence that Headquarters sets the FTE

26  goals does little to buttress this once rejected claim.

27            Finally, although the parties did not fully contend with the issue of business justification

28  in their briefs, on its face the policy of setting goals to reduce cost appears to further a business

necessity – namely increasing profits.  *See Int'l Bhd. of Teamsters, supra.*  Nothing is more fundamental to a properly functioning market economy than the effort by companies to increase revenue and decrease costs.  It would be unwarranted indeed to hold FedEx liable on a mere showing that it attempted to increase profits, and that it paid older employees more. Accordingly, the burden would again be placed on Plaintiffs to show a viable, non-discriminatory alternative.  *Albermarle Paper*, *supra.*  It is not clear that Plaintiff would be able to do so given that it challenges FedEx general policy of setting goals for lower costs at individual stations.

Accordingly, to the extent that Plaintiffs' claims rely on a theory of disparate impact, summary judgment is hereby GRANTED.

**C.**   **Plaintiffs Clausnitzer and Kubicki, et al.'s *Disparate Treatment* Claim re Changed Job and Start Times**

Plaintiffs Clausnitzer and Kubicki, et al., contend that they were removed from the sort function and given later start times.  FedEx contends both that removal of Plaintiffs from the sort function did not constitute an adverse employment action, and that plaintiffs have failed to demonstrate that they were treated differently from similarly situated younger employees. Because Plaintiffs have failed to raise a genuine issue of material fact as to these elements, they have failed to make out a *prima facie* case of discrimination with respect to the change in job function and start times.  Accordingly, summary judgment is warranted on these claims.

**1.**   **Adverse Employment Action**

A transfer or change in job duties can plainly constitute an adverse employment action under the ADEA.  *See Chuang*, *supra.* (transfer of employee with various incidental harms constitutes an adverse employment action).  Indeed, the Supreme Court has stated that a "reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," constitutes the relevant sort of employment action.  *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (discussing "tangible employment action" in the sexual harassment context).  However, "[t]o qualify as adverse, the action must be 'more disruptive than a mere inconvenience or alteration of job responsibilities. . ..'" *Hill v. England*, 03-6903,

2007 WL 3096707 at *9 (E.D. Cal. Oct. 22, 2007) (citing *Crady v. Liberty Nat. Bank & Trust Co.*, 993 F.3d 132, 136 (7th Cir. 1993).

FedEx contends that the change in job duties and start times caused no harm to the Plaintiffs. Plaintiffs have not demonstrated what their new job functions are or how they are materially different from prior job functions. Even if they are, Plaintiffs have presented no evidence to show that this difference is adverse. Accordingly, the Court has not been presented any evidence showing that this change in job functions, in itself, constitutes an adverse employment action rather than a mere change in job duties. *See Nidds*, 113 F.3d at 919 (transfer to another department not adverse employment action).

### 2. Similarly Situated Non-Class Members Treated More Favorably

As FedEx points out, Plaintiffs have also failed to identify any younger couriers who replaced Plaintiffs at the sort function. Clausnitzer indicated, without substantiation, that a younger courier replaced him. However, the only person he identified by name is Brenda Wellman, a former courier over age 40 who now does "sort". Ms. Wellman is not a person outside of the protected class. Additionally, Martinez identified Scott Snyder and Doletha Culliver as couriers with earlier start times. FedEx contends, and Plaintiffs do not dispute, that both of these individuals were over age 40 at the relevant time. Ironically, Mark Glenn, an individual under age 40 identified by Martinez, was also removed from "sort" and given a later start time.

The only Plaintiff who has provided evidence that he was replaced by a younger courier is Kubicki, and, as discussed below, FedEx has offered a valid justification for Kubicki's replacement, and Plaintiff has failed to present any evidence that such change was a pretext for discrimination.

### 3. Non-Discriminatory Justification

According to FedEx, Kubicki was transferred from "sort" because he worked five eight-hour days per week, rather than four ten-hour days per week. FedEx claims that all of the "sort" positions were being given to employees who worked four ten-hour days per week in an effort to balance hours and reduced the need for overtime. Indeed, FedEx contends and Plaintiffs do not

1    dispute that Kubicki was offered a schedule of four ten-hour days per week, but declined.  This

2    is certainly sufficient to satisfy FedEx's burden of articulating a legitimate justification for the

3    employment action.  The ultimate burden then shifts to Plaintiffs to present evidence of a pretext.

4         Plaintiffs have not presented sufficient – indeed any – evidence that this justification is a

5    pretext for age discrimination, beyond the somewhat tenuous evidence presented on the elements

6    of their *prima facie* case.  This evidence is insufficient even to survive summary judgment.  *See*

7    *Godwin v. Hunt Wesson, Inc.* 150 F.3d 1217, 1220 (9th Cir. 1998).

