Joshua N. Rose (DCB 420606)* *Pro hac vice* application pending
Josh@Roselawyers.com
David L. Rose (DCB 376379)
Daver@Roselawyers.com
Earlene W. Rosenberg (DCB 974273)* *Pro hac vice* application pending
Erosenberg@Roselawyers.com
**ROSE & ROSE, P.C.**
1320 19th Street, N.W., Suite 601
Washington, D.C.  20036
Telephone: (202) 331-8555
Facsimile: (202) 331-0996

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FRED HULAC, KATHY FINGARSON, DAVID WILLIAMS, RAUL ARMENDARIZ, GLENDORA SPINKS, WILLIAM STEWART and all those similarly situated<br><br>                Plaintiffs,<br><br>vs.<br><br>FEDERAL EXPRESS CORPORATION<br><br>                Defendant. | **CASE NO. 08-01557 JSW**<br><br>**AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**ADEA COLLECTIVE ACTION ERISA AND CLASS ACTION UNDER THE FEHA** |

**INTRODUCTION**

1.    Plaintiffs are ninety-six current and former hourly employees of Defendant Federal Express Corporation ("Fed Ex") who bring this collective action to enforce and secure their rights and the rights of other similarly situated older employees under

1  the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §

2  621, *et seq.*, the Employee Retirement Income and Security Act

3  ("ERISA") and the California Fair Employment and Housing Act,

4  Cal. Gov't. Code §12940, et seq. 29 U.S.C. 1140Plaintiffs seek an

5  injunction for relief from Fed Ex's conduct that has had

6  disparate impact against older workers and defendant's practice

7  of treating older workers less favorably than younger ones and

8  correcting the effects of past discriminatory conduct.

9  Plaintiffs further seek to be made whole for the harm they have

10 suffered from disparate impact and disparate treatment by Fed Ex.

11      2.    Plaintiffs allege in the alternative that Fed Ex took

12 adverse employment actions against them and other, similarly

13 situated hourly employees for the purpose of interfering with

14 ERISA rights to which such employees were entitled or may have

15 become entitled, in violation of ERISA 29 U.S.C. 1140, or that

16 defendant acted with a mixed age and benefits discrimination

17 motive.

18      3.    The plaintiffs listed on Appendix C are California

19 residents and seek to represent a class of employees employed by

20 Fed Ex in California who have been victims of Fed Ex's age

21 discrimination in violation of Cal. Gvt. Code §12940.

22                              **JURISDICTION**

23      4.    This Court has jurisdiction over this case under 29

24 U.S.C. § 626(c), 29 U.S.C. 1140 and 28 U.S.C. § 1331, § 1337 and

25 § 1367.

26                                **VENUE**

27

28                                  2

5.    Venue in this District is appropriate under the ADEA, 29 U.S.C. § 626(c) and ERISA and under Cal. Gov't. Code § 12965(b)et seq.

**PARTIES**

6.    Defendant Federal Express Corporation ("Fed Ex" or "Defendant") is a corporation engaged in the transportation of packages by air and by ground throughout the United States.

7.    Defendant is an employer within the definition and coverage of 29 U.S.C. § 630(b) of the ADEA, ERISA 29 U.S.C. 1140 the Cal. Gov't. Code § 12900 of the FEHA, and other state laws prohibiting age discrimination.

8.    Each Plaintiff named in Appendix A and Appendix B is or was employed by the Defendant an hourly paid position.

9.    Each Plaintiff named in Appendix A and Appendix B is 44 years of age or older.

10.    Each Plaintiff has been employed 10 or more years by Defendant Fed Ex.

11.    Appendix A lists hourly employees discriminated against through Fed Ex's policies who are no longer employed by Fed Ex. All are 44 years of age or older and have worked at Fed Ex for 10 or more years.

12.    Fifty-eight (58) plaintiffs listed on Appendix A are no longer employed by Federal Express, and nine of the employees were forced to retire.

13.    Plaintiffs who are currently employed with Fed Ex are listed on Appendix B.

3

14.   Fed Ex discriminates against the Plaintiffs employed by Fed Ex listed on Appendix B through Fed Ex policies.  Fed Ex wants these employees to become so frustrated they quit.  If they do not quit they will be fired, harassed or forced to retire early.

15.   The Plaintiffs in Appendix B are still employed by Fed Ex.  They seek an injunction for relief from Fed Ex's discriminatory practices as well as and seek make whole at other appropriate

16.   Nine of the employees listed in Appendix A reasonably believed Fed Ex would be likely to terminate them if they did not accept early retirement.  None of these couriers reached 60 years of age with twenty five or more years of experience with Fed Ex.  Retiring before reaching 60 years of age and twenty five years or before 25 years of service of employment has a negative impact on these couriers, monthly pension payment.

**FACTS**

17.   Defendant operates a package delivery service which transports packages throughout the United States, many on an overnight schedule.

18.   Defendant has, at all relevant times, employed over 40,000 hourly employees in the United State in positions including: couriers, service agents, operations managers and ramp transport drivers(RTD's).

19.   Defendant employed over 31,000 full time couriers in 2006.

4

1    20.  At all relevant times, Defendant has had its

2    headquarters in Memphis, Tennessee.

3    21.  Fed Ex operates through several hundred "stations" and

4    substations associated with delivery hubs (airports) and

5    dispersed to ensure geographic coverage in most parts of the

6    United States. Stations may employ from 20 (at satellite

7    stations) to several hundred employees.

8    22.  All packages received by Fed Ex for delivery in the

9    United States are tracked from its Memphis headquarters from the

10   time the package is picked up by employees at a station through

11   the time of delivery to the recipient. Defendant Fed Ex uses

12   electronic tracking systems to ensure the flow of packages from

13   the point of pick up to the point of delivery.

14   23.  Fed Ex personnel and systems at its Headquarters

15   provide data and instructions to station personnel regarding the

16   routes of delivery, and the personnel and equipment required to

17   handle the volume of deliveries every day of operation.

18   24.  Couriers and local managers at each station provide

19   information back to headquarters concerning local conditions,

20   delivery times and the drive times required to complete scheduled

21   routes. Routes and assignments are monitored and adjusted through

22   a combination of headquarters and local inputs.

23   25.  Stations and substations are the points where local

24   couriers pick up the day's deliveries and drop off the day's

25   pick-ups.  Each courier is assigned to one or more stations or

26   substations.

27

28                                    5

26.    Couriers pick up packages, drive delivery vehicles, deliver packages to pick-up points, sort packages for delivery, deliver packages and some pick-up packages during the afternoon.

27.    Typically, full time couriers are assigned to a regular route to service customers, drop points and destinations as the day's volume dictates.

28.    Part-time couriers have similar responsibilities as permanent full-time couriers.  They must deliver packages and some pick-up packages.

29.    Service agents assist couriers with administrative activities, operations managers oversee couriers for the senior manager and ramp transport drivers deliver bulk packages to stations and to customers.

30.    Each station is managed by a manager ("station manager") who plays a role in hiring, rating, assigning routes and other duties, disciplining and firing hourly personnel assigned to that station.  In larger stations, several operations managers and subordinate managers may assist with the management of personnel and equipment at the station.

31.    Station managers do not have the final authority to hire or fire hourly workers. Senior Vice Presidents and Fed Ex located at headquarters, in Memphis, TN must approve for hiring and firing recommendations from station managers.

32.    Managers must follow Fed Ex corporate policies developed at headquarters by applying Management by Objectives/Performance by Objectives ("MOB/POB") and similar

6

1   strategies.

2        33.  Fed Ex maintains uniform corporate policies for hourly

3   workers that cover all aspects of job performance from uniforms

4   and grooming through procedures for tracking pick-ups and

5   deliveries.  Such policies are published in handbooks, memos and

6   training initiatives including the "People Manual" for all

7   employees and "Best Practices" (BP) for couriers, service agents,

8   ramp transport drivers and managers. Couriers and other hourly

9   employees are obliged to go through training for several weeks.

10       34.  Fed Ex provides training to managers for several weeks

11   at its headquarters in Memphis and application of its policies in

12   stations across the country.

13       35.  Fed Ex sets periodic budget and performance goals for

14   each station.  Performance goals include such factors as on time

15   deliveries, retaining and adding customers, reducing costs and

16   reducing the ratio of hours worked to packages delivered by

17   increasing stops per hour.

18       36.  Station managers have regular access to data regarding

19   station performance against the goals set by Fed Ex.  Station

20   managers are also provided with reports at least once per month

21   on station progress in achieving specific goals and specific

22   factors that have contributed to problems in achieving those

23   goals.

24       37.  Fed Ex sets specific stops per hour goals for each

25   station and for each route within each station and provides

26   periodic reports to station managers indicating the routes and

27

28                                 7

1  the individuals assigned to those routes where the stops per hour
2  goals are not met.