8              **4.    Conclusion**

9         Because Plaintiffs have failed to demonstrate that they suffered an adverse employment

10   action due to their changed job duties and start times, have largely failed to identify any

11   similarly situated younger couriers that were treated more favorably, and failed to demonstrate

12   that FedEx's proffered explanation is a pretext, summary judgment is hereby GRANTED on

13   these claims.

14   **D.    Plaintiffs Clausnitzer and Kubicki, et al.'s *Disparate Treatment* Claim re**
         **Reduced Hours**
15

16        Throughout this litigation, Plaintiffs have maintained that their hours (and salary) were

17   reduced as a consequence of their later start times.  In their Opposition, as clarified by counsel at

18   oral argument, Plaintiffs now claim that their hours were reduced because their OLCCs and/or

19   warning letters were considered in distributing hours among couriers.  Plaintiffs have failed to

20   present evidence from which a reasonable jury could conclude that their hours were actually

21   reduced – i.e. adverse employment action.  Moreover, they have failed to present evidence

22   showing that they were treated differently from similarly situated younger couriers.

23              **1.    Adverse Employment Action**

24        In support of this claim, Plaintiffs present a calculation of "Plaintiffs Regular Hours /

25   Overtime Hours and Income" for Plaintiffs Kubicki, Mitchell, Clausnitzer and Contrears for

26   years 1999, 2001 and 2006.  According to this chart, Plaintiff Kubicki had more hours and salary

27   in 2006 (after the period of alleged discrimination) than he did in 1999 (at the beginning of the

28   alleged discrimination).  Moreover, his salary has steadily increased throughout the relevant

1    period.  According to Plaintiffs' statistics, Clausnitzer worked almost 3.5 hours less in 2001 than

2    1999, but received about $500 more in income in 2001.  In 2006, he had far fewer hours and

3    income, but FedEx's undisputed evidence shows that this disparity is attributable to Clausnitzer

4    being on leave for a substantial period.  Contreras worked the most hours in 1999 and received

5    the most salary in that year.  He worked far fewer hours in 2001 and 2006.  However, his salary

6    increased from 2001 to 2006.  Notably, the undisputed evidence from FedEx shows that the

7    reduction in Contreras' hours in 2006 was due to a substantial short-term disability leave in that

8    year.  The only relevant evidence Plaintiffs have  presented on the element of adverse

9    employment action is that Contreras worked fewer hours in 2001 and 2006 than in 1999.

10         However, FedEx has provided full calculations for the ordinary hours, overtime and

11   salary, for Clausnitzer and Kubicki, et al., from 1997 to 2006. These calculations demonstrate

12   that no significant reduction in hours and salary took place during the relevant period.

13         Plaintiffs only challenge to these statistics is that FedEx took into account hours listed as

14   "Other" – i.e. paid hours where the employee did not work, such as holidays or vacation; non-

15   paid hours, such as non-paid sick days or suspensions; and hours worked under special

16   categories such as Department of Transportation physicals or hours that were recorded late.

17   Plaintiff contends that these hours are irrelevant and that the only relevant hours for the

18   discrimination claim are those assigned by managers to employees.  While this method of

19   calculation does have some initial appeal, it is misleading.  It would show a reduction in regular

20   and overtime hours if, for instance, an employee went on paid disability leave.  This sort of paid

21   leave may have no relationship whatsoever to a management decision to reduce an employee's

22   hours.  However, if "Other" hours are not included in the calculation, this might lead to a

23   conclusion that adverse employment action was taken in the form of reduced hours.

24   Additionally, there is no suggestion that any plaintiff had unpaid hours included in "Other."

25   Accordingly, Plaintiffs' pay was calculated taking these "Other" hours into account.

26         More importantly, regardless of what method of calculation is used, it is clear that, in

27   light of FedEx's statistics, no reasonable jury could conclude that Plaintiffs suffered an adverse

28   employment action in the form of reduced hours.  When the statistics are not cherry picked to

1  demonstrate the greatest possible disparities, it is evident that none of the Plaintiffs were subject

2  to any sort of pattern of reduced hours as a result of negative OLCCs, written warnings or for

3  any other reason.   Consequently the Court has not been presented with sufficient evidence on

4  the element of adverse employment action to survive summary judgment.

5       Specifically, Clausnitzer's hours have remained fairly consistent during the relevant

6  period.  His salary has also generally risen since 1997.  If "Other" hours are taken into account,

7  it appears that Clausnitzer worked more hours in 2001 than he did in 1999.  In fact, he was on

8  disability leave during 1999.  More importantly, excluding leaves, Clausnitzer's hours have not

9  varied significantly throughout the relevant period and peaked in 2003, near the end of the

10  period of alleged discrimination.  Indeed, Clausnitzer made more money in 2003, at the end of

11  the alleged reduction in hours, than he did in 1997, near the beginning.  This is wholly

12  inconsistent with Clauznitzer's claim that his hours were reduced.

13       Similarly, Kubicki's hours and pay have increased in a fairly steady manner from 1998 to

14  2005.  In 1999 Kubicki worked substantially less hours and received less pay than 1998.