3      38.  Fed Ex policy and practice requires station managers to
4  provide disciplinary counseling in the On Line
5  Counseling/Compliment (OLCC) area of the PRISM election system
6  for those couriers who are identified as having failed to meet
7  stops per hour goals and to follow through with performance
8  improvement plans and termination if the courier is repeatedly
9  identified as failing to meet his goals.

10     39.  Fed Ex has increased the delivery goals, including
11  stops per hour for many couriers over 44 years of age, to levels
12  that cannot be achieved without violating company policies about
13  safe driving, delivery priorities and/or policies against working
14  during lunch breaks or off the clock.

15     40.  Manager Hines of the stations in New Jersey, like other
16  managers, receives the stops per hour report and goals from an
17  industrial engineer, who receives them from Headquarters in
18  Memphis.  The increase in Plaintiff Notarfrancesco's stops per
19  hour is an example of how older couriers are targeted for
20  termination with headquarters sanctioning these increases.

21     41.  Fed Ex provides specific budgets to each station for
22  labor costs and, on information and belief, provides managers
23  with information on the specific costs of each courier's hours,
24  which include benefits costs.

25     42.  On information and belief, Fed Ex considers the
26  specific cost per hour of each courier in designing and
27
28                              8

implementing station and route specific performance and budget

goals.

43.   Performance Improvement Policy 2-50 provides that

employees must be advised, upon a second performance deficiency

notice (whether a reminder or a warning), that termination can

occur with a third notice. A third notice triggers a notice to

management to audit the employee's job history to determine

whether termination is warranted.

44.   Acceptable Conduct Policy 2-5 is published in the Fed

Ex People Manual. It gives station managers broad discretion to

discipline and fire couriers and other hourly employees if

disciplined three or more times for a variety of reasons.

45.   Under Fed Ex policy, 2-5, a manager who provides notice

of a deficiency to an employee is instructed to enter the

counseling into the On-line documented Compliment/Counseling

("OLCC") component of the PRISM system.   That system makes

entries available to other managers and headquarters personnel.

46.   Under policy 2-5, three notifications of deficiency

within a twelve month period trigger an audit of the employee's

employment history, which usually results in termination.

47.   Managers are trained by headquarters in BP methods and

related practices.   Managers periodically ride along with

couriers on a "Check Ride" or otherwise monitor to determine the

number of packages a courier's route should deliver per hour, or

what the courier's "stops-per-hour" should be.

48.   Managers have adjusted stops-per-hour on some older

9

couriers' routes based on falsified data generated by a younger
courier who "ran" the route and entered delivery data in a manner
that made it appear to be possible to complete more deliveries
than would be possible in compliance with Fed Ex delivery
policies.  The practice of altering routes and benchmarks based
on such data has been used to encourage older couriers to leave
the company.

49.  Fed Ex's headquarters issues a fiscal formula, the
Permanent/Full-Time Equivalency ("P/FTE"), to industrial
engineers and senior managers at each station.

50.  Headquarters issues the P/FTE formula for stations to
lower the station's costs while performing the same tasks. The
performance goal is to reduce the hours worked to perform the
station tasks.  On information and belief, there is a parallel
budget goal of reducing the cost of performing the tasks.

51.  P/FTE monthly goals are discriminated by Fed Ex senior
executives to managers.  For example, in an email by Fed Ex
senior executive Bill Logue on February 21, 2005 to "All-DGO
Management," Logue discusses route reduction and P/FTE
"improvement" to achieve the goals set by headquarters.

52.  On information and belief, Fed Ex considers the hourly
cost of each hourly employee in deciding how to allocate hours
assigned to each station so that there is an incentive to cut the
hours of employees with higher benefits costs.

53.  Fed Ex allocates hours to its employees in a way that
harms its older, more experienced couriers and other hourly

employees.

54. Fed Ex has set P/FTE goals in a manner that has harmed couriers 44 and older with 10 or more years of experience disproportionately by taking hours from Plaintiffs and other similarly situated couriers and giving those hours to younger couriers with less experience than the Plaintiffs and other members of the class of older, more experienced employees.

55. Fed Ex has no legitimate business reason for using the P/FTE mechanism for discriminating against the Plaintiffs and older, more experienced employees.

56. Age has been a motivating factor in Fed Ex's decisions to increase stops per hour of older workers and to allocate more hours to younger ones.

57. Fed Ex evaluates its station managers based on whether or not the station adhered to the P/FTE's issued from headquarters and repeatedly lowered station costs.

58. Under the Fed Ex policy of P/FTE, Fed Ex rewards managers who reduce the hours worked by older couriers, ramp transport drivers, handlers, operations managers and service agents to reduce the station's costs. This policy harms older experienced  employees but rewards less experienced employees under age 44 by increasing their hours and pay. Managers receive a bonus for adhering to the P/FTE hrs given to station from Fed Ex headquarters.

59. In 2004 and 2005 managers' performance was reviewed for effectiveness in meeting P/FTE goals. The category is "Results

11

1  for Single Most Critical Work Objective."

2      60.  Managers may be terminated for not meeting "FTE" goals.

3      61.  The Fed Ex FTE policy has harmed experienced older

4  disproportionately and has favored younger, less experienced

5  employees.

6      62.  Managers are rated and are paid bonuses based in large

7  part on station performance.

8      63.  Station performance criteria include: "on time"

9  delivery rates; stops per man hour worked by couriers; and

10  controlling budget factors such as labor and equipment costs.

11      64.  On information and belief, labor costs assigned to each

12  station's budget include the base pay, overtime and benefits paid

13  to hourly workers assigned to that station.

14      65.  On information and belief, managers are regularly

15  advised by headquarters personnel regarding factors that increase

16  their labor budget.

17      66.  From some point before 1974 until January 1, 2004, Fed

18  Ex offered a defined benefit retirement plan to its full time

19  couriers, service agents, operations managers, ramp transport

20  drivers and other hourly employees.

21      67.  Under the defined benefit plan, the annual cost of

22  funding a worker over 44 years older is higher than the annual

23  cost of funding a worker under 40.

24      68.  Under the defined benefit retirement plan, the amount

25  contributed for a plan member may be substantially less than the

26  amount vested for a member whose employment terminates before

27

28                              12

full retirement eligibility is met.  That difference is refunded to the plan upon the member's departure. At least until 2007, Fed Ex could reduce its contributions in subsequent years if the plan recovered such amounts from employees terminated before full retirement eligibility.

69.  Fed Ex provides a health care plan for its employees and some of its retired employees.  The cost of providing medical benefits increases with the age of the medical benefit plan population.

70.  The cost to Fed Ex of providing short term and long term disability benefits increases with the age of the employees covered by the plan.

71.  Fed Ex has, at least since the mid-1990's, offered to subsidize the cost of retiree medical benefits for hourly employees who retire from a full time hourly employment status to full retirement benefits under a Fed Ex plan.

72.  Fed Ex is required to book the projected cost of retiree medical benefits during the years the employee is working, prior to retirement.

73.  Fed Ex may recover funds booked for retiree medical benefits costs if employment is terminated in a manner that makes the employee ineligible for employer subsidized retiree medical benefits. Such recovered funds can be used to offset the projected retiree medical benefits costs projected for current employees.

74.  Fed Ex retiree healthcare costs decreased by 18 million

13

1 | dollars from 2006 to 2007 according the 2007 Fed Ex Annual

2 | Report.

3 | 75. Couriers hired prior to 2004 are eligible to

4 | participate in the defined benefit retirement plan. Couriers

5 | hired after that date are not.

6 | 76. Fed Ex amended the defined benefit plan so that

7 | couriers cannot accrue additional benefits under that plan after

8 | June 1, 2008.

9 | 77. The cost to Fed Ex of annual contributions required to

10 | fund benefits for participants in the defined benefit retirement

11 | plan was substantially higher (at least until January 1, 2008)

12 | than the cost of annual contributions for those in the defined

13 | contribution plan that replaced it.

14 | 78. The cost of funding defined benefit retirement benefits

15 | increases with the age of the employee.

16 | 79. As part of its compensation to hourly workers, Fed Ex

17 | provides a health plan that assures assistance to the employee in

18 | the payment of medical expenses, drug prescriptions, and dental

19 | expenses. Fed Ex provides a Medical Absence Pay and Short Term

20 | and Long Term disability benefits if a courier is sick or injured

21 | and unable to work.

22 | 80. Fed Ex provides a Portable Pension Plan. Fed Ex

23 | expects its pension cost to Fed Ex to increase in 2008.

24 | 81. Upon information and belief, Fed Ex has administered

25 | its policies in a discriminatory manner against older hourly

26 | workers to eliminate these older workers from its work force,

27 |

28 |

14

1  which would reduce its labor costs and the costs of its health
2  and medical benefits, retirement program, and other employee
3  benefit plans as seen in the reduction in retiree health
4  benefits.