15  However, in 2004, near the end of the alleged discrimination, he worked more hours and earned

16  more pay than any other year.  This demonstrates the absence of any pattern of reduced hours on

17  the basis of age.  Indeed, if anything, Kubicki worked more and earned more after the alleged

18  reduction in hours than he did before.  Although this trend is not perfect, no reasonable jury

19  could conclude that there has been a reduction in those hours over time.

20       The parties present little evidence regarding Plaintiff Martinez's hours.  In its

21  Supplemental, Plaintiffs suggest that Martinez worked substantially less hours in 2006 than he

22  did in 2000 or 2004.  However, this reduction occurred outside of the period of discrimination

23  alleged in the complaint.  Moreover, it is evident that Martinez worked more hours near the end

24  of the period of alleged discrimination than he did at the beginning of the period.  Indeed, in

25  2004 he had substantially more hours than any other year during the relevant period.

26       Finally, FedEx is correct in asserting that Plaintiff Contreras' overall hours and

27  pay have been sporadic.  Excluding years where Contreras took leaves of absence, his regular

28  and other hours have varied between 2035.75 and 2113.2.  While his overtime hours have varied

1   wildly, Contreras had the most overtime, overall hours, and salary in 2005.  This precludes a

2   finding that Contreras suffered a decrease in hours or pay during the relevant period.

3          Given this fuller picture of Plaintiffs' hours and pay, and even if all inferences are

4   contemplated in Plaintiffs' favor, no reasonable jury could infer that Plaintiffs suffered any

5   adverse employment impact in the form of reduced hours.

6          ## 2.     Similarly Situated Non-Class Members Treated More Favorably

7          In their Supplemental filed on March 10, 2008, Plaintiffs attempt to show that Plaintiffs

8   were given less hours and salary than various comparators.  In essence, Plaintiffs have chosen

9   one or two younger couriers at their respective stations, and attempted to show that these people

10  received more hours than did Plaintiffs.  FedEx contends that hours are dependent on route and

11  that, without a comparison to more than one or two other couriers, Plaintiffs cannot show

12  divergent treatment from similarly situated younger employees.  This contention is well taken

13  given that the hours of any one courier appear to vary somewhat from year to year.  However,

14  even if the purported comparators are considered, their hours and pay do not show that they were

15  treated more favorably.[6]

16         Plaintiffs did not provide any comparator for Clausnitzer or Kubicki.  For Plaintiff

17  Contreras, they compared his hours and pay to Miranda Christian ("Christian") and James

18  Henderson ("Henderson") at his former New Jersey Station, and Antonio Aguillar ("Aguillar")

19  at his current Fullerton, California station.  Christian and Henderson's hours are, puzzlingly,

20  presented for 2001, 2004 and 2006.  Contreras' hours are listed for 1999, 2004 and 2006.  In

21  1999 Contreras had significantly more hours and salary than either Christian or Henderson had

22

23  ──────────────

24         [6] Plaintiffs' submission on this point is also wanting because the mere fact that one
    employee works more or less hours in a given year cannot logically establish how much

25  that employee's hours were *reduced* in that given year.  The three data points given are
    insufficient to establish a pattern of reduced hours with any certainty.  Moreover, two of

26  the comparators were apparently new hires or part-time employees (working only 77 and
    237 hours) leaving only one compartor who appears to have been consistently employed

27  throughout the relevant period.  This comparator, James Henderson, suffered a decline in
    hours from 2001 to 2006.

28

1    in 2001.  It is not clear why Christian and Henderson's statistics from 2004 or 2006 would be

2    relevant given that Contreras was then employed at the Fullerton station rather than the New

3    Jersey station.  However, the evidence shows that in 2004 Contreras had substantially more

4    hours and salary than either Christian or Henderson.  Moreover, he had more hours and salary

5    than Aguillar.  In 2006, Contreras had less hours than any of Aguillar, Christian or Henderson,

6    although his salary was still greater.

7          This fact is insignificant for two reasons.  First, the period of alleged discrimination

8    ended, at best, in 2005 when the complaint was filed.  Accordingly, a salary decrease in the

9    subsequent year, does not show that similarly situated employees were treated differently in

10   relevant  years.  This is particularly the case where the alleged victim of discrimination

11   maintained substantially greater hours and pay than younger employees throughout the period

12   when the alleged discrimination was taking place.  More importantly, as a factual matter, FedEx

13   has demonstrated that this reduction in hours was due, in large part, to Contreras taking a short-

14   term disability leave for 52 days in 2006.

15         Similarly, Plaintiffs presents a reduction in hours for Frank Martinez in 2006.  Again,

16   throughout the relevant period, prior to the filing of the complaint, Martinez worked

17   substantially more hours than Aguillar.  He also received over $30,000 more salary than Aguillar

18   in both 2000 and 2004.  Plaintiffs have not identified why a decline in hours in the year

19   following the filing of this action would be relevant to Plaintiffs' claims of age-discrimination

20   upon which this suit is based.