5      82.  Fed Ex couriers carry devices that scan information
6  about packages upon pick up and upon delivery including the time
7  that a package is picked up and delivered.  Most delivery
8  vehicles are equipped to upload information from the scanning
9  device to the Fed Ex tracking system. The information is
10 transmitted  multiple times each day from each scanner to the
11 courier's home station and to headquarters.

12     83.  The scanning devices do not verify location.  The
13 device records a package as delivered to its destination at the
14 time the courier causes it to be scanned as "delivered" whether
15 or not the courier has actually delivered the package at that
16 point.

17     84.  Fed Ex policies specify that a package should be
18 scanned as "delivered" at the moment of delivery.

19     85.  Scanning packages as "delivered" at a time other than
20 the moment of delivery is a practice that can substantially
21 improve station and individual courier performance statistics
22 such as "on time" delivery and stops per hour.

23     86.  "Deliberately falsifying" delivery is a termination
24 offense under section 2-5 of the Fed Ex "People Manual" which
25 applies to all Fed Ex employees.

26     87.  Inaccurate package delivery records may be entered for
27
28                              15

a number of legitimate reasons. For example, a package might be too large for the courier to handle the scanner, so that the package is scanned upon leaving the truck. Similarly, a courier may attempt a delivery, scan in the "nobody home" code (DEX08), only to find that the recipient was home and took the package. Conversely, a customer may be distracted during a delivery, after the package is scanned, and not accept it for some time.

88. Station managers rarely audit most couriers to determine whether packages are actually delivered at the time they are scanned.

89. Station level managers frequently provide negative feedback to couriers whose deliveries are logged as "late."

90. Audits are conducted periodically by headquarters personnel to determine whether the station is in compliance with delivery rules and policies.

91. Upon information and belief, older couriers (44 and over) and more experienced employees, including many of the plaintiffs, are targeted for audits to discover instances of inaccurate delivery entries, while younger couriers are not subject to similar scrutiny.

92. Upon information and belief Defendant Fed Ex has disproportionately adjusted routes to increase stops per hour or otherwise make meeting the performance standards excessively difficult for couriers 44 and older, as compared to those for couriers under 44 years of age.

93. Fed Ex has reduced the work hours for the Plaintiffs

set forth in Appendix A, Appendix B and Appendix C.

94. On check-rides managers "write-up" older couriers for not wearing the "right color socks" or not "walking-briskly." When managers writeup couriers or increase couriers' stops-per-hour to an unattainable goal, managers are applying Fed Ex's discriminatory policies against Plaintiffs and similarly situated older couriers.

95. Senior Managers issue discipline selectively to older operations managers; that is, those 44 years of age and older.

96. Managers issue discipline to older couriers, ramp transport drivers and service agents 44 and over more frequently than those under 44 years of age.

97. Fed Ex hourly employees 44 and over with ten or more years of experience are terminated for "falsification" while younger couriers perform the same duties without penalty.

98. Under Fed Ex policy, negative "Counselings" include Warning Letters or Performance Reminders.

99. Hourly employees, including couriers, ramp transport drivers, service agents and operations managers, are normally terminated when there are three negative Counselings in their file.

100. In 2006, Fed Ex issued negative "Counselings" to couriers 44 and older with ten years of experience at four times the rate that it issued negative "Counselings" to couriers under 40 years of age with ten years of experience.

101. Upon information and belief, Fed Ex uses BP, and Stops-

1 | Per Hour to compel and encourage older, experienced couriers and
2 | other employees to quit or retire from their employment with Fed
3 | Ex before they attain years of service required for full retiree
4 | health benefits.

5 |     102. Upon information and belief, Fed Ex wants hourly
6 | workers over 44 with more than 10 years' company tenure to quit
7 | or be terminated before they reach 65 years of age or older with
8 | more than twenty five years of experience.

9 |     103. Fed Ex focuses intense scrutiny on older more
10 | experienced employees injured on the job or who otherwise require
11 | medical absence and Fed Ex discharges such older more experienced
12 | employees disproportionately and induces such employees to retire
13 | or otherwise to leave its employment.

14 |     104. Fed Ex treats older, more experienced couriers, ramp
15 | transport drivers and service agents who are injured for more
16 | than 90 days as "displaced employees" by causing them to lose
17 | their regular routes and other duties and such employees may be
18 | terminated if they do not find another route or position within
19 | Fed Ex.

20 |     105. Fed Ex has not treated younger couriers, ramp transport
21 | drivers, operations managers and service agents, who have been
22 | injured or who have otherwise required medical absences, with
23 | such scrutiny.

24 |     106. Injured older couriers, ramp transport drivers or
25 | service agents increase station costs and Fed Ex frequently
26 | displaces them by removing the courier/driver from his route and

18

1 | replacing him with a younger courier/driver, forcing the senior
2 | courier/driver to find another opening somewhere in the United
3 | States.  The same happens to service agents.

4 | 107. Under the policies and practices described above, Fed
5 | Ex has given preference to younger, less experienced couriers in
6 | starting times, assignments of production goals, overtime
7 | assignments, route assignments, discipline, performance
8 | evaluations, holding routes open pending return to work and other
9 | terms and conditions of employment as compared to older more
10 | experienced couriers, including Plaintiffs and other members of
11 | the class.

12 | 108. Employment practices by Defendant Fed Ex that
13 | discriminate against older more experienced couriers, ramp
14 | transport drivers and service agents and favor younger couriers,
15 | ramp transport drivers and service agents because their age are
16 | the prevailing pattern and practice of Fed Ex in California.
17 | Upon information and belief, Fed Ex has followed such age
18 | discriminatory employment practices throughout the United States
19 | that favor younger couriers at the expense of other older hourly
20 | employees.

21 | 109. Unless restrained by order of this Court, Defendant
22 | will continue to pursue policies and practices that cause
23 | Plaintiffs and other similarly situated older couriers to suffer
24 | irreparable harm.

**COLLECTIVE ACTION ALLEGATIONS**

110. Defendant is engaged in a pattern or practice of treating hourly employees over 44 and with ten or more years of service less favorably than employees under 44 in disciplinary action, assignments and terminations.

111. Plaintiffs are similarly situated to each other because they have been harassed and threatened with the Defendant Fed Ex's pattern or practice of age discrimination in employment in violation of the ADEA, 29 U.S.C. § 216(b) and 626(b).

112. Defendant Fed Ex has employed thousands of other hourly employees over 44 years of age with ten years of service.

113. Defendant has employed thousands of hourly employees who have been adversely affected by its discriminatory discipline, assignment and termination practices and who are similarly situated to the Plaintiffs.

114. Defendant's pattern or practice of discrimination and its practices that disparately impact older hourly workers are directed from its headquarters in Memphis.

**CLASS ALLEGATIONS – California Class**

115. Plaintiffs Hulac, Fingarson and Stewart and six other Plaintiffs listed in Appendix D are present and former Fed Ex hourly workers who were or are employed in an establishment located in the State of California.

116. Fed Ex with more than 10 years of service with Fed Ex and who have been harmed by Fed Ex's discriminatory conduct since they passed the age of 44, including loss of pay and termination

of employment, as a result of defendant's pattern of
discrimination against older workers.

117. Fed Ex has employed well over 500 hourly workers in
California who have suffered adverse employment actions since
they passed the age of 44 with more than ten years of company
tenure, including loss of pay and termination of employment, as a
result of defendant's pattern of discrimination against older
workers.   The claims of the members of the class are so numerous
that joinder would be impractical.

118. *Commonality*.  The questions of fact and law of the
named individual California resident Plaintiffs are common to
other members of the class.  Common questions of fact and law
predominate over other questions affecting individual class
members.

119. *Typicality*.  The named California Plaintiffs have
claims that are typical of  those of the other class members.

122*. Adequacy.*  The class representatives will adequately
represent the class.  The class representatives have no interests
that conflict with the interests of  unnamed  members of the
class.  They are interested in pursuing relief vigorously.  They
have retained qualified counsel.  Their legal representatives,
Rose & Rose, P.C., will adequately represent the class.

123.  Pursuit of the claims of the class members in separate
individual actions by employees carries a risk of inconsistent
and varying adjudications.  As a practical matter, adjudications
with respect to individual employees may be dispositive of the

1    interests of other employees, or may substantially impede or

2    impair their ability to protect their interests with regard to

3    the class claims.

4         124.    A class action is superior to other methods for the

5    fair and efficient adjudication of the claims of the class

6    members because the claims involve the interpretation of common

7    documents and work situations.   It would not be in the best

8    interests of the present and former employees to individually

9    control the prosecution of the claims.   Without a class action,

10   it is unlikely that most individual employees would be

11   economically able to bring suit.