21         The statistics presented fail even to provide a scintilla of evidence that any younger,

22   similarly situated couriers were treated differently from Plaintiffs.  The statistics incorporate data

23   from different years, compare employees in different stations with different supervisors and fail

24   to show any sort of consistent pattern.  Moreover, they fail to account for changes such as

25   medical leave that, according to undisputed evidence, significantly lessen their value in

26   comparing the hours and wages of employees.

27         **3. Conclusion**

28         Because Plaintiffs have failed to present any evidence from which a reasonable jury coudl

conclude that they were subject to an adverse employment action or that they were treated differently from similarly situated younger employees, they have failed to establish a *prima facie* case of age discrimination. Moreover, they have failed to present any direct evidence of age discrimination. Thus, they have not met their burden on summary judgment of presenting a triable issue of fact as to discrimination. Accordingly, summary judgment is hereby GRANTED on this claim.

### D.   Plaintiffs Kubick, et al.'s *Disparate Treatment* Claim that FedEx Gets Rid of Older Couriers

Plaintiffs' general contention that FedEx "gets rid of older couriers" can be summarily rejected. As this Court indicated in its October 19, 2007 Order Denying Class Certification in the instant matter, the statistical evidence shows that employees over age 40 are retained at a greater rate than those under 40. October 19, 2007 Order at 3. This is true or both voluntary and management-instituted terminations of employment. *Id.* Plaintiffs have failed to submit any evidence to contradict these findings.

Of the five named Plaintiffs, only Contreras and Mitchell were terminated. The undisputed evidence shows that Contreras filed an internal appeal with FedEx and was returned to work with full back-pay. As discussed below, Mitchell's termination was based on a legitimate justification that has not been shown to be a pretext.

Accordingly, with respect to their individual disparate treatment claims, none of the Plaintiffs can show that they were "gotten rid of" as a result of age-discrimination. Summary judgment is hereby GRANTED on these claims.

### E.   Plaintiff Clausnitzer's Retaliation Claim

Plaintiff Clausnitzer claims that he was subject to adverse employment action as a result of his 1997 complaint to the EEOC. In order to make out a *prima facia* case of retaliation under the ADEA, a plaintiff must show: 1) that he or she engaged in protected activity; 2) that he or she suffered an adverse employment action; and 3) that there is a causal link between the protected activity and the adverse employment action. *See Poland v. Chertoff*, 494 F.3d 1174, 1179-80 (9th Cir. 2007) (citing *Villarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir.

2002).   In retaliation cases, an adverse employment action is "adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity."  *Ray*, 217 F.3d at 1242-43.

FedEx concedes that Clauznitzer's 1997 EEOC complaint was a protected activity. However, FedEx contends, for the same reasons identified above, that the alleged scrutiny and discipline, and the change in Clausnitzer's assignment and alleged lost hours are not adverse employment actions.  Indeed, as discussed above, these purported consequences were not "adverse employment actions" under the ADEA.

Additionally, Clausnitzer cannot show a causal connection between his protected activity and the allegedly adverse employment actions.  He has failed to present even a scintilla of evidence in the Opposition to demonstrate such a connection.

With respect to Clausnitzer's claim that he was subject to scrutiny and discipline, FedEx notes that, according to Plaintiffs' allegations, this conduct began in 1995 and continued through 2004.  The fact that the alleged disparate treatment arose prior to the EEOC complaint weighs heavily against a finding of causation.  *See Washington v. Garrett*, 10 F.3d 1421 (9th Cir. 1993) (where allegedly retaliatory action arose prior to protected activity, "[t]he timing of the two events negates an inference of retaliation."); *see also Cohen v. Fred Meyer, Inc.*, 686 F.2d 793 (9th Cir 1982) (where alleged retaliatory policy is implemented prior to employer learning of protected activity, no inference of causation can be drawn).   Clausnitzer has presented no evidence to show that he was subject to more scrutiny or harassment after FedEx learned of his EEOC complaint.

With respect to his claim that his assignment and hours were changed in retaliation for his filing an EEOC complaint, the timing of these actions also foreclose a retaliation claim. Clausnitzer filed an EEOC complaint in 1997.  However, according to his own contentions, his assignment and hours were changed sometime between 2001 and 2003.  The potential period of several years between the protected activity and alleged wrongful employment action prevents the Court from inferring causation.  *See e.g. Manatt v. Bank of America*, 339 F.3d 792, 802 (9th Cir. 2003); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003) (refusing to

infer causation given 13 month delay); *Villiarimo,* 281 F.3d at 1064-65 (no inference of
causation after 18 month delay). Additionally, Clausnitzer has presented no direct or
circumstantial evidence that FedEx changed his assignment as a consequence of his EEOC
complaint. *See Porter v. California Dept. of Corrections*, 419 F.3d 885, 895 (9th Cir. 2005)
(causation rather than timing is the critical inquiry in retaliation cases).