12        125.    There are no unusual legal or factual issues creating

13   class manageability problems.

14                   **CLASS ALLEGATIONS - ERISA CLASS**

15        126.    Plaintiffs Appendices A-E are present and former Fed

16   Ex hourly workers who have been eligible to participate in Fed Ex

17   employee benefits plans.

18        127.    Fed Ex has employed over 10,000 hourly workers who

19   have suffered adverse employment actions in whole or in part for

20   the purpose of interfering with their ability to obtain benefits

21   under Fed Ex employee benefit plans. The claims of the members of

22   the class are so numerous that joinder would be impractical.

23        128.    *Commonality.*  The questions of fact and law of the

24   named individual California resident Plaintiffs are common to

25   other members of the class.   Common questions of fact and law

26   predominate over other questions affecting individual class

27

28                                   22

members.

129. *Typicality*. The named California Plaintiffs have claims that are typical of those of the other class members.

130. *Adequacy*. The class representatives will adequately represent the class. The class representatives have no interests that conflict with the interests of unnamed members of the class. They are interested in pursuing relief vigorously. They have retained qualified counsel. Their legal representatives, Rose & Rose, P.C., will adequately represent the class.

131. Pursuit of the claims of the class members in separate individual actions by employees carries a risk of inconsistent and varying adjudications. As a practical matter, adjudications with respect to individual employees may be dispositive of the interests of other employees, or may substantially impede or impair their ability to protect their interests with regard to the class claims.

132. A class action is superior to other methods for the fair and efficient adjudication of the claims of the class members because the claims involve the interpretation of common documents and work situations. It would not be in the best interests of the present and former employees to individually control the prosecution of the claims. Without a class action, it is unlikely that most individual employees would be economically able to bring suit.

133. There are no unusual legal or factual issues creating class manageability problems.

23

**Representative Claims**

Terminated

Plaintiff Fred Hulac - California

134.   Fed Ex terminated Plaintiff Hulac for allegedly falsifying his timecard.  Plaintiff Hulac used a timecard in his truck to be more efficient.  Keeping a timecard in your vehicle was a practice at his station.  He was on leave when this practice changed and he was never informed of any policy change.

135.   He was terminated for "deliberate falsification."  He did not record additional hours; he only sought to be more efficient for Fed Ex.  Plaintiff Hulac was terminated because he was 54 years of age and because said termination would prevent him from collecting retirement and from receiving retiree medical benefits.

Plaintiff Larry Mungiello- New Jersey

136.   Fed Ex terminated Larry Mungiello on 8/31/05 for alleged violation of policy 2-5.  Mr. Mungiello used a courier code because there was no place to park near the dock where he was to deliver packages.  Mr. Mungiello has more than 150 Fed Ex documents showing couriers then under 40 years of age deliberately falsified records but they were not terminated by Fed Ex for those acts.

137.   Mr. Mungiello denies falsifying and believes he was

24

targeted for termination because of his age.  Plaintiff Mungiello

was 64 when Fed Ex terminated him.

Counselings to Mungiello state:

"LARRY THIS IS TO ACKNOWLEDGE THAT YOU HAVE MISSED YOUR 278 GOAL

FOR THE PAST TWO WEEKS.FOR THE WEEK ENDING 04/16/04 YOU WERE AT

88.62% AND FOR THE WEEK ENDING  04/23/04 YOU WERE AT 86.20.BOTH

THESE WEEKS YOU MISSED YOUR ONROAD GOAL BY MORE THAN 10%.AS YOU

KNOW THIS IS UNACCEPTABLE AND ANY FUTURE OCCURENCES MAY RESULT IN

FURTHER DISCIPLINARY ACTION.....PHIL"

"LARRY THIS IS FOR YOU TO ACKNOWLEDGE THAT AS PER THE FORMAL

COUNSEL YOU RECIEVED ON MARCH 5TH YOU HAVE ON MONDAY JUNE 14TH

REVERTED BACK TO THIS SAME UNACCEPTABLE PRACTICE. YOU HAVE NOT

ONLY FAILED TO FOLLOW MY DIRECTIVE BUT AT THE SAME TIME YOU

FAILED TO MEET YOUR ONROAD PERFORMANCE. PLEASE TAKE ALL NECESSARY

STEPS TO AVOID THESE PRACTICES IN THE FUTURE.......PHIL"

Plaintiff Sandra Mason - Texas

    138.  Plaintiff Mason was a courier of Fed Ex and thereafter

became an Operations Manager.  Fed Ex terminated the employment

of the Plaintiff for an alleged violation of policy 2-5

Acceptable Conduct.  Plaintiff had an angioplasty performed in

2004 and after she returned to work Fed Ex repeatedly alleged Ms.

Mason violated policies.

    139.  Fed Ex has asserted that Plaintiff Mason falsified

employee time cards when she added a code to a timecard after

employees watched a required Fed Ex Frontline video, which is

delivered from headquarters.  Ms. Mason has 85 instances showing other managers adding the same code to employee timecards and they were not terminated for that specific act.  Policy 2-5 states "alleged violations should be thoroughly investigated and documented."  Fed Ex did not interview other managers at her station concerning Ms. Mason's suspension and termination and upon information and belief, conducted no investigation.  Ms. Mason, a 23 year employee, who was born in 1955, was terminated by Fed Ex because of her age and/or because of the costs to Defendant of her benefits and eligibility for retiree health insurance.

Plaintiff Romas Jasiulevicius – Florida

140.   Fed Ex terminated the employment and Plaintiff Jasiulevicius from its employment on 7/12/07.  He received a counseling for having an attendance rate of "99.6%" and were informed by Fed Ex that if he fell below that level of attendance he would receive a performance reminder.  Younger couriers at his station were not held to a 99.6% but to a lower 96% standard.

141.   Counselings from Fed Ex:

"ROMAS, THIS IS TO LET YOU KNOW THAT YOU ARE CURRENTLY AT **99.6%** FOR ATTENDANCE.  IF YOU FALL BELOW THIS PERCENTAGE YOU   WILL RECEIVE A PERFORMANCE REMINDER."

"*MIKE, YOUR ATTENDANCE IS AT **93.8%** RIGHT NOW, BELOW THE **96.0** STANDARD. PLS MAKE SURE THIS GOES IN AN UPWARD TREND.*

*ANOTHER SICK DAY MAY WARRANT A PERFORMANCE REMINDER."*

"ROMAS, YOU AND MIKE SMYTH ARE TO KEEP   SEPERATED AT ALL TIMES
WHILE AT WORK.   NO REMARKS ARE TO BE MADE TO EACH OTHER   OR
ANYONE ELSE REGARDING THE OTHER PERSON. ANY MUD SLINGING, RUMOR
STARTING OR REMARKS MADE ABOUT EACH OTHER WILL RESULT IN
DISCIPLINARY ACTION. THIS IS   THE ONLY WARNING THE TWO OF YOU
WILL RECEIVE."

<u>Plaintiff Rocco Notarfrancesco - New Jersey</u>

142.   Plaintiff Rocco Notarfrancesco repeatedly received
Counselings, Warning Letters and Performance Reminders for
conduct repeated by other couriers at his station. As of 5/13/08
he has been suspended with pay for 13 days for conduct admittedly
done by at least two other couriers at his station, Marty McGraph
and Russ Morgan. Plaintiff Notarfrancesco has had the same route
for more than 17 years.

143.   On May 21, 2008 Fed Ex terminated the employment of
Plaintiff Notarfrancesco for allegedly using DEX Code 08 to
increase his stops per hour.  However, managers Joseph Hines and
Freddy Rowe repeatedly issued counselings and performance
reminders to Plaintiff Notarfrancesco for "not meeting" his stops
per hour.

<u>Still Employed</u>

<u>Plaintiff Barry Barnett - Indiana</u>

144.   Plaintiff Barnett has 17 counselings.  He is

repeatedly warned and counseled for his stops per hour.  It is

customary for Fed Ex to use a younger driver when a senior

courier is on leave to justify increasing the senior courier's

stops per hour. Mr. Barnett took an extended leave of absence due

to stress placed on him by managers targeting him for

termination.  Mr. Barnett continues to be harassed and targeted

by managers.

145.  Counselings from Fed Ex Managers:

"BARRY, LAST WEEK YOU RAN 12.8 SPH AND YOUR GOAL WAS 15.5 SPH.

THE WEEK BEFORE YOU RAN 12.8 SPH AND YOU GOAL WAS 15.5SPH. YOU

ARE RUNNING LESS THAN 87% OF YOUR PLANNED GOAL.ALSO, WITHIN THE

LAST 7DAYS YOU WERE OFF BY MORE THAN 2 COUNTS ON YOUR P2 4 OF THE

DAYS AND OVER 15 MW YOU ARE RUNNING LESS THAN 87% OF YOUR PLANNED

GOAL. ALSO, WITHIN THE LAST 7 DAYS YOU WERE OFF BY MORE THAN 2

COUNTS ON YOUR P24 OF THE DAYS AND OVER 15 MIN OF YOUR SLIDING

CLEAR 6 OF THE DAYS.  I HAVE GIVEN YOU A COPY OF YOUR 280 GOALS.