Accordingly, summary judgment is GRANTED as to Plaintiff Clausnitzer's retaliation
claim.

### F.     Plaintiff Mitchell's Claim for Termination

Plaintiff Mitchell contends that she was terminated on the basis of her age in order to
improve her supervisor's "bottom line" because she was paid more than younger employees.
FedEx makes two arguments in response: 1) that Mitchell cannot show that she was replaced by
a younger person of equal of lesser qualifications; and 2) that Mitchell was terminated for a
legitimate reason and can show no pretext.

In cases concerning a discriminatory discharge, the element of favorable treatment of
non-class members is established by showing that the employee was, "replaced by a
substantially younger employee with equal or inferior qualifications." *See e.g. Coleman*, *supra*
(citing *Nidds*, *supra*); *Douglas v. Anderson*, 656 F.2d 528, 533 (9th Cir. 1981). Mitchell has
failed to identify who replaced her, or the age of such person. Accordingly, FedEx contends that
it is entitled to summary judgment on this basis.

However, the Court must bear in mind the purpose of the four-part *prima facie* case – i.e.
to give rise to an inference of intentional discrimination. Accordingly, the fact that Mitchell
cannot show that she was replaced by a substantially younger person is not fatal; it merely
weakens the inference of intent. *See Douglas v. Anderson*, *supra*. (fact that employee is replaced
with a slightly younger person or even an older person is not fatal if plaintiff can present
additional direct or indirect evidence of discrimination).

Mitchell contends that she was terminated for misplacing a package. She points to two
younger couriers from the same station, Thomas Pace ("Pace") and Wayland Pili ("Pili"), who
lost packages but were merely given OLCCs and not terminated. These employees have not

1   been shown to be "similarly situated" in relevant respects.  FedEx has consistently maintained

2   that Mitchell was terminated for entering false information concerning a package.  FedEx

3   documentation and Mitchell's own deposition testimony confirm that this was the reason given

4   at the time of her termination.  There is no suggestion, however, that Pace or Pili similarly

5   falsified information.  Indeed, the OLCCs quoted by Mitchell show that they Pace and Pili

6   merely overlooked packages.  Pace's OLCC reads as follows:

7        Tom on 7/28/2003 you left a document tub of P 1 documents behind at the station.  This
         is being issued as a means of coaching and awareness to avoid such mishaps in the future.
8        The result of the overlooked tub was 18 service failures.

9   Likewise, Pili's OLCC reads:

10       Wayland on Monday 11/21/2005 you had an overlooked that resulted in a service failure.
         The stations Monday service goal is 99.74%.  Please do everything to ensure you do not
11       have overlooked packages that result in service failures.

12  Mitchell admitted to falsifying information on September 15, 2005.  In her deposition she

13  indicated that when she arrived at the station after completing her route, she noticed that a

14  package "didn't show up as being delivered."  She claims that she believed that she made the

15  delivery, so she "manually entered a [proof of delivery] to be at a hundred percent."  In fact, the

16  package was misplaced and later found by FedEx.  FedEx contends that Mitchell's entry of a

17  proof of delivery was an effort to conceal the fact that she had misplaced a package.  Mitchell

18  claims that she input false information unintentionally, believing that the package was delivered.

19  Incidentally, FedEx apparently recognized the erroneous entry due to a customer complaint.  In

20  any event, Mitchell's intent is immaterial.

21       From FedEx's perspective, Mitchell falsified information, an element apparently missing

22  from the incidents involving Pace and Pili.  After completing an investigation, FedEx determined

23  that termination was appropriate on this basis.  Indeed, Mitchell had previously been given a

24  warning about falsifying documents on a prior occasion and had subsequently signed a copy of a

25  revised FedEx policy, which made falsification grounds for discharge on the first offense.  There

26  is no suggestion presented that Pace and Pili were "similarly situated" to Mitchell in this regard.

27  Accordingly, their treatment fails to establish a *prima facie* case of discrimination.

28       Moreover, even if she could establish a *prima facie* case, FedEx has satisfied its burden of

1    articulating a valid reason for the discharge, namely that Mitchell falsified information.  The

2    ultimate burden then shifts to the Mitchell to present a genuine issue of material fact as to

3    whether this reason constituted a pretext.  *See e.g. Nilsson v. City of Costa Mesa*, 503 F.3d 947,

4    955 (9th Cir. 2007).  She has failed to do so.

5         If a plaintiff relies on direct evidence of discriminatory animus – e.g. negative age-based

6    remarks – he or she need only present "very little" evidence to survive summary judgment.  *See*

7    *Lindahl v. Air France*, 930 F.3d 1434, 1438 (9th Cir. 1991); *Godwin v. Hunt Wesson, Inc.* 150 at

8    1220-22.  Where a plaintiff relies on circumstantial evidence – i.e. evidence that requires an

9    inference of discrimination – he or she must produce "specific, substantial evidence of pretext."