PLZ FOCUS AND DE BETTER IN THESE AREAS. J"

"BARRY, WE REVIEWED YOUR NEW GOALS AND DISCUSSED THAT I WILL BE

DOING A CHECKRIDE ON YOU NEXT THURSDAY 062206 TO HELP COACH YOU

ON YOUR METHODS THAT WERE DISCUSSED ON THE CHECK RIDE ON 061206.

WE USED A SWING DRIVER TO SET YOUR TUES-FRID GOAL SINCE YOU

CALLED IN SICK ON TUESDAY. I LOOK FORWARD TO OUR RIDE. IF YOU

HAVE ANY QUESTIONS PLEASE SEE ME."

146.  Fed Ex terminated or forced to quit Plaintiffs listed

on the graph at pages 30-35 under false allegations of

falsification of a delivery, misconduct or failure to report an

accident, under Fed Ex Acceptable Conduct Policy 2-5.

147. The Plaintiffs are listed in the chart below at 31-36

with the state in which the Plaintiff worked, the Plaintiff's

name, the alleged conduct that brought termination by Fed Ex, age

at termination, years of service (YOS) with Fed Ex and the year

Fed Ex terminated the Plaintiff:

| State Employed | Plaintiff | Alleged Conduct | Age | YOS | Year Terminated |
|---|---|---|---|---|---|
| California | Fred Hulac, | Falsification | 54 | 22 | 1/9/07 |
|  | Glendora Spinks | Displaced; unable to lift 70 lbs after returning to work from an injury | 52 | 14 | 4/21/05 |
| Colorado | Lori Bernstein | Displaced; unable to lift 70 lbs after returning to work from injury and given a bulk route | 44 | 22 | 4/4/06 |
| Connecticut | Delno Clark | Falsification | 48 | 21 |  |
| Arizona | Raul Armendariz | Falsification | 50 | 21 | 12/21/06 |
|  | Plaintiff | Alleged Conduct | Age | YOS | Year Terminated |

29

| State | Name | Policy | | | Date |
|---|---|---|---|---|---|
| Florida | John Pellegren | "Horsing Around" Policy 2-5 | 53 | 13 | 5/20/07 |
| | Susan Elins | Falsification Policy 2-5 | 46 | 12 | 1/2008 |
| | Peggy Whitman | Falsification Policy 2-5 | 51 | 20 | 11/12/07 |
| | Romas Jasiulevicius | Falsification Policy 2-5 | 45 | 20 | 7/12/07 |
| | Rich Salvatore | Forced Out | 44 | 22 | 2/24/07 |
| Georgia | Jerome Vanderable | Falsification Policy 2-5 | 47 | 21 | 3/4/05 |
| Hawaii | Sherrie Smith | Falsification Policy 2-5 | 51 | 21 | 12/16/04 |
| | Edward Medeiros | Falsification Policy 2-5 | 49 | 13 | 1/24/05 |
| | Rian Takeshita | Falsification Policy 2-5 | 44 | 13 | 7/24/06 |

30

| Iowa | Steven Sutterman | Falsification Policy 2-5 | 46 | 22 | 2/2/04 |
|---|---|---|---|---|---|
| Maryland | Samuel Kudjordji | Falsification Policy 2-5 | 51 | 11 | 4/13/05 |
| | Lani Gibbons | Falsification Policy 2-5 | 54 | 17 | 6/26/07 |
| | Sammy Smith | Policy 2-5 | 47 | 16 | 3/14/07 |
| Mass. | Peter Fay | Policy 2-5 | 47 | 20 | 2/21/02 |
| | Michael Kelley | Falsification Policy 2-5 | 48 | 20 | 10/7/05 |
| | John Neil | Falsification Policy 2-5 | 50 | 22 | 3/07 |
| | Kenneth Kumm | Falsification Policy 2-5 | 49 | 25 | 10/25/05 |

31

| | | | | | |
|---|---|---|---|---|---|
| Michigan | Lizzie Middlebrook | Falsification Policy 2-5 | 51 | 20 | 7/5/05 |
| | Debroah Ridenhour | Falsification Policy 2-5 | 59 | 28 | 3/15/07 |
| New Jersey | Larry Mungiello | Falsification Policy 2-5 | 64 | 18 | 8/31/05 |
| | Rocco Notarfranceso | Falsification Policy 2-5 | 52 | 21 | 5/21/08 |
| New Mexico | Steven Goldberg | Called customers while delivering package | 53 | 18 | 6/24/04 |
| New York | Maggie Dean | Accident | 45 | 14 | 2/4/05 |
| North Carolina | Sandra Compton | Falsification Policy 2-5 | 58 | 11 | 4/9/07 |
| | Michael Dill | Falsification Policy 2-5 | | | |
| Ohio | Shryl Weideman | Displaced | 46 | 11 | 10/17/05 |
| | Ronald Adams | Falsification Policy 2-5 | 48 | 18 | 7/18/05 |

| | | | | | |
|---|---|---|---|---|---|
| Oklahoma | William Watkins | 1 overlooked package | 57 | 17 | 6/10/05 |
| | Edward Jones | Falsification Policy 2-5 | 50 | 15 | 8/30/05 |
| Oregon | Belynda Ryles | Displaced; unable to lift 70 lbs after returning to work from an injury Falsification Policy 2-5 | 47 | 22 | 9/24/04 |
| | Jeff McEllreth | | 52 | 24 | 9/22/06 |
| Tennessee | Michael Parks | Terminated for Stops per hour | 48 | 20 | 9/25/04 |
| | Kenneth Adams | Falsification Policy 2-5 | 48 | 19 | 6/10/05 |
| | Ricki Stillwell | Falsification Policy 2-5 | 51 | 17 | 6/23/06 |
| | Verna Standback | Falsification Policy 2-5 | 52 | 24 | 8/11/06 |

33

| Texas | Sandra Mason | Falsification Policy 2-5 | 47 | 23 | 6/12/05 |
| Wisconsin | Robert Willette | Unreported Traffic Citation | 45 | 22 | 11/14/06 |

| Illinois | Bonnie Boston | Displaced | 47 | 16 | 2/1/2003 |

Hulac

148.   Plaintiff Fred Hulac ("Hulac") is a resident of Santa Rosa, California.  He was born on March 27, 1952.  Fed Ex employed Plaintiff Hulac in California as a courier for more than twenty-two years at the STSA station in this district.

149.   Fed Ex terminated Plaintiff Hulac's employment on January 9, 2007 for using a timecard kept in his truck. When Plaintiff Hulac pulled into the parking lot at Fed Ex station STSA after a week of vacation on Tuesday, January 7, 2007, his wife called to inform him that "Tammy from Fed Ex called" his home to inform him that the new start time is 7:00am.

150.   Plaintiff Hulac's typical Tuesday start times were 7:40am and 7:50am.  On the morning of January 7, 2007 he left his home at 6:45 am to arrive on time.

151.   Plaintiff Hulac arrived at the station at "7:05am" not wanting to be late.  He rushed into the building, but there was no time card left for him by managers.  To sign in for the day he

34

grabbed a blank time card from his truck and marked it for a
starting time of 7:05am.

152.   Plaintiff Hulac left a post-it note on his manager's
door explaining how he signed in for that day.

153.   Younger couriers at Hulac's station have used blank
time cards kept in their vehicles and none of those couriers was
terminated for using a blank time card.

154.   Plaintiff Hulac never had a chance to inform managers
of his time card entry when he returned to the station because all
managers had left by 6:40pm and his cell phone battery was dead.
He left another note on the door of his operations manager but she
allegedly never saw it.

155.   Hulac never falsified in his 22 year career as a
courier. Fed Ex terminated Hulac 11 weeks before his 55th birthday
when he could have vested in the retiree healthcare benefits
program.

156.   An office employee at Fed Ex spoke with Mrs. Hulac
minutes before his arrival at his station.  His managers did not
leave a time card with his name on it for him, which forced
Plaintiff Hulac to use any time card he had.  He signed in giving
the "new" start time a few minutes after he learned to sign in.

157.   Fed Ex to discriminate against Plaintiff Hulac and
other older employees with ten or more years of service employees.
Fed Ex applies its policy of falsification, (Acceptable Conduct
Policy 2-5) is applied in a discriminatory way to couriers, ramp

35

transport drivers, service agent, handlers and operations managers 44 and older with 10 or more years of experience and favors younger, less experienced for employees.