10   *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) (citing *Wallis*, *supra*); *see*

11   *also Godwin*, *supra*.  The plaintiff is required to "present evidence in addition to that which was

12   sufficient for her *prima facie* case. . .."  *Godwin*, 150 F.3d 1220 (citing *Wallis*, 26 F.3d at 890).

13        Here Mitchell has produced only circumstantial evidence that two employees, Pace and

14   Pili, were not terminated for losing or overlooking packages.   However, this evidence is not

15   "substantial" as required by *Godwin*.  Indeed, FedEx is correct in asserting that Plaintiff has

16   failed to show, in any significant degree, that the conduct of Pace and Pili was similar to her

17   conduct.  Moreover, Plaintiff Clausnitzer, over age 40, received similar treatment to Pace and

18   Pili for his misplacing or overlooking packages –  he received an OLCC.

19        In 2002 Mitchell signed a "Memo of Understanding regarding Falsification," which stated

20   that "falsification of delivery records" would result in a warning for the first offense and

21   termination for the second.  In August 2004, Mitchell received a "Warning Letter - Falsification"

22   concerning her entering a "Customer Not In" code while at the station after a customer had

23   complained that no delivery attempt was made.  In November 2004, Mitchell signed an "Inter-

24   Office Memorandum" concerning a change in the falsification policy.  This memorandum made

25   falsification grounds for discharge on the first offense.  Subsequently, in September 2005,

26   Mitchell purportedly falsified another entry upon returning to the station.

27        The only reasonable inference to be drawn is that Mitchell was terminated for violating a

28   clear, written FedEx policy at least two times.  It would be unreasonable to draw an inference

1   from the fact that Pace, Pili and Clausnitzer received different treatment for different alleged

2   misconduct, that Mitchell was discriminated against on the basis of her age.

3         Accordingly, summary judgment is hereby GRANTED as to Plaintiff Mitchell's age

4   discrimination claim.

5   **IV.   DISPOSITION**

6         Defendant's Motions for Summary Judgment as to Plaintiffs Clausnitzer, Kubicki, et al.,

7   and Mitchell are hereby GRANTED.

8         Defendant's Motions for Separate Trials are hereby deemed MOOT.

9

10   IT IS SO ORDERED.

11   DATED: March 18, 2008

12

13

14                             _David O. Carter_

15                             DAVID O. CARTER
                         United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3                    IN THE UNITED STATES DISTRICT COURT

4                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6

7     DANIEL FORRAND, et al.,

8                            Plaintiffs,                NO. C07-4674 TEH

9                   v.                                  ORDER GRANTING
                                                        DEFENDANT'S MOTION TO
10    FEDERAL EXPRESS                                   TRANSFER VENUE
      CORPORATION,
11
                            Defendant.
12

13

14          This matter came before the Court on January 28, 2008, on Defendant Federal Express

15    Corporation's ("FedEx's") motion to transfer venue to the Central District of California.

16    After carefully considering the parties' written and oral arguments, the Court now GRANTS

17    Defendant's motion for the reasons discussed below.

18

19    **BACKGROUND**

20          Although Defendant FedEx was incorporated in Delaware and has its principal place

21    of business in Tennessee, it conducts business and employs individuals worldwide, including

22    in the State of California.  In this action, Plaintiffs Daniel Forrand, Ara Karamian, Yvette

23    Green, and Eugene Colon seek to represent: (1) a class of non-exempt FedEx employees in

24    California, excluding couriers, couriers/handlers, and service agents, and (2) a sub-class of

25    non-exempt airline mechanics employed by FedEx in California.  Plaintiffs allege that FedEx

26    failed to pay regular and overtime wages to members of the class and sub-class and that

27    FedEx also failed to provide meal periods and rest breaks as required under California law.

28    They assert that these actions violate various sections of the California Labor Code and also

*United States District Court*
*For the Northern District of California*



1   run afoul of California Business and Professions Code section 17200's prohibition of unfair

2   business practices.

3        Plaintiffs Forrand, Karamian, and Colon reside in the County of Los Angeles, which

4   is located in the Central District of California, and worked in that county at all relevant

5   times.[1]  Plaintiff Green resides in Nevada but worked at all relevant times in Stockton,

6   California, which is located in the Eastern District of California.

7        Three of the four named plaintiffs – Karamian, Green, and Colon – previously brought

8   a nearly identical suit in the Central District of California: *Karamian v. Federal Express*

9   *Corporation*, Case No. CV 06-4345 DSF PJW, which was presided over by Judge Dale

10  Fischer.  In that case, the plaintiffs failed to file a motion for class certification on or before

11  the court-ordered deadline.  Plaintiffs sought to amend the scheduling order to allow a late

12  motion for class certification to be brought, but Judge Fischer denied that motion on

13  September 5, 2007, and ruled that "this case will proceed as an individual action" because

14  "no motion for class certification has been or will be filed."  *Karamian* Sept. 5, 2007 minute

15  order (Ex. E to Langbein Decl.).  Six days later, the same counsel who represented the

16  *Karamian* plaintiffs filed this case in the Northern District of California with Forrand as the

17  only named plaintiff.  The *Karamian* plaintiffs subsequently moved for voluntary dismissal

18  of the *Karamian* case without prejudice, and Judge Fischer granted that motion on

19  October 29, 2007.  Judgment was entered on October 30, 2007, the same day Plaintiffs in this

20  action filed an amended complaint adding Karamian, Green, and Colon as named plaintiffs.