Fingarson

158.   Plaintiff Kathy Fingarson ("Fingarson") is a resident of Jenner, California.  Fed Ex hired Plaintiff Fingarson on September 1, 1988.  Plaintiff Fingarson worked at the STSA station and is currently working at the NOTA station in this District. She was born on October 31, 1953.

159.   Defendant schedules Plaintiff Kathy Fingarson and other couriers age 44 or older at the NOTA station for fewer hours than couriers under the age of 40.  Fed Ex issued eight negative "Counselings" for Plaintiff Fingarson as a form of disciplinary action, placed in the Online Documented Counseling and Compliment "OLCC" PRISM system, although it did not take any disciplinary action against younger couriers for similar practices.

Stewart

160.   Plaintiff William Stewart, employee number 32409, worked at the STSA Fed Ex station in Santa Rosa, California for twenty-three years.  He was born on 3/27/1952.  He worked 2209.45 total hours in 2004, 1759.03 hours in 2005 and 1431.36 hours in 2006.  Fed Ex allocated more hours to younger less experienced couriersthan to Plaintiff Stewart.  Defendant placed him on indefinite suspension after he had an accident while working as a

36

courier.  Fed Ex then called him and told him to return to work
the following Monday.

161.  Defendant did not inform Plaintiff Stewart of any
business reason for suspending him and did not advise him of
findings of any Fed Ex investigation.  He retired from Fed Ex on
3/28/2007, because he reasonably believed that Fed Ex would
terminate his employment if he did not do so, and became separated
from Fed Ex after his income had been sharply reduced.

### EEOC Charges - NOTICE TO THE DEFENDANT OF ALLEGATIONS OF AGE DISCRIMINATORY EMPLOYMENT PRACTICES

162.  Plaintiffs have exhausted California age discrimination
law requirements by filing charges with the FEHA.

163.  Plaintiffs have met the charge filing requirement of 29
U.S.C. §626(d).

164.  Defendant has been engaged in a pattern and practice of
unlawful age discrimination against plaintiffs and other similarly
situated older experienced employees from before 1997 through the
present.

165.  Fed Ex had 333 ADEA charges filed against it with the
EEOC from 2001 thru 2007, but only one had a successful
conciliation in 2006.

166.  The Defendant Fed Ex has had notice of the allegations
of discriminatory employment practices since September 30, 1997
when a charge number 15B970137 was filed by courier Ronald
Clausnitzer.  Gerald Freeman filed a charge with the EEOC and the

Clearwater Human Relations Dept. in 1997.   The EEOC charge number for Mr. Freeman is 15B960120 and the FEPA charge number is PCO#9607-02543.

167.   A law suit was filed alleging nationwide discrimination against older couriers on or about October 26, 1999.   That suit was filed by Freeman, Clausnitzer Vincent Maccia, Wayne Tate, Kathy Creamer and William Krolman , 99-2466-CIV-T-25B filed in Florida on October 27, 1999 and that suit was dismissed in 2002.

168.   Any forth effort at conciliation of the allegations in the case would have been futile. Id.

169.   Plaintiff Richard Boyd filed a charge of age discrimination against Fed Ex on December 22, 2003.

170.   In 1997 Clausnitzer and four other couriers filed charges of age discrimination and alleged a nationwide pattern of same.

171.   Fed Ex continues its discriminatory practices against the Plaintiffs and other older couriers, ramp transport drivers, service agents and operations managers.

172.   Plaintiff Raul Armendariz received a right to sue letter on 12/21/2007 from EEOC based upon charge number 540-2007-01910.

173.   Plaintiff Jeff McEllrath filed a charge against Fed Ex with the EEOC for age discrimination.   He received a right to sue letter on 1/15/2008, based upon charge number 551-2006-00517.

174.   Plaintiff Michael Parks filed a charge against Fed Ex

38

with the EEOC for age discrimination on 3/7/2007.  The charge
number is 494-2007-01495.

175.   Plaintiff Michael Breitenstein filed an age
discrimination charge and retaliation charge with the EEOC in
2007. His charge numbers are 437-2008-00197 and 22A-2007-04723.

176.   Plaintiff Hulac filed his EEOC charge on 12/3/2007.
The charge number is 550-2008-00613.

177.   Plaintiff Fingarson filed a charge with the EEOC and
cross-filed it with the California Department of Fair Employment
and Housing on 1/14/2007.

178.   Plaintiff David Williams filed a charge with the EEOC
in 2007 and received a right to sue letter in March 2008.

179.   Plaintiff Cedric Roane filed an age discrimination
charge with the EEOC in October 2007.

180.   Plaintiff Sarah Dancer filed an age discrimination
charge with the EEOC on 9/7/2007.

181.   Plaintiff Wilma Goree filed a charge of age
discrimination against Fed Ex on 8/30/2005 and received a right to
sue letter on 8/30/2005.  The charge number is 311-2005-01559.
Plaintiff Goree filed a retaliation charge on 11/29/2006.  The
charge number is 564-2007-00294.

182.   Plaintiff Kenneth Kumm filed a charge with the EEOC on
11/28/2005, charge number 161-2005-00143.

183.   Plaintiff Edward Jones filed a charge of age
discrimination by Fed Ex with the EEOC on 10/3/2007.

39

184.   Plaintiff Valentin filed a charge with the EEOC in April 2008.

185.   The plaintiffs listed in Appendix D were named and/or filed "opt in" forms in an action known as *Clausnitzer, et al v. Fed Ex* (CD Cal. cv 05-1290 ANx DOC).   An order entered in that case on October 19, 2007 denied class/collective action certification.   That Order was dismissed without prejudice "to the plaintiffs listed on Appendix D.   Plaintiffs' Rule 59(e) motion to alter and or judgment against the five plaintiffs in that action is pending for decision in the district court in the Central Division.

### CLAIM ONE

### For Discrimination in Violation of the ADEA

### (On Behalf of All Plaintiffs and the Class)

186.   Plaintiffs reassert and reallege paragraphs 1 through 191, inclusive, and fully set forth and incorporate said paragraphs herein by reference.

187.   Plaintiffs and the class of similarly situated older hourly workers are all age 44 or older.

188.   Plaintiffs have met the charge filing requirements of the ADEA as alleged above.

189.   Plaintiffs and the class of similarly situated older couriers were all well-qualified to perform the job responsibilities of a Fed Ex courier.   Each performed his or her

40

job in a satisfactory manner.  Each had more experience than most younger employees.

190.    The employment practices of Fed Ex described above disproportionately harmed Plaintiffs and the class of similarly situated older couriers while favoring younger couriers.  The practices so described had a disparate impact against hourly workers over 44 and are not based upon a reasonable factor other than age.

191.    Defendant has knowingly and purposefully engaged in age discriminatory practices with the full knowledge that in so doing it was discriminating against its older couriers, without regard for the rights of those couriers under the ADEA.

192.    Defendant had a mixed motive for its adverse employment actions against some or all of the plaintiff class members.  It would not have taken the adverse actions against the class but for its unlawful age discriminatory policies and patterns.

193.    Defendant has followed the age discriminatory employment practices described above and has shown reckless disregard for the rights of its couriers under the ADEA and under relevant provisions of state laws prohibiting age discrimination in employment.

194.    Defendant has not asserted a reasonable factor other than age as a justification for its age discriminatory practices. Defendant has no bona fide occupational qualification or business necessity to justify its discriminatory practices against its

41

older couriers.

195.   The employment practices of Fed Ex harmed the Plaintiffs listed in Appendix B because Fed Ex terminated them from their employment with Fed Ex because of Fed Ex's unified policy, plan or scheme of discrimination.

196.   Plaintiffs are similarly situated when they have similar jobs and conduct themselves similarly.  All Plaintiffs in Appendix A, B and C are similarly situated in all material respects.

197.   The Plaintiffs are Couriers, Ramp Transport Drivers (RTD), Service Agents or Handlers.  They perform similar tasks and similar conduct.

| Job | Evaluated by BP | Delivers Packgs. | Pulls from Belt |
|---|---|---|---|
| Courier | YES | YES | YES |
| RTD | YES | YES | YES |
| Handlers | YES | YES (can be couriers and handlers) | YES |
| Ops. Manager | YES | YES | YES |
| Service Agents | YES | No | YES |

198.   Defendant Fed Ex's employment practices harmed Plaintiffs Boyd, Stewart, Perkins, Henning, Fuller, Horning and Sarro because they accepted early retirements rather than remaining employed with the Defendant Fed Ex until they were 62 years of age or older.  Plaintiff Mackenzie was harmed by Fed Ex's employment practices and accepted normal retirement rather than

42

1  maintaining full-time employment with Fed Ex.

2      199.   Thirty-four Plaintiffs in Appendix B who are employed

3  by Fed Ex have been and are being harmed by the ongoing employment

4  practices of Fed Ex which threaten their employment and reduce or

5  threaten to reduce their employment income.