21

22  **LEGAL STANDARD**

23       By statute, "[f]or the convenience of the parties and witnesses, in the interest of

24  justice, a district court may transfer any civil action to any other district or division where it

25  might have been brought."  28 U.S.C. § 1404(a).  A party seeking to transfer a case under

26  _____

27      [1]The first amended complaint alleges that Plaintiff Colon lives in the "County of Lancaster."  First Am. Compl. ¶ 5.  However, it appears this was an inadvertent error, as no

28  such county exists.  Elsewhere, the complaint alleges that Colon worked at various locations in Los Angeles County.  *Id.* ¶ 31.

United States District Court

For the Northern District of California

1   this statute must establish that the action could originally have been brought in the district to

2   which transfer is sought.  *Commodity Futures Trading Comm'n v. Savage*, 611 F. 2d 270,

3   279 (9th Cir. 1979).  The moving party also bears the burden of "establishing that an action

4   should be transferred."  *Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League*,

5   89 F.R.D. 497, 499 (C.D. Cal. 1981), *aff'd*, 726 F. 2d 1381 (9th Cir. 1984).

6           In ruling on a motion to transfer, a district court must consider the factors enumerated

7   in § 1404(a) – i.e., convenience of the parties, convenience of the witnesses, and the interest

8   of justice.  28 U.S.C. § 1404(a).  Other relevant factors include: the plaintiff's choice of

9   forum; the local interest in the issue; the relative ease of access to evidence; the availability

10  of compulsory process for unwilling witnesses and the cost involved in securing willing

11  witnesses; and the practical issues that make a case easier or more difficult to try in a given

12  forum, such as familiarity of each forum with applicable law and the relative court

13  congestion in each forum.  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834,

14  843 (9th Cir. 1986); *Royal Queentex Enterprises, Inc. v. Sara Lee Corp.*, No. C99-4787 MJJ,

15  2000 WL 246599, at *2 (N.D. Cal. Mar. 1, 2000).  The court has broad discretion to address

16  these factors based on the particular facts of each case.  *E. & J. Gallo Winery v. F.&P. S.p.A.*,

17  899 F. Supp. 465, 466 (E.D. Cal. 1994).

18

19  **DISCUSSION**

20          The parties do not dispute that this case could have been brought in the Central

21  District of California.  Nor is there any serious dispute that the convenience factors in this

22  case are fairly neutral.  For example, much of the discovery will relate to documents held at

23  FedEx's headquarters in Tennessee, and the Central and Northern Districts of California will

24  be equally inconvenient for FedEx witnesses who are employed at the company's Tennessee

25  headquarters.  In addition, while three of the four named plaintiffs' claims are based on

26  events occurring in the Central District (with the fourth in the Eastern District), FedEx failed

27  to specify any witnesses who reside outside the Northern District.  FedEx has therefore failed

28  to meet its burden of demonstrating inconvenience by "identify[ing] relevant witnesses,

3

United States District Court

For the Northern District of California

1  stat[ing] their location, and describ[ing] their testimony and its relevance." *Sec. & Exch.*

2  *Comm'n v. Rose Fund, LLC*, No. C03-4593 WHA, 2004 WL 2445242, at *3 (N.D. Cal.

3  Jan. 9, 2004).

4      Other factors are also relatively neutral with regard to transfer.  For example, both this

5  Court and courts in the Central District are equally familiar with the California law that

6  governs this case.  Additionally, although Defendant has cited statistics stating that the

7  average number of cases per judge and the average time to trial are greater in the Northern

8  District than the Central District, the average times to trial are only slightly different, and the

9  undersigned is a senior judge with a lower-than-average case load.

10      The two principal issues this Court must resolve in ruling on Defendant's motion are:

11  (1) how much deference to give Plaintiffs' choice of forum and (2) how to weigh the interest

12  of justice.  On the first issue, the Court concludes that Plaintiffs' choice of forum is entitled

13  to minimal deference.  Although "great weight is generally accorded plaintiff's choice of

14  forum," the plaintiff's choice of forum is afforded less weight where, as here, the case is

15  pleaded as a class action lawsuit.  *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).  In

16  addition, none of the named plaintiffs resides in the Northern District of California, and the

17  deference owed to such nonresident plaintiffs' choice of forum is "substantially reduced."

18  *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (citation omitted).