6      200.   Plaintiffs and the class of similarly situated older

7  couriers, ramp transport drivers and service agents were all well-

8  qualified to perform their job responsibilities.

9      201.   Defendant has followed the age discriminatory

10 employment practices described above and has shown reckless

11 disregard for the rights of its older couriers, ramp transport

12 drivers and service agents under the ADEA and under relevant

13 provisions of state laws prohibiting age discrimination in

14 employment.

15

16     202.   Defendant has not asserted a reasonable factor other

17 than age as a justification for its age discriminatory practices.

18     203.   Defendant will continue to harm members of the

19 plaintiff class unless this Court issues injunctive relief.

20                          **CLAIM TWO**

21

22          **For Violation of Cal. Gov. Code § 12940**

23       **(On Behalf of the Class of California Residents)**

24     204.   Plaintiffs reassert and reallege paragraphs 1 through

25 191, inclusive, and fully sets forth and incorporates said

26 paragraphs herein by reference.

27

28                              43

205.   Section 12940 of California's Government Code makes it unlawful:

206. For an employer, because of the . . . age . . . of any person . . . to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

207.   There are thousands of couriers, ramp transport drivers and service agents employed by Defendant in the state of California.   On information and belief, at least 500 of these couriers, ramp transport drivers and service agents are age 44 or older.

208.   The practices alleged in paragraphs 1 through 191 are unlawful under California's Fair Employment and Housing laws, Cal. Gov. Code § 12940.   Plaintiffs Hulac, Fingarson, Spinks, Stewart and Fejardo are all over age 44 and seek to represent the class of couriers over 44 years of age who work in California.

209.   Plaintiff Fingarson has exhausted the administrative charge filing requirements of California's Fair Employment and Housing laws.

210.   The claims of Plaintiffs Hulac, Fingarson, Spinks, Stewart and Fejardo and of other older couriers, ramp transport drivers and service agents share common questions of fact and law, including whether Defendant intentionally engaged in a pattern or practice of age discrimination against its older couriers, ramp transport drivers and service agents by implementing company-wide

employment practices intended to and did result in driving older couriers, ramp transport drivers and service agents out of their employment; and whether Defendant engaged in policies and practices that discriminated against couriers, ramp transport drivers and service agents over age 40 that were not required by or consistent with business necessity.

211.   The claims of Plaintiffs Hulac, Fingarson, Fejardo, Stewart and Spinks are typical of the age discrimination claims of the class they seek to represent.  Plaintiffs are current couriers who have been harassed and discriminated against in the terms and conditions of their employment.  Plaintiffs all claim that Defendant intentionally engaged in a pattern or practice of age discrimination against older couriers, ramp transport drivers and service agents by implementing company-wide plans that were intended to and did drive older couriers, ramp transport drivers and service agents out of the company disproportionately.  The factual issues concerning liability under the state law claim are identical or similar to the issues concerning liability under the ADEA.

212.   Plaintiffs are adequate representatives of the class they seek to represent because they are not and have never been supervisors or members of management.  There are no conflicts of interest between them and the class they seek to represent.  In addition, Plaintiffs have retained experienced counsel with a multi-state practice in age discrimination matters, collective

45

actions, and other employment discrimination matters.

213.   The actions taken against Plaintiffs and other older couriers, ramp transport drivers and service agents constitute discrimination under Cal. Gov. Code § 12940.

214.   As a direct and proximate result of Defendant's deliberate, intentional, and unlawful violation of Plaintiffs' statutory rights, Defendants wrongfully caused Plaintiffs and other older couriers, ramp transport drivers and service agents to lose income and benefits and suffer humiliation and personal embarrassment.

215.   The acts committed by Defendant were committed with oppression, fraud, and malice and resulted in emotional distress to Plaintiffs and other older couriers, ramp transport drivers and service agents.

216.   Defendant has not asserted a reasonable factor other than age as a justification for its age discriminatory practices. Defendant has no bona fide occupational qualification or business necessity to justify the discrimination against its older couriers, ramp transport drivers and service agents.

217.   Plaintiffs have been harmed by defendant's unlawful age discrimination practices as alleged herein.

218.   Defendant will continue its unlawful age discrimination practices unless enjoined by an order of this Court.

**CLAIM THREE**

FOR VIOLATION OF ERISA 510

219.   Plaintiffs incorporate the allegations of paragraphs 1–191 as fully set forth herein.

220.   Defendant is an employer within the meaning of ERISA.

221.   Plaintiffs and other members of the ERISA class are or have been eligible to participate in qualified employee benefit plans sponsored by defendant and accorded tax advantaged treatment under ERISA.

222.   Defendant has taken adverse employment actions against plaintiffs and other members of the ERISA class.

223.   Defendant has taken the adverse employment actions for the purpose of interfering with plaintiffs' ability to obtain benefits under ERISA plans that it has sponsored and/or because plaintiffs were eligible for benefits under such plans and/or for other reasons that are unlawful under 29 U.S.C. 1140.

224.   Defendant has taken adverse employment actions for mixed motives, including the purpose of interfering with plaintiffs' ability to obtain benefits under ERISA plans that it has sponsored and/or because plaintiffs were eligible for benefits under such plans and/or for other reasons that are unlawful under 29 U.S.C. 1140.

225.   Defendant would not have taken such adverse employment actions if not for its motive that was unlawful under 29 U.S.C. 1140.

47

226.  Plaintiffs have suffered harm by reason of defendant's conduct undertaken in violation of 29 U.S.C. 1140.

227.  Defendant will continue to take actions prohibited by 29 U.S.C. 1140 unless enjoined by order of this Court.

228.  Plaintiffs specifically limit their prayer for relief for violation of 29 U.S.C. 1140 to such equitable remedies as are available under ERISA, including, but not limited to reinstatement and an award of costs and attorneys' fees.

### PRAYER FOR RELIEF

Plaintiffs pray for orders requiring the Defendant to notify, in a form to be approved by the Court, all current and former couriers, ramp transport drivers and service agents 40 and over with 10 or more years of experience and who had reached the age of 40 before their employment with Federal Express was terminated, of the allegations in this lawsuit and the right to participate in this suit; and

Plaintiffs pray for an Order directing the issuance of Notice under the ADEA to couriers, ramp transport drivers and service agents who are age 44 and older of the allegations of age discrimination made with this suit and their right to Opt into this suit; a class certification of Fed Ex employees employed in California; and

Plaintiffs pray for an order preliminarily and permanently enjoining Defendant and its officers, agents, employees, successors and all persons from engaging in employment practices

48

that discriminate against older couriers, ramp transport drivers and service agents on grounds of age, and from following neutral employment practices that have a discriminatory impact against older couriers, ramp transport drivers and service agents, unless the employer can show that such practices are based upon a "reasonable factor other than age" within the meaning of the ADEA. Such an order should enjoin the Defendant from:

1) treating older couriers, ramp transport drivers and service agents less favorably than younger couriers in the allocation of routes, start times, overtime opportunities, discipline and other terms and conditions of employment;

2) terminating or disciplining older couriers, ramp transport drivers and service agents who are absent from work because of injuries or other medical problems while they are recovering from same, in the absence of solid medical evidence that they are disabled from performing the duties of a courier, ramp transport drivers or service agents;

3) treating older couriers, ramp transport drivers and service agents less favorably than younger couriers, ramp transport drivers and service agents in discipline and other terms and conditions of employment;

4) following employment practices such as BPP and Stops-per-hour, issuing "Counselings" and other practices that have a discriminatory impact against older couriers, ramp transport drivers and service agents unless this Court determines that

any such practice is based upon a reasonable factor other than age;

5) failing or refusing to reinstate older couriers, ramp transport drivers and service agents whose employment was terminated by Defendant because of their age or because of unlawful practices by Defendant which resulted in their separation from employment by Defendant not based upon a factor other than age;

6) retaliating against any couriers, ramp transport drivers and service agents who have opposed any discriminatory policies or practices, or who have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation.

Plaintiffs further pray for an award of damages to them and plaintiffs who Opt into this suit for:

1) loss of income and the value of fringe benefits as determined by the jury; including the loss of future earnings for those couriers, ramp transport drivers and service agents who have lost their positions with Defendant until such time as they are reinstated or offered reinstatement;

2) an award of liquidated damages as determined by the jury;

3) an award of punitive damages for violations of FEHA as determined by the jury;

4) an award of compensatory damages for violations of FEHA as determined by the jury;

50

5) pre-judgment interest in an amount to be determined;

6) costs of litigation, including expenses and attorneys'

fees and expert witness fees; and

7) such other relief as may be just.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED: May 21, 2008              ROSE & ROSE, P.C.