19  Similarly, the named plaintiffs' individual claims arose in the Central and Eastern Districts of

20  California, and less weight is therefore due to Plaintiffs' choice of forum because the

21  operative facts did not occur in this district.[2]  *Lou*, 834 F.2d at 739.

22      Beyond that, this Court finds substantial evidence of forum shopping in this case, and

23  Plaintiffs' choice of forum is therefore entitled to "little deference."  *Williams*, 157 F. Supp.

24  2d at 1106.  While it is true that Forrand was not a named plaintiff in the *Karamian* action,

25  Plaintiffs are incorrect that *Karamian* therefore has no relevance to Defendant's motion to

26  transfer.  Plaintiffs do not dispute that this case raises the same claims as *Karamian*, and the

27  _____

[2]While the class, if certified, would encompass employees from all of California,
28  including the Northern District, no class has yet been certified, and the only specific facts
appearing in the operative complaint relate to the named plaintiffs.

4

United States District Court
For the Northern District of California

1  two cases were brought by the same counsel.  While not a named plaintiff in *Karamian*,

2  Forrand was part of the putative class.  Forrand also resides in Los Angeles County, which is

3  located in the Central District.  Most significantly, the timing between Judge Fischer's

4  unfavorable ruling regarding class certification in *Karamian* and the filing of this case

5  strongly indicates a causal relationship between the two.  This Court cannot reach the

6  incredible conclusion that counsel representing a plaintiff who resides in the Central District,

7  where counsel had previously filed a lawsuit asserting claims on behalf of a putative class

8  that included the plaintiff, were not engaged in forum shopping when they chose to file a

9  nearly identical class action in the Northern District days after the judge in the earlier-filed

10  Central District case issued an unfavorable ruling.  To the contrary, the Court concludes that

11  Plaintiffs – including Plaintiff Forrand – filed this case in this district in an improper attempt

12  to forum shop, and the Court therefore need not give substantial deference to Plaintiffs'

13  choice of forum.

14       Moreover, because transfer of this case to the Central District of California would

15  serve to discourage the type of forum shopping that Plaintiffs have engaged in, the interest of

16  justice also weighs heavily in favor of transfer.  When this Court denied FedEx's motion to

17  transfer a related case, *Bibo v. Federal Express, Inc.*, Case No. 07-2505 TEH, it explained

18  that the then-pending *Karamian* case, as well as another pending case in the Central District,

19  *Brown v. Federal Express Corporation*, Case No. C07-5011 DSF PJW, led the interest of

20  justice to "weigh in favor of transfer, but only slightly."  *Bibo* Oct. 9, 2007 Order Denying

21  Def.'s Mot. to Transfer Venue Under 28 U.S.C. § 1404(a) at 6 (Ex. 1 to Opp'n).  However,

22  in *Bibo*, the named plaintiffs resided in the Northern District, and there was no evidence of

23  forum shopping.  Thus, the balance to be struck there differed considerably from that in the

24  instant case, and this Court's denial of transfer in *Bibo* is not dispositive here.  Although

25  Plaintiffs correctly observe that related cases are now pending against FedEx in both the

26  Northern and Central Districts, the fact that this Court has retained *Bibo* is insufficient to

27  overcome the impact of Plaintiffs' forum shopping on the Court's analysis under 28 U.S.C. §

28  1404(a).

United States District Court

For the Northern District of California

1    In short, the Court concludes that Plaintiffs' chosen forum is entitled to minimal

2    deference in this case because the named plaintiffs do not reside in this district; this case was

3    brought as a class action; the facts giving rise to the named plaintiffs' claims all arose in

4    other districts; and the evidence indisputably indicates an attempt to forum shop.  Defendant

5    has more than met its burden in demonstrating that transfer is appropriate because, "[w]hile

6    the balance of convenience is in equipoise, the interest of justice heavily favors transfer of

7    venue." *Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, Case No. C03-3711

8    MHP, 2003 WL 22387598, at *6 (N.D. Cal. Oct. 14, 2003) (reaching the same result in a

9    similar case, where plaintiffs filed a class action suit in the Northern District after dismissing

10   a nearly identical class action in the Central District after an unfavorable ruling there).

11

12   **CONCLUSION**

13   Accordingly, with good cause appearing for the reasons discussed above, Defendant's

14   motion to transfer venue is hereby GRANTED.  The Clerk shall close the file and transfer

15   this case to the Central District of California.

16   In its reply, Defendant asked that this Court transfer the case specifically to Judge

17   Fischer.  While it appears likely that the related case rules in the Central District will result in

18   this case being assigned to Judge Fischer, this Court has no authority to control the

19   assignment of cases in another district.  Thus, this case shall be transferred to the Central

20   District of California, and Defendant may then seek relation of this case to Judge Fischer as

21   may be appropriate under that court's local rules.

22

23   **IT IS SO ORDERED.**

24

25   Dated:   01/30/08

26   THELTON E. HENDERSON, JUDGE
     UNITED STATES DISTRICT COURT

27

28

6