Respectfully submitted,

David L. Rose (admitted in N.D.Cal.)
Joshua N. Rose
Earlene W. Rosenberg
Attorneys for PLAINTIFFS

51

APPENDIX A

**No Longer Employed With FedEx**

| | Name | Station | Date of Birth |
|---|---|---|---|
| 1. | Fred Hulac | STSA(CA) | 3/27/52 |
| 2. | Tracy Gray | STSA(CA) | 6/19/63 |
| 3. | David Williams | (CA) | 9/17/50 |
| 4. | Glendora Spinks | POCA(CA) | 3/18/53 |
| 5. | Raul Armendariz | FLGA(AZ) | 10/19/56 |
| 6. | Lori Bernstein | FNLA(CO) | 7/21/61 |
| 7. | Delno Clark | BDLA(CN) | 3/4/59 |
| 8. | Stephen Megru | SUAA(FL) | 2/11/59 |
| 9. | John Pellegren | FMYA(FL) | 12/21/53 |
| 10. | Peggy Whitman | FMYA(FL) | 4/22/61 |
| 11. | Sue Elins | FMYA(FL) | 6/4/60 |
| 12. | Romas Jasiulevicius | CLWA(FL) | 4/10/62 |
| 13. | Jerome Vanderable | NCQA(TN) | 6/25/57 |
| 14. | Rian Takeshita | JHMDA(HI) | 9/15/62 |
| 15. | Sherrie Smith | OGGA(HI) | 12/14/53 |
| 16. | Edward Medeiros | OGGA(HI) | 12/4/55 |
| 17. | Steven Sutterman | Cedar Rapids(IA) | 8/2/57 |
| 18. | Jeffrey Long | GAIA(MD) | 10/1/62 |
| 19. | Samuel Kudjordji | GAIA(MD) | 8/10/53 |
| 20. | Sammy Smith | GAIA(MD) | 3/4/60 |
| 21. | Lani Gibbons | FMEA(MD) | 5/31/53 |
| 22. | Peter Fay | AYE(MA) | 1/28/55 |
| 23. | Michael Kelley | OWDA(MA) | 12/26/56 |
| 24. | John Neil | OWDA(MA) | 2/23/57 |
| 25. | Kenneth Kumm | CEFA(MA) | 8/7/56 |
| 26. | Lizzie Middlebrook | DTTA (MI) | 3/10/54 |
| 27. | Deborah Ridenhour | DTTA (MI) | 5/1/48 |
| 28. | Caroline O'Brien | MKCA(OH) | 2/28/62 |
| 29. | Larry Mungiello | TEBA(NJ) | 6/13/41 |
| 30. | Steven Goldberg | ABQA(NM) | 8/16/50 |
| 31. | Maggie Dean | HTOA(NY) | 9/13/59 |
| 32. | Sandra Compton | HKYA(NC) | 11/11/48 |
| 33. | Michael Dill | HKYA(NC) | 9/20/61 |
| 34. | Shryl Weideman | TOL(OH) | 7/1/59 |
| 35. | Ronald Adams | DAYA(OH) | 1/15/57 |
| 36. | William Watkins,III | PITA(OK) | 8/4/47 |
| 37. | Edward Jones | TULA(OK) | 12/4/54 |
| 38. | Jeff McEllrath | PDXA(OK) | 1/10/54 |
| 39. | Belinda Ryles | PDXA(OR) | 4/13/57 |
| 40. | Michael Parks | BNAA(OR) | 7/15/58 |
| 41. | Earl Yarborough | NQAA(TN) | 12/30/63 |
| 42. | Verna Stanback | NQAA(TN) | 11/22/53 |
| 43. | Kenneth Adams | NQAA(TN) | 10/2/56 |

```
44.   Esther Harrison        HKA(TN)      10/26/57
45.   Sandra Mason           HBYA(TX)     9/16/55
46.   Ricki Stilwell         WALA(GA)     12/20/54
47.   Kevin Chapman          DCAA(DC)     9/8/62
48.   Robert Willette        ATWA (WI)    8/23/61
49.   Rocco Notarfrancesco   GMVA (NJ)    3/19/57
50.   William Stewart        STSA (CA)    3/27/52
51.   Linnea Edwards         SRU  (CA)    9/9/56
52.   Richard Boyd           SWFA (FL)    11/16/48
53.   Frank Sarro            BMLA (FL)    3/10/43
54.   Curley Fuller          PDXA (FL)    10/6/43
55.   Paul Horning           GAIA (MD)    3/21/50
56.   Rita Perkins           FCMA (MI)    11/29/51
57.   D. Ken Mackenzie       WRIA (NJ)    10/8/39
58.   David Henning          WWDA (NJ)    8/11/52
```

A2

APPENDIX B

**CURRENTLY EMPLOYED EXPERIENCING**
**ONGOING DISCRIMINATION**

| Name | Station(State) | Date of Birth |
|------|----------------|---------------|
| 1.  Kathy Fingarson | NOTA (CA) | 10/31/53 |
| 2.  Dianna Fejardo | POCA (CA) | 10/6/52 |
| 3.  Debra Ferrell | POCA (CA) | 2/23/56 |
| 4.  Rebecca Diaz | POCA (CA) | 7/7/58 |
| 5.  Scott Maeda | POCA(CA) | 3/17/65 |
| 6.  Debbie Johnson | FULA (CA) | 3/20/59 |
| 7.  Denver Kushihashi | BKFA (FL) | 7/31/63 |
| 8.  Maria Pleigo | COIA (FL) | 10/25/47 |
| 9.  Naja Welch | MLBA (FL) | 7/8/66 |
| 10. Estate of Dwight Todd | SPIA (HI) | 6/27/53 |
| 11. Victor Lanzotti | SPIA (IL) | 3/5/47 |
| 12. Bonnie Boston | SPIA (IL) | 10/2/54 |
| 13. Barry Barnette | MZZA (OH) | 8/3/60 |
| 14. Elizabeth Tucker | MZZA (OH) | 8/12/54 |
| 15. Richard Casey | BLMA (NJ) | 3/1/61 |
| 16. John Osowski | BLMA (NJ) | 1/1/58 |
| 17. Dennis DeNeeza | BLMA (NJ) | 8/16/51 |
| 18. Richard Glock | BLMA (NJ) | 2/20/54 |
| 19. Michael Addeo | BLMA (NJ) | 5/11/53 |
| 20. Francis Phair | BLMA (NJ) | 3/3/59 |
| 21. Donald Meyer | BLMA (NJ) | 8/5/63 |
| 22. Frank Sarro | BMLA (NJ) | 3/10/43 |
| 23. David Velenger | PRIA (NJ) | 12/14/58 |
| 24. Robert Chabak | WWDA (NJ) | 5/10/60 |
| 25. Mike Bruno | WWDA (NJ) | 3/23/53 |
| 26. Michael Breitstein | DAYA (OH) | 8/10/62 |
| 27. Ellen Brouse | MRIA (OR) | 7/26/50 |
| 28. Zeno Latin | VGTA (OR) | 7/17/57 |
| 29. Cedric Roane | USCA (SC) | 11/17/51 |
| 30. Sarah Dancer | MMR (TX) | 12/13/53 |
| 31. Tom Schulz | ATWA (WI) | 12/7/51 |
| 32. Wilma Gorgee | TULA (OK) | 9/2/51 |
| 33. Eddie Gonzales | ALBA (NY) | 7/3/54 |
| 34. Kelly Basham | MSCA (AZ) | 6/27/48 |
| 35. Rick Evans | MSCA (AZ) | 1953 |
| 36. Joshua Wiley | MQYA (TN) | 4/30/51 |
| 37. Emma Dallegos | POCA (CA) | 3/15/61 |
| 38. Greg McCoy | PDXA (OR) | 1/1/54 |

**APPENDIX C**

**CALIFORNIA RESIDENTS**

| Name | Station | DOB |
|------|---------|-----|
| 1.  Fred Hulac | STSA (CA) | 3/27/52 |
| 2.  Tracy Gray | STSA (CA) | 1/27/08 |
| 3.  Glendora Spinks | POCA (CA) | 3/18/53 |
| 4.  Lani Gibbons | FMEA (CA) | 5/31/53 |
| 5.  Kathy Fingarson | NOTA (CA) | 10/31/53 |
| 6.  Dianna Fejardo | POCA (CA) | 10/6/52 |
| 7.  Debra Ferrell | POCA (CA) | 2/23/56 |
| 8.  Rebecca Diaz | POCA (CA) | 7/7/58 |
| 9.  Scott Maeda | POCA (CA) | 3/17/65 |
| 10. Linnea Edwards | SRU  (CA) | 9/9/56 |
| 11. Debbie Johnson | FULA (CA) | 3/20/59 |
| 12. William Stewart | STSA (CA) | 3/27/52 |

C1